# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

---

In Re:

**NATURAL GAS ROYALTIES**
*QUI TAM* LITIGATION

99-MD-1293-J

---

## SECOND AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

## OF THE SPECIAL MASTER

Jack Grynberg (Relator) filed in the U.S. District Court for the District of Columbia, <u>United States ex rel. Grynberg v. Alaska Pipeline Co., et al., CV No. 95-725 (TFH)</u> against 66 defendants. Multiple motions to dismiss were filed. Judge Hogan dismissed the complaint for lack of jurisdiction. Grynberg then proceeded to file 73 cases in seven jurisdictions against over 330 individual defendants. Grynberg sought to have the cases consolidated by the Multiple District Litigation panel of the United States District Courts. The multiple defendants filed individual pleading in the respective courts as well as responding to the MDL panel. Some of the defendants organized and participated in a joint defense committee to coordinate pleadings in the various courts. The MDL panel transferred the cases to the United States District Court for the District of Wyoming and the case became MDL docket 99-MD-1293. The individual cases were given separate MDL docket numbers. Of the 330 defendants, there were 66 lead counsel. (Doc. 2268-3). The defendants established a Coordinating Counsel Committee to determine core issues and coordinate the research and filing of pleadings on the core issues. There was established a Joint Defense Team to research core issues, prepare and file pleadings.  The court approved as lead counsel, Donald I. Schultz of Holland & Hart LLP. Holland & Hart attorneys and staff established an extranet which was a repository for research, pleadings and briefs for the joint defense

team as well as all defendants. Through Schultz and Holland & Hart, arrangements were made for coordinated depositions, Special Master hearings, and court hearings. The attorneys fees and expenses of the joint defense team were divided by the defendants participating in the joint defense efforts.

On October 20, 2006, the Court granted Defendants' motion to dismiss for lack of jurisdiction under 31 U.S.C §3730(e)(4). See, In re Natural Gas Royalties *Qui Tam* Litig., 467 F. Supp. 2d 1117 (D. Wyo. 2006). Grynberg filed a Notice of Appeal. On March 17, 2009, the Court of Appeals affirmed the dismissal except for seven cases involving CO2 claims. See, In re Natural Gas Royalties *Qui Tam* Litig., 562 F. 3d 1031 (2009).

On July 22, 2011, U.S. District Judge Downes entered an Order Granting Motion for Fees and Expenses Pursuant to 31 U.S.C. §3730 (d)(4). U.S. District Judge Johnson on July 6, 2012, entered an Order of Appointment and Referral to Special Master. Relator filed a Motion for Leave to File an Oversize Motion and a Motion for Scheduling Conference, Hearing and Discovery. A hearing was held on October 4, 2012. The parties submitted briefs, exhibits and oral arguments.

Relator has raised the following issues:

1. Limited Discovery by the Relator to determine the reasonable market rates of the attorneys representing the defendants and the reasonable hours expended in defense of the litigation by each defendant making a claim for fees and costs.
2. A hearing after the discovery.
3. The awarding of fees and expenses should be awarded under the applicable standards as a sanction rather than under the standards of the fee shifting statutes.
4. The District Court does not have jurisdiction to award appellate fees and costs.
5. The defendants are not entitled to fees and expenses for their attempts to recover attorneys fees.

**DISCOVERY AND HEARING**

The Relator seeks limited discovery on factual disputes arising out of the claims and a subsequent hearing. Relator seeks contracts between defense of the clients, the reasonable hourly entry of fees, and reasonable hourly rates. It seeks discovery as to the differences in the payment of joint defense fees or the per-capita portions where a law firm represented multiple defendants. Relator disputes expenses of various defendants. Most of the issues are minimal compared to the total fees and expenses.

The law is well established that the determination of fees "should not result in a second major litigation." Fox v. Vice, 131 S. Ct. 2205, 2216 (2011). The Relator's motion indicated that 46 pleadings were filed from July 22, 2011 to May of 2012 by the defendants. He indicates over 14,000 pages of billing information had been filed by multiple defendants. The Special Master will verify that with affidavits, motions, billings and briefs that there are over 14,000 pages, up to 40 entries per page. There are close to 400 timekeepers over 13 years. Relator seeks the attorney-client contracts with defense

counsel. There were over 300 individual separate corporations as defendants. Both attorneys and their records are in different states and the District of Columbia. If discovery were permitted, Relator may also be subject to limited discovery as to his reasonable attorneys fees, number of legal staff involved in the litigation and reasonable hours entered for prosecuting or defending an issue. Robinson v. City of Edmond, 160 F. 3d 1275, 1284 (10th Cir. 1998). Based upon the history of the case, opening discovery would extend the case additional years.

Relator retained Mr. Toothman as an expert on attorneys fees. He has submitted a report after a four-month review of the records. He raises issues concerning duplicity by the multiple timekeepers, and the necessity of tasks such as review of documents and excessive billing. He makes general conclusions and gives percentage reductions. Neither Relator nor Toothman provided evidence or an affidavit on the market rate of attorneys fees for oil and gas attorneys practicing in Colorado and Wyoming. Relator has provided 14 pages of hourly attorneys fees billed by defense counsel and legal assistants that provide the Special Master with a summary of the fees of counsel specializing in oil and gas law in Colorado, Wyoming and other jurisdictions.

Relator claims substantial factual issues exist as to the tasks performed, by whom, their experience and billing arrangements with clients. Affidavits have been provided by most of the defendants setting forth the expertise and experience of lead counsel. Relator has not contested the affidavits. The expertise of other timekeepers is not required. After thirteen years of litigation, the other timekeepers became well versed in oil and gas litigation. The billing records reflect the task of the timekeeper and, if properly entered, the relevancy to the litigation.

As cited by Relator, a hearing is not necessary where the parties will be arguing issues already addressed by the briefs and pleadings. ClearOne Commc'ns, Inv. v. Biamp Sys., 653 F.3d 1163, 1187 (10th Cir. 2011). What is critical to the review of fees and costs is that the district court has the "ability to evaluate the propriety of the fee request based on the specific billing entries." Flitton v. Primary Residential Mortg., Inc., 614 F. 3d 1173, 1178 (10th Cir. 2010).

The request to permit limited discovery and a subsequent hearing is denied.

## FEE SHIFTING OR SANCTION STANDARD

Relator argues that 31 U.S.C. §3730 (d)(4) is a sanction rather than fee-shifting statute. Relator argues that as a sanction statute, the Court should adopt the restrictions set forth in White v. General Motors Corporation, 908 F.2d 675 (10th Cir. 1990). Special Master is puzzled by the Relator seeking sanctions under Rule 11. In White, the court sanctioned the attorney as required by Rule 11. Judge Downes specifically left open the issue of sanctions pursuant to Rule 11. He held, "The Court's reasons set forth above, could also serve as a basis for awarding attorneys fees under Fed. R. Civ. P. 11. However, because the Court has already awarded attorneys fees under 31 U.S.C. §3730 (d)(4), the Court need not reach the issue." Relator argued against the Motions seeking Rule 11 sanctions. Multiple defendants devoted hours researching, briefing, filing motions and responding to Relator's objection to the Rule 11 motions. The Court found: "[C]ontrary to Relator's assertion, the Court has discerned no authority which holds that pleadings signed, filed and advocated in False Claims Act cases are relieved

from the dictates of Rule 11." Attorneys file pleadings, not the litigant, and are subject to sanctions pursuant to Rule 11 as in <u>White</u>. It is interesting that Plaintiff's attorneys are willing to subject themselves personally to liability.

Relator correctly cites in his brief U.S. Senate Judiciary Report which states: "This standard reflects that which is found in section 1988 of the Civil Rights Attorney Fee Awards Act of 1976." <u>Senate Judiciary Report on P.L. 99-562, False Claims Amendment Act of 1986</u>, Sen. Rep. 99-345 (July 28,1986). Relator failed to provide the following note: "The committee added this language in order to create a strong disincentive and send a clear message to those who might consider using the private enforcement provision of the Act for illegitimate purposes. The Committee encourages courts to strictly apply the provision in frivolous or harassment suits <u>as well as any applicable sanctions available under the Rule of Civil Procedure</u>. (emphasis added) Cited in <u>Borsjoly v. Morton Theokal, 706 F.Supp 795</u> (D. Utah 1988). Congress intended for the courts to award fees and expenses pursuant to the fee-shifting statute and to also consider sanctions against the client and attorneys pursuant to Rule 11.

The United States Supreme Court in <u>Business Guides Inc. v. Chromatic Communications Enterprises Inc.</u>, 498 US 533, 553 (1991), distinguished fee shifting provisions from Rule 11. Rule 11 is a sanction that is not tied to the outcome of the litigation but to a specific filing. It shifts the cost of only a discrete portion of the litigation rather than the litigation as a whole. A fee-shifting statute relates to the outcome of the litigation.

In <u>Hamilton v. Boise Cascade Exp.</u>, F.3d 519 1197 1206 (10th Cir. 2008), Appellant attorney Hammons was sanctioned pursuant to 28 U.S.C. §1927 for unreasonable multiplication of the proceedings. Plaintiff Appellee was awarded costs and attorneys fees incurred because of the conduct. Hammons argued that the court should have used the "least severe" standard of <u>White v. General Motors Corp.</u>, 908 F.2d 675 (10th Cir. 1990). The Court held: "*White* dealt with sanctions under Rule 11, which is not a compensatory mechanism." <u>Fox v. Vice</u>, 131 S. Ct. at 1216 held that the defendant is entitled to costs incurred absent the frivolous litigation in a fee shifting statute in §1998.

The Special Master finds that §3730(d) (4) is a fee shifting statute. The Court has not denied the Rule 11 Motions but has elected to not enter an order pursuant to Rule 11. It remains an open issue until the final judgment.

**APPELLATE FEES AND COSTS**

Relator objects to the claim for attorneys fees and costs by defendants defending the appeal by the Relator. He relies on <u>Hoyt v. Robson Companies, Inc.</u>, 11 F.3d 983 (10th Cir. 1993). <u>Hoyt</u> holds that the district court does not have jurisdiction to enter an order on appeal-related fees until the appellate court has authorized fees to be assessed to the successful party.

Subsequent to <u>Hoyt</u>, the 10th Circuit has remanded the determination of appellate fees to the district court. In <u>Whittington v. Nordam Group Inc.</u>, 429 F.3d 986, 1002 (10th Cir. 2005), Whittington asked for attorneys fees for defending an appeal. The court remanded the issue of attorney fees to the district court to determine the reasonable fees. In <u>Anchondo v. Anderson, Crenshaw & Associates, LLC</u>,

616 F.3d 1098, 1107 (10th Cir. 2010), the plaintiff asked for attorneys fees and costs for defending an appeal. The court held that the plaintiff was entitled to attorney fees and costs and remanded the case to the District court to determine the reasonable fees and costs. In both cases the parties requested appellate fees from the 10th Circuit, and it granted the request.

Defendants rely on Crumpacker v. Kan. Dep't of Human Res., 474 F.3d 747 (10th Cir. 2007). Crumpacker argued that she should be entitled to reimbursement for interlocutory appeal fees where she was successful on the interlocutory appeal and as the prevailing party at the subsequent trial. The court held she was entitled to the appeal-related fees for the interlocutory appeal when she was eventually the prevailing party. The Tenth Circuit did hold: "We, therefore, hold that appeal-related fees, including those incurred in an interlocutory appeal, must generally be awarded by us." Id. at 755-56. It held that there was a narrow exception. When the party was successful in an interlocutory appeal and becomes the prevailing party on trial on the merits, the party is "implicitly entitled to reasonable attorney's fees related to the interlocutory appeals." Id. at 756.

In Flitton v. Primary Residential Mortgage, Inc., 614 F.3d 1173 (10th Cir. 2010), Flitton was successful in an interlocutory appeal reversing a summary judgment on two claims and a judgment as a matter of law (JMOL) on another claim by the district court. The jury verdict was reinstated on JMOL and a second trial ordered on the other two claims. She was the prevailing party in the interlocutory appeal on the reinstatement of the judgment by a jury on one claim. She did not seek appeal-related fees from the 10th Circuit on that claim. Flitton obtained a jury verdict on the remaining two claims at the second trial. The district judge denied the request for appeal-related fees for the interlocutory appeal because it did not have jurisdiction to enter an award. Flitton appealed the decision. The majority clarified the ruling in Crumpacker and reaffirmed Hoyt v. Robson Cos., Inc., 11 F.3d 983, 965 (10th Cir. 1993). The Court held that Crumpacker "did not (and could not) eviscerate" the requirement of Hoyt. "Accordingly, as we stated in "Crumpacker, [I]t is the law of this circuit that 'absent an explicit statutory provision, in order for us to properly exercise our discretion, an application for appeal-related attorneys' fees must first be made to our court.'" Crumpacker, 474 F.3d at 755 (quoting Hoyt, 11 F.3d at 985). Flitton at 1180. The dissent by Judge Gorsuch is not the law and as indicated by the majority, only the legislature can change the law from being jurisdictional to procedural.

The defendants were the prevailing parties both in the district court and Tenth Circuit. The defendants have not presented any evidence that they have sought an order granting appeal-related fees from the Tenth Circuit. The district court does not have jurisdiction to award appeal-related fees and costs. Some of the defendants and the joint defense team have identified appeal-related fees and costs as a part of the request for fees and costs. The Special Master has reviewed the billings and addressed them in my findings. Should the Court determine it has jurisdiction to grant appeal-related fees, a review of the reasonableness of the fees will not be required.

**INTERLOCUTORY FEES**

In 2002, the Court granted a Motion by the United States dismissing the *Qui Tam* case brought Harold Wright who alleged that certain defendants made wrongful "valuation" of the gas produced from the wells. Doc 587. Grynberg also raised the issue. Grynberg filed a notice of appeal to the Tenth Circuit.

Relator objects to entries by Holland & Hart and Vinson & Elkins that refer to the Wright decision and Grynberg's notice of appeal. The issue of the appeal was researched and reviewed by the Joint Defense Team as to whether it should join the government in defending the Court order.

The Special Master finds that the entries relate to the defense of the issues raised by Grynberg's *Qui Tam* action and are relevant to the defense of the litigation and not directly related to the appeal.

**FEES ON FEES**

The federal courts have generally permitted a prevailing party in fee-shifting cases reasonable attorneys fees and costs incurred establishing the entitlement and amount of fees. "This is because it would be inconsistent to delete a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee." <u>Southern California Sunbelt Developers, Inc., v. IBT International, Inc.</u>, 608 F.3d 456, 463 (9th Cir. 2010). This is consistent with the law in the Tenth Circuit. The court held in <u>Mares v. Credit Bureau of Raton</u>, 801 F.2d 1197, 1205 (10th Cir. 1986) that "an award of reasonable attorneys fees may include compensation for work performed in preparing and presenting the fee application."

Relator relies on <u>Glass v. Pfeffer</u>, 849 F.2d 1261 (10th Cir. 1988). At p. 1266 n3 of <u>Glass</u>, the Tenth Circuit indicated that courts allow attorneys fees for time spent in establishing entitlement to fees incurred in fee-shifting cases.

The Special Master finds that defendants are entitled to reasonable fees and costs to establish fees on fees.

**SETTLED PARTIES**

Relator objects to fee requests for defendants who have settled and been dismissed from the litigation. During the appeal by Relator of 73 MDL cases, Grynberg, appellant, voluntarily dismissed 29 cases. The defendants settled or waived the right to pursue fees and costs. Relator relies on  the provision of the order of dismissal of Exxon companies. The order provides that defendant waives attorneys fees and expenses. Grynberg indicates he settled with 36 defendants. At the hearing and in the brief, he claims that six law firms billed fees for defendants that settled. He did not identify the specific defendants but used Exxon and Mobile oil as examples. Neither has submitted a claim for fees and costs.

The Special Master has reviewed the briefs and the billing entries of all defendants claiming fees and expenses and does not find any claim by defendants who have settled with Grynberg, and Relator that does not provide evidence to support the claim.

**$CO_2$**

Relator's *Qui Tam* complaint alleges ten defendants underpaid royalties on the production of $CO_2$. Judge Downes' dismissed the $CO_2$ claims pursuant to §3730(b)(5) first-to-file bar rather than §3730(e)(4) original source. The $CO_2$ appeals were separately addressed by the Tenth Circuit in In re Natural Gas Royalties *Qui Tam* Litigation ($CO_2$), 566 F.3d 956 (10th Cir. 2009). The Court granted Grynberg's appeal and remanded the case for further proceedings. It held: "Mr. Grynberg's claims might have trouble surmounting §3730(e)(4)'s public disclosure bar, they are not barred by §3730(b)(5) first-to-file bar."

Relator objects to any appeal fee-related claims because the $CO_2$ defendants were not the prevailing party on appeal. Six of the defendants settled before the opinion of the Tenth Circuit. All but Shell and Kinder Morgan settled. No claims have been made for appeal-fees by Shell or Kinder Morgan (KN Energy).

The issue is moot since the Special Master has found that defendants are not entitled to appeal-fees until such time as the 10th Circuit authorizes the fees and expenses.

**LODESTAR**

The United States Supreme Court in Perdue v. Kenney A. *ex rel.* Winn, 130 S. Ct. 1662, 1662 (10th Cir. 2010) clarified the mixed rulings as to the method of determining attorneys fees in fee-shifting cases. It found the lodestar method looks to "the prevailing market rates in the relevant community" therefore producing "...an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." It further found "[T]he lodestar calculation is 'objective', ... and thus cabins the discretion of trial judges, permits meaningful judicial review and produces reasonably predictable results." (citations omitted). A reasonable fee was one that did not create a "windfall" or "relief to improve the financial lots of attorneys." *Id.* at 1673. The lodestar takes into consideration the novelty and complexity of the case as well as the quality performance of counsel.

The lodestar method has been the law of the 10th Circuit. Anchondo v. Anderson, Crenshaw & Associates, L.L.C., 616 F.3d 1098, 1102 (10th Cir. 2010); Case v. Unified School Dist. No. 233, Johnson County, 157 F. 3d 1243, 1249-50 (10th Cir. 1998).

In Fox v. Vice, 131 S. Ct. 2205 (2011) the Court discusses the difference between awarding fee-shifting attorneys fees for prevailing plaintiffs and prevailing defendants. A plaintiff is entitled to reasonable fees even if he or she does not prevail on all of the claims. A plaintiff acts as a "private attorney general" in carrying out a policy of Congress. *Id.* at 2213. Citing Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 419 (1978), a fee award to a prevailing defendant is "...under a different standard reflecting the 'quite different equitable considerations' at stake." *Id.* at 2213. On the other hand, a defendant is hired by a client at an agreed hourly rate, paid during the litigation both for expenses and fees, and is paid despite the eventual outcome of the litigation. The defendant attorney does not act as a "private attorney general." The Court established the following standard for a prevailing defendant on

a frivolous claims filed by the plaintiff: "Section 1988 allows a defendant to recover reasonable attorney's fees incurred because of, but only because of, a frivolous claim. Or what is the same thing stated as a but-for test: Section 1988 permits the defendant to receive only the portion of his fees that he would not have paid but for the frivolous claim."

The Court identified three examples where a defendant may consider awarding higher fees outside the prevailing market rate. Two are applicable. The Court indicated "If a defendant could prove, for example, that a frivolous claim involved a specialized area that reasonably caused him to hire more expensive counsel for the entire case, then the court may reimburse the defendant for the increased marginal cost. As all these examples show, the dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but whether the costs would have been incurred in the absence of the frivolous allegation. The answers to those inquiries will usually track each other, but when they diverge, it is the second that matters." Because Relator filed the 73 separate cases in different jurisdictions, the companies retained counsel in the jurisdictions where the case was filed. The majority of the MDL defendants were required to retain attorneys and/or law firms that specialized in oil and gas as well as *Qui Tam* litigation. The additional cost of attorneys fees and costs would not have incurred but-for Relator filing 73 separate cases requiring the hiring of an attorney in a specialized area of law and in different jurisdictions.

A second example would be when a plaintiff has filed a state claim and a frivolous federal claim, causing removal to the federal court, which drives up litigation expenses. In that case, an award would be granted for defending both the frivolous and non-frivolous claim. This exception applies because defense counsel who defended the quit tam claims in nine different jurisdictions throughout the United States incurred additional costs by having to defend the case in Wyoming. An example would be litigation filed in the U.S. District Court for the Southern District of Texas. Attorneys at the Fulbright & Jaworski Texas office, which specialized in oil and gas law and whose clients were in Texas, were required to travel to Denver and Casper for discovery, Special Master and court hearings, retain local counsel, and coordinate the defense of its clients with the other MDL defendants and the joint defense team. The Relator, at the same time, no longer was required to pursue the litigation in the nine jurisdictions which he had selected. Realtor's team of attorneys practiced law in Denver. Discovery was in Colorado and Wyoming and all hearings were in Colorado and Wyoming. Attorneys fees and expenses increased for over three hundred defendants and were reduced substantially for the Relator. But-for the cases being moved to Wyoming as an MDL case, the defendants fees and expenses would have been less and the Relator's fees and expenses higher.

### REASONABLE HOURLY RATE

Perdue, 130 S. Ct. at 1672 succinctly holds the hourly rate "looks to the prevailing market rates in the relevant community" ...." [T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." The lodestar method is primarily used to determine reasonable fees for a prevailing plaintiff. In the MDL litigation the defendants are the prevailing party. Unlike a plaintiff, defense attorneys have fee contracts with the individual corporations.

Even where the law firm represents multiple defendants, the hourly fee may be different for each client. Defense counsel bill and are paid by the client during the litigation for fees and costs. The law firms are paid whether the client is the prevailing or losing party.

As in Perdue, the Court may look at the hourly fees of the defense counsel in determining the reasonable prevailing market rate in the community. In Case, 157 F. 3d at 1257 the Court noted that the hourly rate of the losing party may be relevant in determining the hourly rate. It also held that the reasonable hourly market rate is based on the hourly rate of attorneys working in that type of litigation. The hourly fees in the MDL litigation cannot be measured by a general attorney practicing law in Wyoming. The hourly fees of Brown Drew and Massey of Casper ranged from $75 for a law clerk to $225 per hour for the attorney. The firm was a conduit for access to the U.S. District Court in Wyoming but did not perform any substantive tasks, nor did it require knowledge of oil and gas law or Qui Tam litigation. The defense was performed by the law firms who specialized in oil and gas law and Qui Tam litigation at a much higher hourly rate.

Relator has not provided any evidence of the prevailing hourly rate for attorneys practicing in oil and gas law in Colorado and Wyoming. Relator and his attorneys live and practice oil and gas law in Colorado and the Rocky Mountain area. As such, if he believed that the hourly fees submitted by defendants were excessive, he should have provided the court with appropriate affidavits or other evidence to support his argument.

The Special Master has considered both exceptions in Fox when reviewing and entering my findings using the lodestar method. Relator filed 73 Qui Tam separate actions in nine districts across the United States. The transfer by the MDL panel to Wyoming increased the following marginal costs: additional travel expenses for defense counsel, retention of counsel specializing in oil and gas litigation, additional expenses for discovery and depositions, maintaining track of litigation of over 300 defendants, coordinating pleadings and appearing for court appearances. Defendants were required to retain counsel specialized in Qui Tam oil and gas litigation with legal staff to support the volume of pleadings, research and communications between defendants and Relator. The additional expenses would not have been incurred except by Relator's filing 73 Qui Tam cases in 9 different courts against 330 defendants in the United States.  It has been held that if the litigation "...is so unusual or requires such special skill that only an out-of-state lawyer possesses" the Court may consider the reasonable hourly rates of attorneys with comparable skill, experience and reputation. United Phos. Ltd. v. Midland Fum. Inc., 2205 F.3d 1219, 1234 (10th Cir. 2000). The Special Master has considered both exceptions in considering the reasonable fees and hours in defending the litigation.

Mr. Toothman in his expert report indicates that the issues were not novel or difficult. He is of the opinion that attorneys outside of Wyoming were not necessary. This is contrary to the statement of Relator's attorney, Mr. Jatko, to the Court on May 10, 2012, Doc. 2268-2 where he states: "So I cite that today as -- as more support for our contention the issues of "public disclosure" and particularly the issues of "original source" are extremely complex. They're only made more complex by the number of cases before you and the factual intensity of each one of these cases." Mr. Toothman only needed to confer with Jatko or read the 176 page Findings by Special Master Bruce Pringle, and he would have

found the litigation both novel and difficult. Attorneys specializing in *Qui Tam* oil and gas litigation out-of-state were reasonably necessary in defense of the litigation which justified fees exceeding attorneys in the normal practice of law in Wyoming and Colorado.

The Special Master has reviewed the affidavits of the multiple defendants as to hourly fees of attorneys and legal staff over the 13 years. Relator provided a 14-page summary of the principal timekeepers which provides me with of the prevailing hourly rate of attorneys specializing in the practice of oil and gas. The Special Master also considered the hourly rates of Beatty & Wozniak, LLP and Holland & Hart. The law firms have offices in Wyoming and practice oil and gas litigation in Colorado and Wyoming. With the exception of local counsel used for administrative tasks, the hourly fees of counsel specializing in oil and gas law are within a reasonable range of $250 per hour in 1998 up to $550 per hour in 2010. Because of the specialized oil and gas *Qui Tam* litigation with over 300 defendants throughout the United States, the Special Master finds a prevailing market rate of up to $550 in 2010 is reasonable. The hourly rates of paralegals and law clerks have also been determined by the lodestar. Missouri v. Jenkins, 491 U.S. 274, 285-89 (1989).

**REASONABLE HOURS**

The lodestar requires the court to apply the reasonable hourly rate to the "number of hours reasonably expended on the litigation." Anchondo, 616 F. 3d at 1102. (citing Perdue).

The Special Master has reviewed over 13,000 pages of billing records with each page containing from 10 to 20 entries. The initial review of the individual record over the months provided a greater view of the interaction between the joint defense team and between defendant attorneys. I, therefore, revisited most of the billing records of defendants to either approve or adjust what were reasonable billable tasks performed by the attorneys and their staff.  Where counsel or law firms represented multiple defendants, billing records were again reviewed to eliminate duplicate billings for the same tasks performed for different defendants. The Special Master also compared the bills where law firms divided the billing for tasks between defendants.

During the thirteen years, there has been a turnover of attorneys, law firms and corporate changes and mergers.  The court authorized a lead attorney and a joint defense team to reduce multiple pleadings on the same issues, streamline depositions and discovery by defendants, and procedurally limit the number of attorneys arguing motions before the court. An extranet was created to provide a central repository for research, motions, pleadings and communications to reduce the necessity of defense attorneys maintaining their own repository. Because of the complexity of the litigation, 73 separate cases, and over 300 defendants law firms and the joint defense team were required to maintain organization charts of the various corporate and attorney changes over the 13 years. Attorneys and staff were required to review the extranet and e-mails on a regular basis, thus increasing expenses.

The Special Master has considered the following law in reviewing the hourly entries in entering my findings and recommendations:

Reviewing hourly entries. The timekeepers are not required to detail each minute of a task but should identify the general subject matter of the task. Flitton, 614 F.3d at 1178. Because of nature of the case, where the entry is inadequate, but where it can be determined that the entry relates to the case based upon the other entries, the Special Master has not disallowed the entry or reduced it. The Special Master has taken into consideration the "overall sense" of the litigation in evaluating the entry. Fox, 131 S. Ct at 2216.

Entries with "review" and like entries. All defendants have entries from the staff and attorneys that have entries with "review" or "telephone conference" without identifying the subject matter. Examples are "reviewed e-mails", "reviewed documents" or "telephone conference". Time entries of this nature can be a method of padding hours or excessive billing. Jane L. v. Bangerter, 858 F. Supp. 1544, 1549 (D. Utah 1993). Mr. Toothman opines that 44.8% of the entries reference "review" and 20.3% for vague time entries including calls.

Case, 157 F.3d at 1252 discusses timekeeper's entries that are cryptic without identifying the subject matter or the necessity to the case. The court held: "The district court did not err in disallowing Ms. Heins's submitted time because her records were imprecise and because the billing records do not show that her assistance was necessary to the case." Flitton, 614 F.3d at 1178 held: "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." The court went on to indicate the primary concern is the "...district court's ability to evaluate the propriety of the fee request based upon specific billing entries." Id. at 1178.

The Special Master has reviewed every entry in billings submitted by defense counsel including the above entries. As the Special Master has previously found, the complexity of the litigation with 73 separate cases, 300 defendants and a joint defense team maintaining a central repository of documents including pleadings required review of communications by e-mail, mail, and telephone. Relator can hardly complain about the "review" or "telephone" entries. Where the timekeeper has entered cryptic entries, the Special Master has reviewed the entry as it relates to the other entries which identify subject matter and/or necessity to the case. All defendants were required to periodically check e-mail and documents. The Special Master therefore has not reduced or disallowed all entries that are cryptic. The Special Master has reduced the hourly fee by a percentage where the entries are excessive or where the entries do not appear to be reasonably related to the litigation. The Special Master has also disallowed all the requested hourly fees where the timekeeper did not identify tasks necessary to the litigation and are administrative in nature.

Conferences. Mr. Toothman estimates that 24.6% of the fees were related to internal communications and conferences. It is not inherently unreasonable for a law firm to have multiple attorneys and legal assistants providing entries relating to the litigation in a complex case. Anchondo v. Anderson, Crenshaw & Associates, 616 F.3d 1098, 1105 (10th Cir. 2010). Communication between in house legal staff as well as other defense counsel was essential in coordinating joint and individual defense of the litigation. The Special Master has reduced fees where the conferences were excessive and where the subject matter of

the conference is not identified as related to the defense of the case. *Id.* at 1105; Flitton, 614 F.3d at 1178.

Duplication of tasks. Duplication of time occurs when there are more than necessary attorneys present for a hearing or when multiple legal staff are doing the same task. Robinson v. City of Edmond, 160 F.3d 1275, 1286 fn.10 (10th Cir. 1998). In a complex case such as this litigation, it was common for multiple legal staff to do research and contribute to work product. As long as timekeepers were not unreasonably doing the same work and were distinctly contributing to an end result, the hours are compensable. Anchondo 616 F.3d at 1105. Where there are excessive time entries by multiple staff or by attorneys attending hearings or conferences, the Special Master has reduced the fee requests.

Findings have also applied my "overall sense" of the litigation in "calculating and allocating attorney's time." Fox, 131 S.Ct. at 2216.

**COSTS AND EXPENSES**

Costs are awarded by the court pursuant to Fed. R. Civ. P. Rule 54 (d). The costs include clerk fees, court reporters' fees, printing, witness fees, copying fees and certain docket fees. 28 U.S.C. §1920. The Rule 54 costs are nominal because the litigation did not go to trial.

Other out-of-pocket claims are awarded as a part of the attorneys fees under §1988. The expenses are awarded if "(1) the expenses are not absorbed as part of the law firm overhead but are normally billed to a private client, and (2) the expenses are reasonable. Jane L. v. Bangerter, 61 F.3d 1505, 1517 (10th Cir. 1995). Copying costs, long distance telephone calls, travel expenses, legal research, paralegals and law clerks are included in the expenses. Missouri v. Jenkins, 491 U.S. 274, 288-289 (1989); Case 154 F.3d at 1258-1259. The first requirement is "normally billed to the client." The present "normal" is to bill even one stamp in some law firms. The second step is whether the expenses are reasonable. Counsel has the burden to establish that the expenses relate to the litigation and are reasonable. *Id.* at 1258.

Some defendants have not submitted any expenses and others have submitted pages. The Special Master has disallowed local travel expenses, overtime for secretarial staff and working meals as overhead expenses. The Special Master has also reduced meals and hotel expenses that are excessive. Because the cases were transferred to Casper, Wyoming, by the MDL panel from seven different jurisdictions, travel and hotel expenses were the normal including Cheyenne, Wyoming counsel. The extensive pleadings by defendant counsel and the joint defense team led to high copying and delivery costs.

**JOUNT CLAIMS OF ATTORNEY FEES AND EXPENSES**

Seventy-seven separate *Qui Tam* lawsuits with over 300 defendants were filed across the United States by Jack J. Grynberg, Relator. The Multiple District Litigation Panel transferred the cases to the United States District Court for the District of Wyoming, MDL Docket No. 99-MDL-1293. Participating defendants established a Joint Defense Committee with primary mission to keep joint defense

attorney's fees and costs low by coordinating legal research, filing of pleadings and briefs that were common to the defendants and reducing the number of counsel needing to appear at court hearings. Donald I. Shultz, a partner at Holland & Hart, was selected and approved by the Court as lead counsel. A Coordinating Counsel Committee was established to determine core legal issues common to all defendants in the MDL *Qui Tam* litigation and sought firms to research and draft joint defense pleadings on the issues. Holland & Hart established an extranet where documents, cases, briefs and pleadings of the Relator and the multiple defendants were electronically stored. Defendants could input and obtain data in preparation of individual pleadings. The Court authorized the creation of the joint defense representation in order to reduce the pleadings filed with the court and the management of hearings before the court.

Participating defendants agreed to reimburse the Joint Defense Team for legal fees and costs. Costs included administrative costs of the joint defense team and the extranet. Donald I. Schultz, as lead counsel, and Thomas M. Malone, as Co-Chair of the Coordinating Counsel Committee, filed affidavits for Jointly-Incurred Attorney's Fees and Expenses. Malone was an unpaid member of the Coordinating Committee.

The Special Master has reviewed over 2,399 pages of billing records and affidavits provided by the Original and Supplemental Affidavit of Donald Schultz for the attorneys providing legal tasks for the Joint Defense Team. The Special Master has also considered the objections of the Relator and his expert, Toothman. The lodestar evaluation has been used to determine the presumptive reasonable fees and costs. Perdue v.Kenny *ex rel.* Winn, 130 S. Ct. 1662 (2010).

The following bills have been submitted:

| Firm | Attorneys Fees | Costs |
|------|----------------|-------|
| Holland & Hart LLP | $2,697,123.00 | $1,103,175.29 |
| Schultz & Belcher LLP | $99,187.50 | $1,571.14 |
| Schultz & Schultz | $63,812.50 | $279.93 |
| Brown Drew & Massey LLP | $17,323.50 | $1,329.93 |
| Skadden, Arps *et al.* | $311,783.19 | $32,788.00 |
| Miller & Chevalier | $31,895.82 | $149.99 |
| Holland & Knight LLP | $34,746.00 | $8,812.87 |
| Akin & Gump | $150,550.60 | $20,825.34 |
| Beatty Law firms | $2,103,395.20 | $114,668.03 |
| Fulbright & Jaworski | $4,177,170.87 | $145,789.80 |

**Total Joint Fees and Expenses:**                **$11,116,378.50**

## HOLLAND & HART LLP

The task of Schultz and Holland & Hart was to establish a centralized electronic data base for all participating defendants and the Joint Defense Team (JDT). It received the pleadings, briefs, legal research, documents and court communications. It also provided staff support of the Coordinating Counsel Committee and the JDT. Staff scheduled the depositions and hearings, contracted for the location of the deposition, payment for rental fees, water and food during the depositions, lodging for the JDT participating attorneys, provided telephone and video access for attorneys not personally appearing, and provided electronic assistance to JDT orally appearing in Court and Special Master hearings. Sixty-three attorneys and staff provided tasks over 11 years. Dawne M. Davis managed and directed all of the staff. She attended all Coordinating Counsel Committee meetings and JDT meetings. Davis scheduled and arranged depositions and hearings. She personally attended depositions and hearings to supervise the tasks provided by Holland & Hart. Attorneys and the Court communicated directly with Davis.

The billing records do not separately identify attorneys, paralegals and staff, but the records establish the tasked performed and the relevance to the litigation.

A reasonable attorney fee is measured by the "reasonable hours that counsel reasonably spent on the litigation by a reasonable hourly rate." Law clerks and paralegals may be awarded separately as a part of the fee for legal services. Missouri v. Jenkins, 491 US 274,287-289 (1989); Case v. United School Dist. No. 233, Johnson County, 157 F. 3d 1243, 1249 (10th Cir. 1998); A litigant is entitled to fees and costs if the (1) expenses are not absorbed as a part of the law firm's overhead but are normally billed to the client, and (2) the expenses are reasonable.

In the modern age of electronics, attorneys make presentations by the use of computers and other electronic devices. In the U.S. District Court for Colorado, it is required. Attorneys or witnesses participate by phone or visually by Skype. In the MDL litigation, depositions and hearings with the Special Master were recorded by video and some attorneys participated by phone rather than attending personally. This reduced the necessity of a hundred attorneys being present, the costs of travel, lodging and other expenses. The use of the extranet eliminated the exchange of paper documents and duplication of research by defendant law firms.

In Kenny ex rel Winn v. Perdue, the plaintiff determined that the most cost-effective method of managing documents and making them available to counsel in New York and Atlanta was to create an electronic database. It retained an outside vendor to electronically copy documents. This permitted the attorneys for the plaintiff to input the documents into an electronic database available to counsel in New York and Atlanta. The defendant objected to the plaintiff seeking $315,253 as copying costs sought by the plaintiff. The District Judge held: "Based upon the evidence submitted by the plaintiffs, the Court finds that plaintiff's counsel exercised reasonable professional judgment in electing to set up an electronic data base to handle the voluminous documents in this case, and the costs incurred in doing so, although significant, were less than would have otherwise been reasonably required to maintain

these extensive documents in paper format." \*\*\* "The balance of the copying costs will be allowed as nontaxable expenses recoverable under 42 USC Sec. 1988." <u>Kenny A. ex rel. Winn v. Perdue</u>, 454 F. Supp 2d 1260, 1295 (N.D. GA 2006).

The Special Master finds that the administrative tasks of coordinating the Joint Defense Group, managing the extranet and coordinating discovery are compensable as reasonable and necessary expenses not normally absorbed as a part of the law firms overhead but are normally billed to the client.

## FEE REQUEST

Timekeeper summaries and billings do not identify the timekeepers that are attorneys, paralegals or law clerks. The timekeepers billing the highest hourly rates were: Thomas L. Sansonetti $450 (25.5 hours); Kit LeVoy $367.61 (2.3 hours); Glenn Marcy $365 (.06 hrs); Betsy Phelan $359 (191 hours); John Shepherd $350 (241.9 hours); Dennis Jackson $350 (1 hr); G. Stephen Masciocchi $300 (3 hours); and William Murane $300 (.1 hours). Donald Schultz, as lead counsel, averaged $284.54 (3654 hours) and Mike Smith as the back-up counsel billed $218 (1995 hours). The hourly fees are reasonable rates for attorneys in Colorado and Wyoming.

Donald Schultz claims 3,654.55 hours for $1,039,869.58 in fees. The Special Master has reviewed the entries and finds that entries identify the task performed and the relevance to his coordination of Joint Defense Team and electronic coordination of documents, research and filing of pleadings. More than 50% of his tasks were phone conferences, meetings with Joint Defense teams, and being the lead attorney at hearings before the Special Master and the Court. The success of the Joint Defense was dependant on Schultz and his staff carrying out their assigned tasks. The Special Master finds that the hours billed by Schultz were reasonable and necessary for the litigation defense.

The following attorneys fees are not reasonably related to the defense of the litigation:

Sansonetti's billing and costs are for trips to Washington D.C. to meet with Assistant Secretary Watson, Deputy Assistant Secretary Calvert, BLM Director Clarke and Chief of Staff Sierra in 2004 and 2005. He billed 25.5 hours for $11,475.

Barry Bartel, John Shepherd and Jill Nickerson: 35.7 hours for $10,170 attending the BOC trial and pleadings.

Stephen Masciocci and John Shepherd: 21.3 hours for $7,345 on research on Special Master appointment and Code of Judicial Conduct.

John Shepherd and Mike Smith: 103 hours for $18,841 on research and conflict issues involving Grynberg hiring a staff person from Holland & Hart.

Dennis Jackson and William Murane: 1.1 hours for $398 for an audit.

Geraldine Brimmer: 77.2 hours for $20,844. The billings are review of the extranet and documents with limited conferences. There is no documentation that she produced any productive tasks in defense of the litigation.

Dayle Petrillo: 427 hours for $17,592. He performed the administrative duties of billing participating defendants, entered payments and reported defendants that were delinquent in payments. His duties are those normally a part of a law firm's costs. United Phos., LTD v. Midland Fum., Inc., 205 F.3d 1219, 1234 (10th Cir. 2000).

Billing issues: 158 hours for $20,382. Tasks performed by staff and attorneys other than Petrillo relating to billing disputes and collecting delinquent fees.

Appeal: The task entries by Phelan, Stevens, Schultz and support staff from July, 2007, to December, 2008, are devoted to the appeal including administrative arrangements for defendant counsel attending the argument. The total fees were $104,114 and are disallowed.

The total fee request disallowed: $211,161.

The fees relevant and necessary incurred by Holland & Hart on behalf of the Joint Defense Team are $2,485,962.00.

## COSTS REQUEST

Holland & Hart seeks $1,103,175.29 in costs for the Joint Defense Team.

Costs are determined by whether or not costs are reasonably necessary for use in the case. Allison v. Bank One, 289 F.3d 1223 (10th Cir. 2002). Out-of-pocket expenses may be awarded under Section 1988 if (1) the expenses are not absorbed as a part of the law firm's overhead, but are normally billed to a private client, and (2) the expenses are reasonable. Jane L. v. Bangerter, 61 F.3d 15, 157 (10thCir. 1995). Meals and meeting expenses are common overhead expenses and are not recoverable under Sec. 1988. Waters v. Int'l Precious Metals Corp., 190 F. 3d 1291, 1299 (11th Cir. 1999). Likewise, clerical work and other expenses are not recoverable. As Chief Justice Rehnquist stated in his dissent in Missouri v. Jenkins, 491 US 274 (1989), "...[T]hat attorneys seeking fees under Sec. 1988 would have no basis for requesting separate compensation of such expenses [secretarial time, paper clips, electricity and other expenses] unless this were the prevailing practice in the local community. The safeguard against the billing at a profit of secretarial services and paper clips is the discipline of the market."

The Special Master has reviewed 358 pages of expenses and costs in the amount of $1,103,175.29 submitted by Holland & Hart. The Special Master has also compared the expenses with the fee request. The Special Master finds that the following expenses and costs are disallowed because they are not reasonable or necessary to the defense of the litigation, or not recoverable because the costs are those normally a part of law office expenses.

1999:   $2,069.76 Joint Defense Team meeting including breakfast & lunch

$264.15 Undesignated invoices to Dawne Davis

$472.50 Secretary & clerical services

Total:   $2,806.41                              Net cost allowed:        $18,546.55

2000:   $555.00 Secretary & clerical services

$5,805.34 Banquet facilities and meals

$336.31 Meeting in Mike Beattys' office

Total: $6,696.65                                Net: $77,038.61

2001:   $150 Secretary & clerical service

$383.61 Meals

$6,230.50 JDT meetings

Total: $6764.11                                 Net: $51,483.72

2002:   $150. Secretary & clerical service

Total: $150                                     Net: $107,102.56

2003:   $240 Secretary & clerical service

$8,369.94 Joint Defense Team banquet lunches, beverages and refreshments.

Total: $8,609.94                                Net: $356,222.78

2004:   There are triple billings by Davis for Grynberg depositions for the following days:

12/2-13:  $1,000, $654.25, $1,429.27; 12/9-15:$700, $1,301.49 and $338;

12/16-19: $800, $2,079.01, $1,619.25; 1/07: $976.98, $814, $376.75, $750 and $750;
1/8: $906, $329.50 and $650; 1/13: $942.55, $494.95 and $550;

2/3: $906.48, $331.50 and $550; 10/22: $986.37, $1,750 and $1800;

11/6: $420.56, $1,200 (catering); $350 (catering) and $1,095.50 (catering);

11/17: $3,748.25 (lodging), $1,354.60 (luncheons, beverages) and $1,649.75
(phone lines and high speed expenses).

17

The entries are for "Grynberg Deposition and Hearing," "Conference Room and Accommodations for Conference Room and Catering expenses."

Holland & Hart seeks $8,676.49 for meals, $15,763 for lodging and $24,652 for Grynberg depositions. Interspersed from pages 166 to 227 are billings for 2004 that create the different entries above. The billings noted as meals and lodging do not add up to the amounts claimed. The luncheons and catering for the depositions are not separated out as meals, but included in the Grynberg deposition expenses. The same problem exists for lodging. The 11/17 billing is for "conference room and lodging." It does not identify what portion is lodging or for whom the lodging is billed.

Based upon invoices of conference room expenses from 2003 and 2005, Holland & Hart is entitled to $950 per day for deposition conference rooms of $9,199.85. It is entitled to the cost of the phone lines and high speed expenses for the depositions in the amount of $5,299 for a total of $19,797.95. The deposition expense is reduced by $4,854.66.

Lodging expenses that are as tasks related to defense of the litigation are $2,022.14. The lodging request is reduced by $13,741.72.

Holland & Hart is entitled to $403.80 for meals in traveling to Washington DC. The remaining meals costs are expenses absorbed by the Joint Defense Team. Meal expense of $8,272.69 is disallowed.

The following expenses are disallowed:

Grynberg deposition costs: $4, 854.66

Lodging: $13,741.72

Meals: $8,272.69

Total: $26,869.07                           Net: $250,451.74

2005:   $180 Secretary and clerical

$8,115.34 Meals for the Joint Defense Team

$3,256.42 for T.L. Sansonetti expenses for meetings with officials of BLM and Assistant Secretaries Watson/Calvert. The task and costs are not established as relevant or necessary for the defense of the litigation.

Total: $11,551.76                           Net: $64,440.86

2006:   $1,688.53 Meals for Joint Defense Team meetings

Total: $1,688.53                            Net: $26,773.70

2007:   $1,086.48 Meals for JDT meetings

$30.63 Expenses for the case history of Denver and Adams County District. The expense is not relevant to the litigation.

Total: $1,117.11                                    Net: $44,309.60

2008:  $541.04 Meal expenses for multiple unidentified parties.

Total: $541.04                                     Net: $17,564.58

2009:  No change                                   Net: $22,445.97

Total reasonable and necessary expenses:           $1,036,380.67

## SCHULTZ & BELCHER LLP

Donald I. Schultz left the firm of Holland & Hart LLP and entered into the partnership of Schultz & Belcher LLP. He has submitted billings for 2009 and 2010 which involve communications concerning the United States Supreme Court denying Relator's appeal of the 10th Circuit ruling, and negotiations concerning settlement of outstanding cases with Relator's attorney.

## FEE REQUEST

The request is for $99,187.50 in fees and $1,571.14 costs.

Donald I. Schultz's hourly fee was $375 per hour. The Special Master has reviewed 59 pages of invoices which are detailed as to the task performed and the necessity of the tasks for the Joint Defense team to the litigation.  The Special Master disallows 7.2 hours and $2,700 as administrative tasks devoted to billings of defendants for the services of the Joint Defense Team.

The Special Master disallows as excessive a billing for $718 on October 17, 2008. The billing is at the Hotel Monaco for two nights, which includes breakfast of $94.70, lunch $59 and dinner at $85.27. Hotel Monaco is a four star hotel, and the expense is unreasonable.

The total reasonable and necessary expenses are: $96,487.50 in fees and $853.14 in costs for a total of $97,340.64.

## SCHULTZ & SCHULTZ LLP

In 2011, Donald I. Schultz was in the firm of Schultz & Schultz LLP. He continued to carry out the assignment as lead counsel for the Joint Defense Team. The primary tasks involved the allocation of a deposit by Grynberg for a Special Master fee as ordered by the Court; obtaining fees and costs from the Joint Defense Team for the submission of attorney fees and costs to the Court, and "continue analyzing fee and expense data and drafting affidavit for joint fees and expenses."

## FEE REQUEST

The request is for $63,812.50 fees and $279.93 in costs.

Donald I. Schultz's hourly fee was $375 and Ursula P. Schultz's hourly fee was $125 as a paralegal rather than as an attorney. Donald Schultz billed 156.6 hours using block billing. An example would be 9.10 hours on September 20, 2011, which commences with "Continue analyzing fee and expense data and drafting affidavit for joint fees and expenses." The remaining half page of tasks is devoted to communications with multiple parties, Plaintiff's counsel, and court staff concerning the payment by Grynberg for Special Master fees and distribution of payments. The September 8, 2011, billing of 8.30 hours commences with the same phrase but three-fourths of the page is communication with multiple parties, plaintiff's counsel, the court staff concerning Grynberg's failure to comply with the court order, consideration of contempt pleading and discussion of e-service. There are 17 entries that commence: "Continue analyzing fee and expense data and drafting affidavit for joint fees and expenses."

The Special Master finds that 26 hours of tasks relate to the payment of Special Master fees and allocation of those fees which are not related to the "analyzing fee and expense data and drafting an affidavit for joint fees and expenses," and are not related to defense of the litigation. It also includes tasks of updating the e-service.

The remaining tasks involve obtaining information and documentation from Joint Defense Team members in order to file a Motion for Fees with affidavits to support the fees and costs of the Joint Defense Team. The defendants are entitled to recover reasonable fees and costs incurred to present their claim for attorney fees and costs in defending the litigation. Camacho v. Bridgeport Fin. Inc, 523 F.3d 973, 981 (9th Cir. 2008); Mares v. Credit Bureau of Raton, 801 F.2d 1197, 120 (10th Cir. 1986).

Ursula Schultz billed 40.7 hours at $125 per hour. The tasks consisted of legal research on fees and entering data on the spread sheet.

Schultz and Schultz LLP has submitted reasonable and necessary fees of $54,062.50 and expenses of $279.93 for a total of $54,342.43.


**BROWN DREW & MASSEY LLP**

The first recorded task sets forth the purpose of retaining the law firm of Brown Drew & Massey LLP. It states: "Drafted response to Don Schultz and conferred with attorney, Tom Reese, regarding providing services of Casper court filings to Holland & Hart for efficient website updates." The firm is located in Casper, Wyoming. Tom Reese was the attorney at $250 per hour. Gigi Davis and Carol Mariegard were administrative staff or law clerks in the law firm. The invoices do not designate their titles. They billed at $75 per hour. The fees are reasonable and less than other attorneys, paralegals or law clerks of other law firms. The law firm provided similar services for Fulbright & Jaworski, LLP and Beatty & Wozniak.

**FEES REQUESTED**

Gigi Davis billed 14.57 hours for the task of obtaining records and documents from the United States District Court in Casper, Wyoming and providing them to Holland & Hart. She also filed documents on behalf of Holland and Hart. The tasks were administrative and did not require any legal skills. 15.57 hours and a fee of $1,082.50 are disallowed. Carol Mariegard apparently replaced Davis, and 1 hour at $75 is disallowed as administrative.

Tom Reese billed 64.25 hours for $16,062.50 in fees. His task entries fail to identify the task, the applicability to the case and the work product actually necessary to the defense of the case. Case v. United School Dist. No. 233, 157 F.3d 952, 956 (10th Cir. 1994); Cadena v. Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000). He did appear at hearings and assisted counsel at the hearings. The Special Master has reduced the fees by 50% because the entries fail to comply with billing standards of Case.

Pam Brondos, Rin Karns and Randall Carnahan have a total of .90 hours and a total fee of $103.50. The fee is disallowed for the same reason as Reese.

The firm had $1,329.93 in mailing and Federal Express costs. As indicated, the firm was retained to provide pleading and documents to Holland & Hart LLP for entry into the extranet. The costs are reasonable and necessary for the litigation.

The Special Master finds that $9,361.18 in fees and costs are reasonably related to the defense of the case.

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP (SKADDEN ARPS)

Skadden Arps was retained by the El Paso Corporation in January, 1999. It commenced research and preparation of a template memorandum of points and authorities to dismiss under Fed. R. Civ. P. Rule 9 (B) and Rule 12 (B) (1),(6) and (12). It also prepared the reply brief in support of the Motion to Dismiss. In March and April, 2001, the firm researched and drafted a Rule 11 motion as a part of the Joint Defense Team Rule 11 Committee. The tasks performed by Skadden Arps were performed between January, 1999, and April, 2001.

**FEE REQUEST**

Skadden Arps' portion of the joint defense fees and expenses are: $321,633.00 fees and $32,788.00 expenses less $32,650.11 paid by the firm's client.

Legal staff timekeepers billed as follows:

Douglas G. Robinson, partner - $480 per hour; Associates between $146 per hour to $290 per hour. Robinson billed 362.5 hours and $142,322. The associates billed 662.55 for $70,447.65. Denise Buffingon, Client Specialist, performed paralegal tasks of 19.25 hours for $1,582.35. They charged $9,987.70 for legal assistants. The invoices do not record the tasks of the legal assistants. The hourly fees are reasonable rates for attorneys practicing oil and gas law within Wyoming and Colorado.

The billings set forth the tasks performed by the attorneys and that the tasks were reasonably performed for the defense of the litigation. Relator objects to the number of hours devoted to the research, preparation and filing of the Motion to Dismiss. Relator has not provided evidence establishing the hours are excessive other than conjecture. The Rule 9 and 12 Motions to Dismiss by the Joint Defense Team and used by other Defendants in individual Motions to Dismiss eventually led to dismissal of the Relator's claims.

The Special Master disallows $9,987.70 of legal assistant fees because the invoices fail to identify the tasks performed.

The costs of $32,788.00 requested are minimal and justified as reasonably incurred for the research and filing of the pleadings.

The Special Master finds that the fees relevant and necessary for the defense of the litigation by Skadden Arps on behalf of the Joint Defense Team are $278,995.19 fees and $32,788.00 expenses for a total of $311,783.19.

### MILLER & CHEVALIER, CHARTERED

Miller & Chavalier, attorneys for Exxon Mobil Corporation, commenced research and drafting of a generic Fed. R. Civ. P. Rule 11 motion. It participated in conferences of the Joint Defense Team Rule 11 Committee and cooperated with Skadden Arps counsel researching and drafting a generic Rule 11 motion and brief. Research and multiple drafts were exchanged and discussed in March and April, 2000 with a final draft the end of April.

### FEE REQUEST

Miller & Chevalier fees and expenses for the Joint Defense Team were $37,545.00 fees and $149.99 expenses.

D. Craven, lead counsel, evaluated different proposed Rule 11 motions and participated in the Rule 11 Committee discussions to approve a final draft. She billed 51.25 hours at $400 per hour for $20,500.00.

J.P. Tuite provided coordination with the Motion Committee, revisions between various drafts and research by the associate attorney. He billed 31.5 hours at $350 per hour for $11,025.00.

M. Godfrey provided legal research and drafts of a generic Rule 11 motion. He charged $140 per hour.

The fees are within the reasonable presumptive fees for attorneys practicing oil and gas law in Wyoming and Colorado.

The timekeepers identified the task and relevancy to the defense of the litigation. The expenses of $149.99 are minimal and necessary. The Special Master finds that the fees and expenses of Miller &

Chevalier on behalf of the Joint Defense Team of $37,545 in fees (less $5,799.17 paid by Exxon) and $149.99 in expenses for a total of $31,895.82 were reasonable and necessary to the joint defense.

## HOLLAND & KNIGHT LLP

On behalf of the Joint Defense Steering Committee, Holland & Knight LLP researched the original source/public disclosure defense by gathering facts, material and expert reports. It drafted a recommended memorandum on public disclosure and original sources issues, as well as an outline regarding a Motion to Dismiss.

### FEES

Colley as a partner billed 3.2 hours at $330 per hour for a total of $1,056.00. Ittig as an associate billed 81.6 hours at $215 per hour for a total of $17,544.00. Southard as an associate billed 62.1 hours at $260 per hour for a total of $16,146.00. The hourly fees are within the reasonable presumptive fees for attorneys practicing oil and gas law in Wyoming and Colorado.

The timekeepers identified the task and relevancy to the defense of the litigation. The original source defense was primary to the dismissal of the *Qui Tam* litigation.

The expenses of $8,812.87 were relevant and necessary to the defense of the case.

The Special Master finds that the billing of Holland & Knight LLP of $34,746.00 fees and $8,812.87 for a total of $43,558.87 were reasonable and necessary to the joint defense.

## AKIN & GUMP

Jerry Rothrock and Robert Salcido on behalf of the Joint Defense Team in 2001 did research and prepared a Memorandum and Motion for Interlocutory appeal of a Rule 9(b) Motion to Dismiss. Akin & Gump commenced research, briefing and drafting a motion for attorneys fees from January-April, 2007, and participated in the oral argument of the motion before Judge Downes on behalf of the Joint Defense Team.

### FEES

Rothrock billed 11.7 hours at $425 per hour for a total of $4,972.50; R. Salcido billed 10.1 hours at $450 per hour in preparing a motion for interlocutory appeal in 2001 for a total of $4,545. In 2006/2007, Salcido and S. Yohai researched and drafted a Motion for Attorney Fees on behalf of the Joint Defense Team. Salcido billed $550/$575 per hour for 139.50 hours for a total of $78,287.50. S. Yohai billed $240/$315 per hour for 215.60 hours with a total of $62,019.00. The hourly fees in 2001 are within the presumptive range of attorneys practicing oil and gas law with Wyoming and Colorado. The fees in 2006/2007 do not require a specialty in oil and gas law, but whether fees are entitled in *Qui Tam* litigation. Although the fee of Salcido is high, the Special Master has no evidence that it is excessive.

The research and drafting of the Motion for Attorney Fees involved the Joint Team Committee members commenting and suggesting revisions of the multiple drafts during a four-month period. The

23

Relator objects to hours spent on seeking fees. The Special Master has previously held that reasonable fees can be assessed. The hours expended on the Motion for Fees resulted in the motion being granted.

The expenses submitted are double billed on each day on most of the entries. Eliminating the double entries, the expenses are $11,166.29. Akin & Gump also billed $531.51 in secretary overtime which is an office expense, $12.15 in meals, and $50 for court renewal fee and membership for a total of $593.66 disallowed. The total expenses are $10,572.63.

The Special Master finds that the billing of Akin & Gump of $149,824.00 in attorney fees and $10,572.61 in expenses for a total of $160,396.63 were reasonable and necessary to the joint defense.

The joint fees and expenses by law firms providing joint defense tasks have been paid by defendants participating in the services provided by the joint defense team. They are not separate legal fees and expenses passed on to Grynberg. The individual defendants were assessed and paid joint defense fees and expenses based upon $11,093,418.21. The Special Master has found that the reasonable fees and expenses of the joint defense team are $8,283,220.90 or 25% less than assessed to the defendants. The defendants were assessed and paid more than the reasonable amount. Grynberg is only required to pay the reasonable fees and expenses incurred for defense of the frivolous claims. Fox, 131 S.Ct. at 2216. The Special Master has reduced the claims for payments of joint defense fees and expenses by 25%.

### BEATTY LAW FIRMS

The Beatty law firms n/k/a Beatty & Wozniak LLP represented multiple oil and gas companies as well as provided assistance to the Joint Defense Team. Because it was providing legal services for multiple defendants as well as the Joint Defense Team, the firm had a separate accounting system where hourly billings were divided between the tasks for the specific client, tasks provided for multiple clients, tasks that also involved El Paso gas and tasks applicable to the Joint Defense Team. How and who divided the tasks into separate accounts cannot be determined from the billing record. Because of the multiple representations, there are entries for over 23 timekeepers during the years proving legal services for the Joint Defense team.

Tasks performed for the Joint Defense team initially involve the gathering of factual information, research, depositions, drafting a joint motion to dismiss, briefs supporting the motion, multiple conferences on the motion, court hearings and subsequent pleadings responding to the court orders on the original source project. Like Holland & Hart, the firm established an electronic repository for all evidence, depositions and legal research that related to the original source defense. Timekeepers billed between $45 and $90 per hour devoting their time coding original source information and entering the information into the repository. The Beatty firm worked closely with Fulbright & Jaworksi LLP on the original source doctrine.

Because of the multiple defendant representation, I have compared the Joint Defense Team billings against the billings to KN Energy and CMS Energy. There was minimal possible duplicate billings.

**FEE REQUEST**

Joint Team funds paid to the Beatty firm were $2,103,395.20 in fees and $114,668.03 in expenses for a total of $2,218,063.23.

The hourly fees of the attorneys and legal staff were: Michael Beatty, $450 per hour; Rebecca Noecker, $395 per hour; M.Heydt, $275 per hour; T. Collier, $175 per hour; K. MacIntyre, $140 per hour; G. Graham (PL), $120 per hour; D. Winters (PL), $110 per hour; T. Jacobs (IT), $120 per hour and C. Bailey (DC), $45 per hour. I find the hourly fees of the attorneys and legal staff are reasonable and within the presumptive range for attorneys and legal assistance for attorneys practicing in oil and gas law within Wyoming and Colorado.

Relator's expert objects to the entries of more than one attorney attending conferences, hearings and depositions by non-attorney staff. Beatty and Noecker attended conferences and hearings involving the original source doctrine on behalf of the Joint Defense Team as well as their individual defendants. Because information was stored electronically, technical staff helped prepare the presentations as well to assist counsel in making the presentations. It was reasonable and necessary to have the legal team present including the paralegal shepherding the case (Graham) and the digital technician (Jacobs). I find that the timekeeper hours and expenses incurred with more than one attorney and with the supporting legal staff were reasonable and necessary unless otherwise noted.

The following hours are disallowed:

Motion for sanctions. 468 hours and $114,978.50 were tasked to research, motion and briefing a Rule 37 motion for sanctions. One billing indicated 17.10 hours for $2,565 was not billable, but the invoice includes the amount. The motion for sanctions and the award of any fees are not relevant or necessary to the defense of the litigation. Only the Judge can rule on the motion and determine the appropriate sanction which may include attorney fees and costs. John Zink Co. v. Zink, 241 F.3d 1256, 1259 (10th Cir. 2001). I note that Special Master Pringle in his order of August 9, 2004, held: "The special Master also has substantial concerns regarding the amount and allocation of legal resources devoted to the Motion. Defendant Application for Attorney fees discloses that five attorneys (Noecker, MacIntyre, Shultz, Smith and Micheli) billed a total of over 40 hours to this matter. Another individual whose status is unknown devoted approximately 25 additional hours to legal research and drafting memoranda. The Special Master finds and concludes that issues raised by the instant motion did not require this magnitude of effort and manpower." I concur. I disallow 468 hours and $114,978.50 as not reasonably necessary for the defense and an issue to be determined by the District Judge.

Congressman Tancredo. 6.90 hours for $1,653.00 were devoted in meeting with Congressman Tancredo. The billings indicate that the Joint Defense team and other defendants billed tasks that relate to the U.S. Senate and Congress investigating the possibility of amending legislation to the False Claims Act. I find that the hours are not necessary to the defense of this litigation, and $1,653.00 is disallowed.

June 30, 2005. The June 30, 2005 invoice has redacted billings. Relator objects to the billing because he cannot evaluate the tasks performed for the hours billed. I also cannot identify the tasks. The tasks identified are 7.3 hours and fees of $26,013.50 which are disallowed.

Non-billable hours. There are twelve invoices that have the abbreviation NC (No charge) which are not billed to the Joint Defense Team but are submitted as reimbursable fees. The total non-billable charges of $91,208.00 are disallowed.

Beatty/Noecker. Beatty and Noecker attended and billed hours for the following meetings or depositions:

Original source meeting in June 2002 both attended with two other staff members. Beatty billed $4,800 and Noecker $5,600. The fees of the other two attorneys were marked NC. $4,800 is disallowed as duplicative. A deposition was taken December, 2002, with both present. Beatty billed 10 hours for $4,800 and Noecker for 10 hours for $3,675. $3,675 is disallowed as duplicative.

March 2005: In March 2005, Beatty and Noecker prepared for the presentation of the Joint Defense motions to dismiss on the b-2 and b-4 claims before Special Master Pringle. On March 15 there was a working session with Beatty, Noecker and Noone. Graham, PL and Jacobs (IT) attended for $8,515 in fees. Jacobs prepared the electronic presentation and Graham the documents and exhibits. On March 16, the Joint Defense team met to coordinate and comment on the presentation. Beatty and Noecker adjusted the presentation based upon the comments and Jacobs updated the electronic presentation and set up the arrangement of the presentation in the courtroom. He also assisted in the presentations by the Fulbright attorneys. Beatty, Noecker and Noone attended the oral argument along with the assisting staff. The staff were an integral part of the presentation. Relator objects to the multiple use of attorneys and staff. I have again reviewed the hours for March and find that the $2,145 in clerk fees are administrative. I also find that the 40 billing hours and $11,082.50 in fees of Michael Noone are duplicative and not necessary to the defense of the case. The tasks do not show any productive legal work and consist of attending meetings and the oral arguments where Beatty and Noecker were present. $13,516.50 in fees are disallowed for March, 2005.

Coding/Inserting documents. Relator objects as administrative the hour and fees of $105,000 in timekeeper billings for coding and inserting coded documents into the electronic repository. The coding was to identify documents and information related to the original source defense and other motions filed by the joint defense team. Entries from November, 2003, to February, 2004, were documents and exhibits obtain from the deposition of Grynberg. Over 90% of the entries are billed at $45 to $80 per hour. The remaining billings are by attorneys or paralegals. As in the findings for Holland & Hart, the electronic recording of documents benefits the Relator by eliminating 300 defendants maintaining the files, therefore reducing attorney fees and costs of the individual defendants. The fees for coding and inserting coded documents are relevant and necessary for the defense of the litigation.

**COSTS**

Beatty requests $114,668.03 in costs of services performed for the Joint Defense Team. I have reviewed the costs and they are necessary and reasonable with the following exception. Beatty attorneys and staff billed for working meals, meals for group meetings and tips in the amount of $4,719.37 which are disallowed as not necessary for the defense of the litigation.

I find that Beatty & Wozniak incurred reasonable and necessary fees and costs on behalf of the Joint Defense Team as follows: $1,847,839.70 attorney fees and $109,948.66 in costs for a total of $1,957,788.36.

**FULBRIGHT & JAWORSKI LLP**

In January, 2002, Nancy Pell and L. Poe Leggette of Fulbright & Jaworski met in Denver with the Beatty law firm. On behalf of Fulbright & Jaworski, they entered into a "Joint Original Source Measurement Project Agreement" with the Joint Defense Committee. It would provide legal research and pleadings on behalf of the JDT. The Agreement limited fee billings to no more than $50,000 per month. When it exceeded the amount, it was required to "write off" fees to stay within the contract. Fulbright averaged $49,143 in billings per month during 84 months after writing off fees. Forty-six timekeeper's billed for tasks during that time period. The billings do not identify the timekeeper's position in the firm unlike billings by Fulbright & Jaworski for other defendants. The number of timekeepers is more than double that of Beatty & Wozniak, which was a part of the "Joint Original Source" team and maintained a repository of research and cases, which was used by Fulbright & Jaworski.

**FEE REQUEST**

Fulbright & Jaworski was paid $4,177,170.87 in fees and costs of $145,789.80 by the defendants participating in the Joint Team expenses.

The attorney fees of the significant timekeepers from 2002 to 2010 are:

S. Canfield:    retainer for six months for $52,770.

P. Leggette:    2002 - $410 per hour; 2009 - $700 per hour for a 41% increase

N. Pell:    2002 - $340 per hour; 2009 - $560 per hour for a 39% increase

L. Morton:    2002 - $305 per hour; 2009 - $560 per hour for a 45.5% increase

In 2002, the lowest hourly fee for a timekeeper was $120 per hour; in 2009, there is only one timekeeper at $180 per hour. 80% of the timekeepers billed at $435 to $700 per hour. I have compared the hourly billing of Fulbright & Jaworski billings in Coral Energy, Pan Energy, Acadian and Shell cases. William Woods and Daniel McClure had similar percentage increases and billed in 2008/2009, $620 to $690 p/hour. The difference in the representation of the other defendants by Fulbright & Jaworski was that the majority of timekeeper billings were by personnel with hourly fees between $80 per hour to

$240 per hour with half the number of timekeepers. The hourly fees are considerably higher and research was done by the partners rather than lower hourly fee staff.

I find hourly fees below $550 per hour for lead counsel are within the presumptive attorney fees for attorneys practicing oil and gas law within Wyoming and Colorado. Because the other timekeepers are not identified by their position within the firm, I cannot determine the reasonableness of the hourly fees. I find the billings to be excessive. There are multiple billings daily by timekeepers including the partners.

The following are examples of the excessive hourly billings and fees:

**2009:** The 10th Circuit entered its final opinion on March 19, 2009. Leggette commenced the task of preparing a petition opposing Grynberg's petition for *certiorari* to the United States Supreme Court. The following timekeepers billed after the opinion: J. Cadena (law clerk?) $180 per hour; B. Vetter $340 per hour; Morton $425 per hour; Breckenridge, $460 per hour; Pell, $560 per hour; Franklin, $670 per hour; and Leggette, $700 per hour. Franklin, Breckenridge and Vetter are new timekeepers. Franklin's entries review tasks performed by others. Breckenridge also reviews tasks of others and does some research which can be performed by a law clerk or paralegal. Vetter reviewed cases on the substantiality test and essential elements. Leggette devoted 80 hours over two weeks producing three drafts and a final pleading opposing the petition for $56,000. $107,682.50 in fees was billed in three and a half weeks by timekeepers at $340 to $700 per hour. (Ex. 13 to Schultz affidavit)

**2007-2008:** In January 2007, Fulbright & Jaworski commenced research and drafting a response brief to the 10th Circuit Court of Appeals for the Joint Defense Team. Between January, 2007, and November 21, 2007, there are multiple timekeeper billings per day "drafting appellees' brief," "editing appellees" brief', and revise original source brief'. There are thirteen days with Morton, Pell and Leggette billing on the appellant brief. Leggette billed 347 hours at $660 per hour for $229,515. Morton billed 305 hours at $560 per hour for $210,162. Pell billed 104 hours at $560 per hour for $54,600. The other timekeeper was paralegal Caine who billed at $180 per hour for $37,620. The total preparation of the brief for the primary timekeepers without the legal staff was $531,189. During the briefing, Morton's hourly fee increased to $560 per hour. After the briefing, it returned to $425 per hour.

After filing the brief, the hourly fees of Leggette increased to $700 per hour and Pell to $560 per hour. Morton returned to $425 per hour. Commencing in February, Leggette, Pell and Morton commenced entries "preparing for oral argument." Leggette billed 414 hours of preparation for the oral argument for $209,812. Morton and Pell also billed $150,608. Morton and Pell traveled in August 2008 to a Joint Defense conference for a total of 62 hours and $43,631 in fees. Morton traveled again in September for a similar conference for $14,768 in fees. All three attorneys traveled to Denver for a moot court presentation of the oral argument for $70,479.

**2005:** Preparation/oral argument. An oral argument was held before the District Judge on Motions to Dismiss. Leggette was limited to 30 minutes on the Rule 9 (e)(4) argument and Beatty 30 minutes on the Rule 9 (b)(2) argument. The Beatty law firm commenced its preparation for the oral argument in October, 2005. Beatty billed $450 per hour, Noecker, $395 per hour and the paralegal $120

per hour. The firm billed a total of 200 hours and $65,000 in attorney fees. It adjusted the fee by $5,448 for a total of $49,954.

Fulbright & Jaworski billed 592 hours and $182,042 in attorney fees with three partners billing for "preparing for oral argument'. All three attorneys and Bevan (PL) traveled to the hearing. Other examples of multiple billings by Leggette, Pell, Morton and Bevan on the same day are as follows: 12/1 – 30 hours, $10,938; 12/7-46 hours for $16,050 and 12/8-51.75 hours for $18,685. There are five entries in November of 2005 where four or five timekeepers billed on the preparation for oral argument in the same day and four entries of three timekeepers billing on the same day.

Public Disclosure Reply. Between October 30, 2004, and December 13, 2004, except for a one week period, Leggette billed daily on the public disclosure reply brief. Her entries were "work on reply brief". She billed 266 hours at $480 per hour with an attorney fee of $126,610. She was assisted periodically by Pell and other legal staff with similar entries. Morton's task of preparing a reply to the original source portion of the reply brief commenced on November 22 with 99 hours for $32,175. Other staff members also billed hours for the reply brief.

Facts and Conclusions of Law. (FF&CL) Commencing in February, 2004 to June 6, 2005, Leggette and Morton billed daily with the notation FF&CL. Morton billed 208 hours and Leggette 60 hours for a total of $112,098. There are continued notations of the FF&CL modification through November, 2004. The entries do not identify what document or documents the FF&CL the entry applies.

Motion to adopt report with modifications. From May 10, 2005 to June 6, 2005, Leggette billed daily for 227.75 hours and $95,985 on a motion to adopt a report of Special Master Pringle with modifications which was submitted to the Joint Defense committee. Morton and Pell devoted another 9.5 hours for an additional $8,050 in fees in revising the report for submission.

Other examples of excessive billings: In 2005, the following days have multiple timekeepers' billings and fees: January 15 - 5 timekeepers with the low hourly rate of $234 per hour and the high of $480 per hour for $11,477; January 21 - 8 timekeepers for $21,119; February 25- 10 timekeepers for $13,134 and March 14 - 7 timekeepers for $20,718 (preparation of oral argument). These are only examples of a practice of billing.

An example of associate counsel billing is Russell at $235 hours. In April 2004 he billed daily 7 hours to 11.5 hours for 119 hours total on the task of "Review public disclosure documents and classify them by allegations." In March 2004 he billed 6.5 to 9.75 hours for 60 hours on the same task. In February 2004 he billed 25 hours on researching the standards for answering interrogatories under the Federal Rules of Civil Procedure. The records do reflect that Fulbright wrote off some of Russell fees because of the $50,000 limitation per month.

Pell and Morton also provided legal work for Shell Oil. Pell from June 20 to June 24, 2005, researched and prepared Shell's specific objections to the Special Master's Recommendations. She billed 29 hours and $10,600 to Shell. On June 24, she billed Shell for additional review of the pleadings and billed the Joint Defense 3 hours and $1,305 for reviewing client-specific briefs with consistency with

the coordinated motion to adopt. Leggette, on June 24, billed 8.75 hours and $5,118 for revising the Motion to Adopt and reviewing other draft briefs for consistency with the group position.

Morton on November 30, 2007, filed the Joint Defense Appellate Brief. On November 28, 2007, she commenced research for Shell on filing an appeal brief. She devoted December 4, 2007, to January 11, 2008, researching, drafting and reviewing the draft of the appeal brief for Shell and billed Shell 1152 hour and $48,620. On January 9 and 10, Pell billed the Joint Defense for reviewing the individual defendant briefs which would include Shell's for $5,600.

Multiple partners traveling. From the commencement of Fulbright & Jaworski's retention by the Joint Defense Team, multiple partners traveled to the same meetings or hearings. The following are examples: February 2-4, 2002, Morton and Leggette met with Beatty in Denver for 28 hours and $10,629 including travel time. January 7-9, 2003- Morton and Leggette attended a deposition in Denver for 75 hours and $15,674 including travel. February 21-22, 2005- Leggette and Pell came to Denver for JDT meeting for 33 hours and $14,954 including travel time. March 15-19, 2005-Morton, Leggette and Bevan to Denver for an oral argument by Leggette for 103 hours and $37,248 including travel time. August 11-14, 2008-Pell and Morton came to Denver for a small group meeting for 36 hours and $25,350 fees and travel time.

October, 2009, billing. The Court of Appeals opinion was in March 2009. In October 2009, a final excessive hourly billing in a 3 week period resulted in a $107,682.50 to the Joint Defense Team with Leggette billing $700 per hour with three new attorneys billing at over $500 per hour.

Congressman Tancredo. 81 hours were billed for preparing and meeting with Congressman Tancredo on legislation to amend the FCA for $13,537.75, which does not relate to the defense of the case.

There is no evidence that Canfield provided any legal services. His retainer fee of $52,770 is disallowed.

### COST REQUEST

I have reviewed the costs submitted by Fulbright & Jaworski of $145,789.80. The following costs are disallowed because they are normally administrative expenses of the law firm:

| | |
|---|---|
| Meals (including working lunches): | $3,331.54 |
| Other (costs defined as "other): | $17,463.67 |
| Local Travel: | $2,122.99 |
| Secretarial overtime (administrative): | $2,702 |
| Total costs disallowed: | $25,620.20 |

I have found that there were multiple attorneys traveling and attending meetings and hearings. I am making an adjustment of the total fees and costs, and therefore, I am not making an additional reduction of costs. The total cost is $120,149.60.

Exhibit 13 of the affidavit of Schultz summarizes the total hours, fees and costs billed by Fulbright & Jaworski. It entered into an Agreement that limited the fees to no more than $50,000 per month. It incurred $5,496,278 fees on 17,680 billing hours of all of the timekeepers. In accordance with the Agreement, it wrote off $1,319,107.13 in fees in order to comply with the agreement and received from the Joint Defense Team $4,177,170.87 in fees and $145,769.80 in costs for a total of $4,322,940.67 which averaging just less than $50,000 in monthly fees. I have reduced the fees by $66,307.75 for a balance of $4,177,170.87. $1,160,845 of the fees were incurred for the appeal.

Fulbright & Jaworski was retained to research, prepare pleadings and defend the pleading on the original source doctrine as was Beatty and Wozniak and other Joint Team attorneys. Holland & Hart had the greater task of over-all supervision and administration for the Joint Defense Team as well as pleadings. Even after reducing its fees, Fulbright & Jaworski billed nearly 45% of the joint defense fees.

I find that the billed hours and fees of Fulbright & Jaworski were excessive as well as the number of timekeepers. I find that the fee request should be reduced by $1,000,000 thereby bringing the fees in line with the other law firms providing legal services to the Joint Defense Team and to the other MDL defendants.

I find that Fulbright & Jaworski is entitled to $3,177,170.87 in attorney fees and $120,149.60 in costs on behalf of the joint defense team.

**TOTAL APPROVED FEES AND COSTS OF THE JOINT DEFENSE TEAM**

|  | **FEES** | **COSTS** |
|---|---|---|
| Holland & Hart LLP | $2,485,962.00 | $1,036,380.67 |
| Schultz & Belcher LLP | $96,487.50 | $853.14 |
| Schultz & Schultz LLP | $54,062.50 | $279.93 |
| Brown, Drew & Massey LLP | $8,031.25 | $1,329.93 |
| Skadden Arps, Slate, Meagher & Flom LLP | $278,995.19 | $32,778.00 |
| Miller & Chevalier | $31,745.83 | $149.99 |
| Holland & Knight | $34,746.00 | $8,812.87 |
| Akin & Gump | $150,550.60 | $10,572.63 |
| Beatty & Wozniak LLP | $1,847,839.70 | $109,948.66 |

| Fulbright & Jaworski LLP | $3,177,170.87 | $120,149.60 |
|---|---|---|
| Subtotal: | $8,165,591.44 | $1,321,255.42 |

**TOTAL APPROVED FEES & COSTS:**  $9,486,846.86

Supplement to Ex. 2 of the third affidavit of Shultz allocates $917,776.93 for appellate fees and costs of the Joint Defense. The amount is not accurate. Shultz, Stevens and Phelan of Holland & Hart were involved extensively in the coordination with of defense counsel filing appellate briefs including the joint brief by Fulbright & Jaworski. It dealt with the 10th Circuit scheduling of the oral argument and counsel who would be presenting oral arguments. $43,013 in joint defense fees can be identified. Fulbright & Jaworski billed $1,160,845 in appellate fees for a total of $1,203,858. I have held that the defendants are not entitled to their appellate fees and costs. The fees and costs which should be assessed to the MDL participating defendants is $8,255,725. I therefore find that the Joint Defense fees and costs should be reduced by 25% of which 13% is allocated to appellate fees.

### A. ACADIAN GAS L.L.C. a/k/a ENTERPRISE GROUP  99-MD-1626

The Enterprise Group consists of the following companies: Acadian Gas Corp.; Evangeline Gas Pipeline Company, L.P.; Tejas-Magnolia Energy, LLC and Louisiana Industrial Gas Systems. It retained William D. Wood of Fulbright & Jaworski, L.L.P., with which it had a long-standing relationship. Fulbright claims that the Enterprise Group obtained discounts of hourly rates normally billed to other clients and discounts where the client found the work unproductive. The timekeeper fees were adjusted yearly during the 13 years of litigation.

The primary timekeepers providing billing hours are as follows:

William Woods, Lead Partner: 2001 - $375 per hour; 2006 - $550 per hour; 2007 - $605 per hour; 2011 - $745 per hour.

| Craig Alvarez, Partner: | 2002 - $275; 2008 - $495 |
|---|---|
| Raymond Albrecht, Counsel: | 2003 - $325 per hour; 2006 - $400 per hour |
| Angela Craig, Sr. Paralegal: | 2001 - $120 per hour; 2008 - $225 per hour |

Fulbright & Jaworski list 19 timekeepers over the 10-year period of representation. William Wood was the lead attorney and supervising partner for Coral Energy. Angela Craig, Senior Paralegal, George Murr, Senior Associate and Craig Alvarez, Partner also were timekeepers for Coral Energy and Acadian Gas.

Based on the attorneys fees of counsel billing in the MDL action from Wyoming and Colorado, the Special Master finds that the reasonable market rate for counsel practicing oil and gas is $550 per hour or less, per hour. William Wood's billing rates after 2006 exceed the rate that the Special Master finds to be the reasonable market rate.

The attorneys for Enterprise Group must review the hours actually expended and "winnow" out the hours not reasonably expended to defend the case. Case v. Unified School Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998). Enterprise Group seeks $307,478.56 in fees and $10,622.91 for expenses in defending the lawsuit; $18,331.43 fees and $128.62 for expenses on appeal; and $12,987.62 fees to establish liability for fees and $205.41 for expenses.

## REQUESTED FEES AND EXPENSES

Acadian Gas LLC requests the following separately incurred fees and expenses:

Separately incurred fees and expenses: $338,797.61 attorney fees; $10,957.05 expenses.

It allocates $18,331.43 attorneys fees and $128.73 expenses for defending the appeal.

It allocates $12,987.62 attorneys fees and $205.41 expenses for liability of fees.

The Special Master has reviewed the 30 pages of billings to determine the hours reasonably expended for the litigation. The Special Master finds that Enterprise has failed to exclude hours that are excessive, redundant, or otherwise unnecessary. Hensley v. Eckerhart, 461 U.S. 424,434 (1983); Carter v. Sedgwick County, Kan., 36 F.3d 952, 956 (10th Cir. 1994).

The Special Master disallows the following hours and fees:

Fulbright duplicated the billings that it also billed to Coral Energy. William Wood and Fulbright represented Coral Energy, Inc. from 1998 to March 2002. Coral Energy affiliated with Shell Oil and its affiliates in March, 2002. Subsequent billings for Coral are included in the Shell billings. Shell Oil is represented by Daniel McClure of Fulbright & Jaworski. The exact same billings with different index numbers are billed to Enterprise up to February 28, 2002, when Coral became affiliated with Shell. The duplicate billings of $16,749.28 are disallowed. Fulbright requests this paragraph be stricken because it split the hourly billing between Coral and Acadia commencing in May 2001. The affidavits filed in the Coral and Enterprise claims did not identify that the billings were being divided. I have reviewed the pattern of hourly billing in Coral before and after May, 2001, and the pattern does not change. The same entries by timekeepers were the same before and after. The tasks entries do not change and are identical. The burden is on the defendant to establish the reasonable fees. Without additional affidavit and documentation, the request is denied.

I have reviewed the billings in Coral and Acadia and agree that there is $4,142.50 in billing during the period time that is not reflected in the Coral billings. The amount disallowed is reduced to $12,606.78.

Fulbright & Jaworski claimed fees in response to standard publicly-traded client auditor requests. The audit does not relate to the defense of this case. Orellana billed 17.2 hours; Nakfoor and Valencino billed $3,741. Wood and Doublesin billed $808.25 on the audit for a total of $4549.25 which is disallowed as not relevant to the defense of the litigation and administrative expense.

Wood in 2008 billed 2.5 hours at $675 per hour and Alvarez .50 hours at $495 per hour for a total of $1,597.50 to prepare a budget which is administrative and not relevant to the litigation. It is disallowed.

Three employees entered billing hours for the following: "Attention to file maintenance and organization," "Work on close out and storage," "Organize and index the main file in preparation of closing the file" and "Review email, prepare for inclusion" Ferrel, General Clerk, billed 63.75 hours for $3,406; Ybarra, Project Assistant 43.75 hours for $3,218.62, and Craig, Sr. Paralegal, billed 58 hours for $8,912. Craig did perform legal work for various attorneys which were billable hours. I disallow $15,536 for administrative costs of the law firm.

Wood, as the supervising partner, seeks $98,729 for 216 hours of billings. Over 80% of these entries are for "review emails" or "review a document" and consist of .15, .50, .75 billing hours. The billings do not reflect any action on the review. He also participates in multiple joint defense calls without identifying the nature of the call or any task resulting from the call. Hourly billings seem insignificant except when added up at a high billing rate. In 2002, he billed 12.25 hours at $375; 2003 - 47.50 hours at $415; 2004 - 13 hours at $440; 2005 - 19 hours at $470; In 2006 - 12.75 at $550; 2007 - 24.75 at $605; 2008 - 2.75 hours at $675; 2009 - 6 hours at $690 and 2011 - .50 at $740. The total fee adds up to $72,000 for email and paper reviews or a .15 conference with another attorney without any substantive or procedural action. The Special Master has not included the conferences with other counsel or outside counsel which reflects the nature of the meeting and exceed one hour. During the 10 years, there is no indication of any substantive pleading or brief prepared by Wood. He did participate in depositions and conferences with other defense counsel after they were prepared by another attorney. In Chase, 157 F.3d at 1250, the court discusses entries such as "memo for .3 hours" and "research for one hour" as being less detailed than required for work product or for an award of fees. The party seeking fees must establish reasonableness of each dollar and hour claimed. Cadena v. Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000). As the supervising attorney, it was necessary for Wood to review communications and pleadings, but his failure to identify the task of reviewing or conferences to the defense of the case does not meet the requirements of maintaining proper records. The Special Master cannot, nor can the Relator, determine whether the task relates to the defense of the case. The Special Master has, with other defendants, adjusted the fees. $72,000 of the $98,729 sought by Wood is reduced by 40% which is $28,800. The fee request for Wood is $69,929.00.

Claimed fees and expenses for defending the appeal are $18,331.45 and $128.73. The billings consist of review of documents by all billers including Wood. Wood was billing at $605 per hour to review emails and other documents. The billings do not reflect any preparation of a brief, filing with the 10th Circuit or participation in any hearing. The Special Master has found that all defendants are not entitled to attorney fees and expenses for defense of the appeal. The Special Master denies the request for appeal fees and expenses.

The claim for fees paid to establish fee liability has the same defect as the claims for appeal fees and expenses. There are 21 billings by Wood that are "received and review e-mails" and review other documents. The preparation of billings and pleadings before the court are missing. His hourly fee starts

at $550 and ends with an hourly fee in 2011 of $745 per hour for review of e-mails and documents. In the entries submitted, I found only one entry referring to attorney fees by Alvarez. The entry was: "review e-mails regarding Rule 11 briefing and attorneys' fees issues." Fulbright & Jaworski did not appear at any hearings, and there are no entries that any pleadings were filed. The Special Master denies the request for fees to establish fee liability of $12,987.62 in fees and $205.41 in expenses.

The total attorneys fees and expenses disallowed are $82,135.96.

**REQUESTED COSTS**

Acadian Gas LLC requests $10,957.05 in expenses.

The Special Master previously disallowed the expenses for appeal and establishing liability for fees of $334.14.The billing for expenses includes $89.75 for other, $272.80 local travel and $396.47 for meals. I cannot identify from the billing entries how they relate to the litigation.The billings are disallowed as being administrative expenses of the law firm.

The total expenses disallowed are $1,093.16.

Acadia Gas LLC also requests an award for Enterprise Group's share of jointly-incurred fees. The affidavit provided to the Special Master, Doc.2200-3, Ex.2, does not identify any joint fees and expenses allocated to Acadia Gas LLC a/k/a Enterprise Group and the defendant has not provided documentation that it has paid such fees and costs.

The Special Master finds that Acadia Gas LLC a/k/a Enterprise Group is entitled to $240,246.26 in separate defense fees and $9,863.89 in expenses for a total of $256,995.79

**B. AGAVE ENERGY COMPANY 99-MD-1635**

Agave Energy Company (Agave) was named as a defendant in a False Claims Act filed in the United States District Court for the District of New Mexico in July 1997. The case became 99-MD-1635 in the MDL 99-MD-1293-SWS. Transwestern Pipline Company, LLC was initially one of the named defendants in the Grynberg False Claim Act filed in the United States District Court for the District of Columbia in 1995 and dismissed in 1998. Transwestern was represented by Charles D. Tetrault of Vinson & Elkins, L.L.P. Transwestern was renamed as a defendant in the Enron FCA case in Texas which became 99-MD-1608 in the Wyoming MDL. Transwestern was billed for legal services provided to Agave between 1998 and 2001. From May 13, 2002, through June 30, 2011, Agave was billed directly.

Tetrault represented multiple parties in different cases in the MDL case. The Special Master has explained that representation and allocation of fees and expenses in my findings in Equitable Resources Inc.'s application for fees and expenses. He has divided the hours billed for common tasks among the defendants. Specific tasks for Agave are billed to Agave.

The primary timekeeper is as follows:

Charles Tetrault:        $475 per hour.

The lodestar test has been used to determine the presumptive reasonable fees. Perdue v. Kenney A. *ex rel.*Winn, 130 S.Ct. 1662, 1663 (2011).

The attorney fees are within the presumptive prevailing market rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado.

## REQUESTED FEES AND COSTS

Agave requests the following fees and expenses:

| | |
|---|---|
| Fees: | $42,090 |
| Joint defense fees: | $197,707.81 and $29,242.16 for a total $231,949.97. |

Agave has waived any fees from 1998 through 2002. Agave has allocated $1,045 attorney fees for appellate defense and $827.50 for establishing liability for fees. The Special Master finds the individual fees were reasonable and necessary for defense of the case.

Agave Energy Company requests reimbursement for the joint fees and expenses. The Special Master has determined that the joint fees and costs should be reduced by 25%. The Special Master finds that Agave Energy is entitled to joint defense fees and expenses of $179,848.35.

The Special Master finds that Agave Energy Company is entitled to $215,007.48 attorney fees and expenses.

## C. APACHE CORPORATION  04-MD-1684

Grynberg filed a FCA action against Apache Corporation in 2004. Apache retained Beatty & Wozniak. A motion was filed with the MDL Panel to have the case transferred to 99-MDL-1293 as a "tag along" case. The case was transferred and given the Case No. 04-MD-1684. The fee agreement with Apache was the same as with other MDL defendants represented by the firm. Apache would pay its proportional share of common tasks performed for the multiple defendants and all of the fees for tasks performed directly for Apache.

Apache requests the following attorney's fee and costs:

| | |
|---|---|
| Direct Bills: | $79,130.50 fees and $1,170.56 costs |
| Split Bills: | $12,317.96 fees and $1,256.90 costs |
| Shared Bills: | $69,689.95 fees and $2,680.45 costs |
| Motion for Fees: | $13,664.26 fees and $333.56 costs |
| Application: | $6,647.94 fees and $78.49 costs |

Total:                    $186,970.57

The primary timekeepers are as follows:

M. Beatty:              $450 per hour

R. Noecker:             $395 per hour

G. Graham, Paralegal:  $120 per hour

The Special Master has reviewed 236 pages of billings, the affidavits and CVs.

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A. *ex rel* Winn., 130 S.Ct. 1662, 1673 (2011).

The hourly fees were within the presumptive hourly rates for attorneys in the practice of oil and gas law in Wyoming and Colorado.

The Special Master has reviewed in detail the records of Beatty & Wozniak and compared them to common billings during the time period of another defendant represented by the firm. The records set forth in detail the task performed and the necessity of the task to the defense of the case. The expenses are reasonable and necessary for defense of the case. There is a large expense from March 22 to March 24, 2007. Beatty, Noecker and two other timekeepers were involved in the preparation, travel, housing, meals, joint defense meeting and oral argument in Casper before Judge Downes. Because the firm represents multiple defendants, the need for multiple attorneys and the expenses was reasonable and necessary. Apache paid 11% of the fees and costs.

Relator and Apache Corporation agree that the appellate fees and costs were $71,549.56 which is disallowed.

The defendants request an enhancement of the fees for the obstructive and delaying actions by Grynberg. Enhancement of fees should only be awarded in "rare" and "exceptional" circumstances. The increased fees and costs because of the Grynberg's obstructive actions have been taken into consideration in awarding fees and costs under the lodestar method. Perdue at 1673.

Relator and Apache Corporation agree and I find that Apache Corporation is entitled to $115,421.01 in fees and costs.

## D. ATMOS ENERGY CORPORATION 99-MD-1607

Atmos Energy Corporation ("Atmos") retained Carrington, Coleman, Sloman & Blumenthal, L.L.P. (CCSB) in 1998. Grynberg filed a *Qui Tam* complaint in the United States District Court for the District of Colorado against Atmos Energy Corporation. The firm represented Atmos from September, 1998, until May, 1999. Atmos retained Vinson & Elkins LLP when the litigation was transferred to Wyoming and became 99-MD-1607. Atmos did not bill for paralegals or law clerks.

The primary timekeepers are as follows:

William Dawson:          1998 - $310 per hour

Karen L. Hirschman:     1998 - $240 per hour; 2003 - $410 per hour

Wally Owens:            1998 - $250 per hour

Vinson & Elkins: Stuart Tonkinson: 1999 - $250 per hour; 2006 - $450 per hour; 2009 - $535 per hour.

## REQUESTD FEES AND EXPENSES

Atmos requests attorney fees and expenses as follows:

Separate Incurred attorney fees and expenses: $298,881.25 attorney fees and $4,578.57 expenses.

It allocates $33,454.75 to appellate fees and costs and $8,648.75 to fee on fees.

Joint defense fees and costs: $240,204.04

The Special Master has reviewed the Application for Attorney Fees and Expenses, Affidavit in Support of the Application, Reply in Support of the Application and 23 pages of billings.

The lodestar has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A. ex rel. Winn., 157 F.3d 1662, 1673 (2011).

The fees of Carrington, Sloman & Blumenthal L.L.P. and Vinson & Elkins are within the prevailing market rates for attorneys practicing in the area of oil and gas law in Colorado and Wyoming.

The billings of records of CSB meet the requirements of identifying the timekeeper, the specific tasks and how it was applicable to the case. Case v. United School District No. 233, 157 F. 3d 1243, 1253 (10th Cir. 1998). The hours and fees are reasonably related to the initial defense of the case in the amount of $13,312.50.

The hourly billings by the attorneys for Vinson & Elkins LLP up to mid-2001 are cryptic but are relative to the defense of the case. After June of 2001, entries are by Tonkinson. The entries commence with "review" or "study" without identifying the document or the applicability to the case. From 2000 Tonkinson has 372 tasks commencing with "review" with 90% being less than one hour. The task entries for telephone conferences have entries such as "telephone conference with John Holloway" or "JDT conference call." He was involved in the deposition of Grynberg. Pleading tasks were performed by other counsel.

Grynberg's expert, Toothman, noted the tasks failed to identify the review or the applicability to defense of the litigation. Tonkinson's explanation for the lack of detailed entries is as follows: "[F]irst, as established by Atmos's fee application, Atmos, through its in-house counsel, was well aware of the activities in this litigation, directly involved in the intensive fact-finding and discovery processes, and present at the key events in the litigation, including attending hearings and depositions; second, most of

the handful of items Toothman specifically codes as "cryptic" involve telephone calls or communications with Atmos' in-house counsel or staff, who were aware of the nature of the calls; and third, Atmos contemporaneously paid the bills for which recovery is sought without any guarantee that it would be able to recover such amounts from Grynberg."

The Special Master must determine whether attorneys' hours are reasonably expended on defending the litigation. To recover attorney fees, a party must prove and establish the reasonableness of each dollar, each hour above zero. Cadena v. Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000). The law requires the attorney for the prevailing party to exclude hours that are excessive, redundant, or otherwise unnecessary. Carter v. Sedgwick County, Kan., 36 F.3d 952, 956 (10th Cir. 1994). Where the hourly entries are for "review" or conferences without establishing how they are necessary for the case, the hours may be reduced or disallowed. Case, 157 F.3d at 1253. In Flitton v. Primary Residential Mortg., Inc., 614 F.3d 1173, 1178 (10th Cir. 2010), the court clarified what is required by the party seeking fees. Counsel is not required to record in great detail but at least identify the general subject of the task. The primary concern is the "district court's ability to evaluate the propriety of the fee request based on the specific billing entries." As noted, because of the multiple documents by multiple parties, it is reasonable and necessary that there be a review periodically of the documents and research of the other parties. On the other hand, the entries of reviewing correspondence, telephone conferences and filings do not permit the party opposing the fee request to evaluate the reasonableness of the fees. There are 372 entries without identification of the task. It is also difficult to believe that a 15-minute or 45 minute review without some other action would be reasonable.  The fee of Vinson & Elkin will be reduced by 25% to $212,170.31. The Special Master has reviewed expenses and costs of $4,576.57 which are travel costs for attending hearings or depositions. The costs are reasonable. The total fees and expenses are $216,746.88.

Atmos allocates $33,454.75 to appellate fees which are disallowed.

Atmos requests reimbursement for the joint fees and expenses of $240,204.04. The Special Master has determined that the joint fees and costs should be reduced by 25%. The joint fees and expenses are reduced to $180,153.06

The Special Master finds that Atmos Energy is entitled to the following attorney fees and expenses of $363,449.19.

### E.  BLUE DOLPHIN PIPE LINE COMPANY 99-MD-1650

Jack Grynberg filed in the U.S. District Court for the District of Columbia United States ex rel. Grynberg v. Alaska Pipeline Co., et al., CV. No. 95-725(TFH) against 66 defendants including Blue Dolphin Pipe Line Company.  Blue Dolphin retained the firm of Freedman, Levy, Kroll & Simonds of Washington, D.C.  Lawrence G. McBride, at that time, was representing Blue Dolphin in matters involving the "Buccaneer Field" offshore from Texas. Marc B. Dorfman was retained as trial attorney. McBride is now Of Counsel at Foley & Lardner, LLP in Washington, D.C. Blue Dolphin filed a Motion to Dismiss on jurisdictional grounds that it did not measure the volume and quality of gas entering its pipeline. The court dismissed the case on jurisdictional grounds. Grynberg then filed an individual claim in United

States ex rel. Blue Dolphin Pipeline Co., Civ. No. 4:97-2490 (S.D. Tex). He also filed in various jurisdictions 70-plus cases naming 300-plus defendants. Grynberg filed a motion to have the cases consolidated under the procedures for Multi-District Litigation (MDL). Blue Dolphin objected to its case being consolidated, which was denied. The Texas case was transferred and became case 99-MD-1650 within MDL docket 99-MD-1293 in the United States District for the District of Wyoming.

A consolidated Rule 9(b) Motion to Dismiss was filed by all defendants. In November, 1999, Blue Dolphin filed a separate Rule 9(b) and 12(b)(6) Motion to Dismiss on the grounds that the fraud claim did not apply to Blue Dolphin because it did not measure gas into the pipeline. Blue Dolphin also gave Grynberg a "safe harbor" letter pursuant to Rule 11 FRCP and filed a Motion for Rule 11 sanctions. On May 18, 2001, the Court denied the Motion to Dismiss but indicated the issue would be addressed when the issue was presented in an "adequately briefed and supported motion for summary judgment." Dkt. No. 388. Blue Dolphin researched and prepared drafts of a motion for summary judgment. A tactical decision was made to not file the summary judgment.

Primary timekeepers were as follows:

M. Dorfman:    Partner: 1999 - $250; 2005 - $475 per hour; 2007 - $475 per hour

L. Mc Bride:    Partner: 2000 - $225 per hour; 2007 - $400 per hour

Blue Dolphins' request for fees and expenses:

Separate fees and expenses: $1,259,462 fees and $23,598.58 expenses. ($106,747.15 paid to Holland & Hart for joint technology and support services).

Allocated for appellate fees and expenses: $92,910.50 fees and $1,448.77 expenses.

Allocated for liability of fees: $123,000.

Joint defense: $106,747.15 expenses.

The lodestar is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Anchondo v. Anderson, Crenshaw & Associates, L.L.C., 66 F.3d 108, 112 (2010) citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The lodestar is favored in determining a presumptive reasonable fee. Perdue v. Kenny A. ex rel Winn, 130 S.Ct. 1662, 1673 (2010). The Special Master finds the hourly rates are reasonable for attorneys practicing in oil and gas law in Wyoming and Colorado.

The next step is to determine whether attorneys' number of hours are reasonably expended on the litigation. Case v. United School Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998). The attorney must "winnow" out the hours actually expended down to the hours reasonably expended. *Id.* at *1250.* McBride in Exhibit 1 of his affidavit for fees seeks $1,259,462. The exhibit is 86 pages. In a 16-page Exhibit 2, he seeks $130,345.73 for costs and expenses.

McBride billed 2,736 hours from 1999 to 2009 for a total of $1,094,640. Dorfman billed 478 hours for $119,572. The remaining hours are by associates. The billing does not include fees paid to the Joint Defense Team and Holland and Hart. McBride billed 75 days in 2000, 70 days in 2001, 84 days in 202, 199 days in 2003, 148 days in 2004, 124 days in 2005, 76 days in 2006, 100 days in 2007, 56 days in 2008 and 23 days in 2009. Blue Dolphin had a simple defense to the allegation by Grynberg, which was "it did not measure the volume and quality of gas entering its pipeline." Blue Dolphin filed a Rule 9(b) Motion to Dismiss in November, 1999. Counsel also served a "safe harbor" letter to Grynberg and filed a Rule 11 Motion for Sanctions. Judge Downes denied the consolidated Motion to Dismiss and Blue Dolphins' Motion with the following direction to defense counsel: "a determination that the facts asserted are not in dispute, so the issues should be deferred until they are presented to the Court in an adequately briefed and supported motion for summary judgment." (McBride Affidavit, p.10). The law firm researched and drafted a motion for summary judgment which was not filed.

McBride's task entries describe the task and the applicability to the litigation. Blue Dolphin filed a separate Rule 11 and dispositive motions. It also filed a separate appellate brief and other briefs with the district court. It did not participate in all of the depositions but concentrated on issues directly related to the Blue Dolphin defense. At the same time, McBride was actively coordinating with the joint defense team and commenting on proposed consolidated pleadings.

Dorfman billed 478 hours of which of which 209 hours are described as review and conferences with LGM (McBride). Hours billed in conferences are recoverable if they are a reasonable number and the conference related to defense of the case. Case, 157 F.3d at 1253. As senior counsel, Dorfman attended court proceedings, depositions and joint defense conferences. This required coordination with McBride over the ten years of litigation, and the hours are not excessive.

Blue Dolphin is entitled to its reasonable costs and expenses incurred in defending the case. Case, 157 F.3d at 1257-58. It submitted 16 pages of detailed expenses. The Special Master has reviewed the expenses and also compared travel expenses to the task billings. The Defendant has the burden of establishing that the costs and expenses are reasonably incurred and related to the litigation. Id. at 1259. According to the affidavit of McBride, the billing for costs and expenses were prepared by the Managing Partners and the Office Manager of Freedman, Levy, Kroll & Simonds. "Most of the expense charges incurred by staff of the firm (rather than by "timekeepers"...). Doc. 2193. Blue Dolphin contracted with Holland & Hart to use extranet and technical services. $106,747.45 of the $130,345.73 claimed for expenses are payments to Holland & Hart. The Holland & Hart technical services provided McBride access to the repository of pleadings and briefs of the other MDL defendants and filing of Blue Dolphin pleadings and briefs, thereby reducing the need for a large staff of attorneys and paralegals. $23,598.58 in expenses were incurred over 10 years for copying, long distance calls, and travel. There is $982.32 in expenses indentified as local transportation, postage, miscellaneous and overtime which are disallowed as normal administrative expenses. There are also two travel expenses that are not identified with tasks performed by McBride: travel expenses on December 31, 1999, for $2,202.66 and March 31, 2000, for $285.84. The Special Master is disallowing $2,488.50 in travel expenses.

I disallow the fees and expenses allocated as appellate fees and costs of $92,359.27.

I have also reduced the joint defense fees and expenses by 25% to $80,060.34

I find that Blue Dolphin Pipe Line Company is entitled to $1,265,290.85 in attorney fees and expenses.

## F. BURLINGTON DEFENDANTS 99-MD-1656; 99-MD-1657

Craig L. Stahl commenced representing the Burlington defendants in 1999 while an attorney with Bracewell & Patterson LLP. In 2000, he became a shareholder of Jenkens & Gilchrist, P.C. In April, 2003, he became a partner in Andrews Kurth LLP. Stahl was retained to represent Burlington Resources Inc., Burlington Resources and Oil Company, LP, and Burlington Trading Inc. in 99-MD-1656. He was also retained to represent affiliated companies, Louisiana Land and Exploration Company, Inexco Oil Company and Inexco Gas Transmission Company in case 99-MD-1657.

The primary timekeepers are:

C. Stahl:          2003 - $350 per hour; 2008 - $445 per hour

J. Kuehnle:        2003 - $250 per hour; 2008 - $330 per hour

## REQUESTED FEES AND EXPENSES

Burlington seeks separately incurred fees and expenses as follows:

Jenkens & Gilchrist, P.C.:          $157,940.30 fees and $4,689.80 expenses.

Andrews Kurth, L.L.P.:              $688,634.50 fees and $10,676.44 expenses.

Andrews Kurth, L.L.P. allocates the fees and expenses as follows: $26,918.50 fees to defend Relator's appeal, $30,146 establishing liability for fees, $789,510.30 fees for defense activities for a total of $846,574.80. It seeks $52.50 expense establishing liability for fees and $15,314.19 other expenses to defend the case. The total is $846,574.80 in fees and $15,366.24 in expenses.

Jointly-incurred attorney fees and expenses assessed in MDL 99-MD-1293-NDF as follows:

99-MD-1656:     $190,573.05 fees and $28,186.89 expenses.

99-MD-1657:     $160,381.78 fees and $23,721.42 expenses.

The total requested is    $1,264,804.19.

The Special Master has reviewed 186 pages of billings at Jenkens & Gilchrist, P.C. and 382 pages of billings at Andrews Kurth, L.L.P.

The lodestar is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Anchondo v. Anderson, Crenshaw & Associates, L.L.C., 66 F.3d 108, 112 (10th Cir. 2010). The Special Master finds that that the hourly rates are within the prevailing market rate for attorneys practicing in the area of oil and gas in Colorado and Wyoming.

The Special Master must determine whether attorney hours are reasonably expended on defending the litigation. To recover attorney fees, a party must "prove and establish the reasonableness of each dollar, each hour, above zero." Cadena v. Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000). It is the attorney's responsibility to "winnow" out the hours actually expended down to the hours reasonably expended. Case v. United School Dist. No. 233, 1243 (10th Cir. 1998).

Counsel, while at Jenkins & Gilbert, established a practice of billing that was continued at Andrews Kurth. Kuehnle commenced weekly and sometimes daily billings that consisted of "reviewing" pleadings, e-mails correspondence and conferences. He billed 62 hours in 2000 and 139 hours in 2001. Stahl also commenced a similar pattern. Stahl billed four days the first week of April, 2003, with entries like the following: "Review of D. Schultz's Motion to Compel Grynberg's production of documents; Review of Motion to Compel Interrogatory Answers; and Review of D Schultz letters."

At Andrews Kurth, the pattern continued. Kuehnle billed 20 days in May, 2003, and 129 days for the year. In 2004, he billed 149 days. Most entries are "Review" or "conferences" without any legal tasks based upon the review. Stahl had 19 daily entries in June, 2004, and 78 daily entries between June and December, 2004. The billings in 2006 and 2007 continue to be review of pleadings and communications.

Burlington seeks $26,918 to defend the Relator's appeal. A review of the billings in 2007 does not reflect any legal research or the filing of any pleadings. Kuehnle and Stahl reviewed the appellate issues, the appellate appendix, and briefs filed by other defendants. The fees to defend the appeal are disallowed. It also seeks $30,146 to establish liability for fees. Stahl attended the hearing for fees, but there is no record of research, motions or briefing for fees. The fees to establish Relator's liability for fees is disallowed.

Stahl, on behalf of Burlington, was an armchair quarterback who watched the legal defense of the joint defense group and other defendants. He participated in conferences and communicated with attorneys active in the defense of the MDL litigation. He did not do unnecessary research or file pleadings where the defense team competently represented Burlington's interest. As such, he saved unnecessary costs for Burlington. On the other hand, the law requires the attorney for the prevailing party to exclude hours that are excessive, redundant, or otherwise unnecessary. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); Carter v. Sedgwick County. Kan., 36 F.3d 952, 956 (10th Cir. 1994). Where the hourly entries are for "review" or "conferences" without establishing how they are necessary for the case, the hours may be reduced or disallowed. Case, 157 F.3d at 1253. The shifting fee statute is not intended to be an "economic relief to improve the financial lot" of the attorney. Perdue v. Kenny A. ex rel. Winn, 130 S.Ct.1662, 1673 (2011). The fees for defending the case are reduced by 40% to $473,706 and expenses of $15,366.24.

The Special Master has reduced the joint fees and expenses by 25%. Burlington is entitled to the following joint fees and expenses: 99-MD-1656 - $164,069.95 fees and expenses; 99-MD-1657 $138,077.40 for a total of $302,147.35.

The Special Master finds that Burlington Resources Inc., Burlington Resources Oil & Gas Company L.P. and Burlington Resources Trading Inc., defendants in Case No. 99-MD-1656 and the

Louisiana Land and Exploration company, Inexco Oil Company, and Inexco Gas Transmission Company, defendants in case No. 99-MD-1657, are entitled to attorneys fees and expenses of $791,220.84.

## G. CenterPoint Defendants Case No. 99-MD-1644

In 1999, Michael Beatty and Rebecca Noecker of Beatty & Wozniak, P.C. were retained to represent the following defendants in Case. No. 99-MD-1644: Arkansas Louisiana Gas Company; Arkla (n/k/a CenterPoint Energy Arkla); Reliant Energy Resources Company, Entex, Inc. (n/k/a CenterPoint Energy Entex, Inc); Minnegasco (n/k/a CenterPoint Energy Minnegasco); Mississippi River Transmission Corporation (n/k/a CenterPoint Mississippi River Transmission Corporation); Noram (USA) Inc.; Noram Energy Corp.; Noram Energy Services, Inc. (CenterPoint Energy Gas Transmission Company); Noram Gas Transmission Company (n/k/a CenterPoint Energy Gas Transmission Company); and Noram Field Services Corp. (n/k/a CenterPoint Energy Field Services).  CenterPoint Gas Transmission Company LLC also retained Kay Cowden Medlin of Bradley Murchison Kelly and Shea LLC. Beatty & Wozniak, P.C. also represented or provided legal services for other defendants in the following cases: 99-MD-1603, 1609, 1610, 1625, 1626, 1628, 1664, 1669, and 1684. Beatty & Wozniak billed multiple defendants as follows: (1) Split bills:  common tasks were divided equally between the clients and given a specific account number; (2) Shared Bills:  When El Paso elected to perform tasks in-house, the billings were split among the remaining defendants to which the task applied, the billings were split among the remaining defendants to which the task applied and given another account number; (3) Direct Bills: Tasks incurred specifically for a client were given another account number; (4) Rule 11: A Rule 11 Motion was filled for certain defendants and given another account number; and (5) Request for attorneys fees and costs was given a different account number. To assist in reviewing the billing, Beatty & Wozniak have submitted the billings for review broken out in five sub-accounting entries.

The primary timekeepers are as follows:

M. Beatty:     2000 - $350 per hour; 2011 - $550 per hour.

R. Noecker:   2000 - $350 per hour; 2011 - $425 per hour.

K. Medlin:    $225 per hour.

The defendants request the following attorney fee and costs:

| | |
|---|---|
| Split Bills: | $75,778.00 fees and $6,540.64 expenses. |
| Shared Bills: | $175,086.10 fees and $15,290.16 expenses. |
| Direct Bills: | $82,269.76 fees and $3,048.53 expenses. |
| Motion for Fees: | $13,997.80 fees and $333.56 expenses. |
| Rule 11: | $5,826.49 fees and $104.22 expenses. |
| Kay Medlin Esq.: | $128,146.66 fees and $1,260.40 expenses. |

Joint Defense:   $166,426.66 fees and $24,615.50 expenses.

Application:    $6,928.94 fees and $92.89 expenses.

The Special Master has reviewed 696 pages of billing records, pleading and affidavits, and has also compared the billings of Medlin with the direct bills of Beatty & Wozniak.

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenny A. *ex rel.* Winn., 130 S.Ct. 1662, 1673 (2011).

Beatty's hourly fees started at $350 per hour in 1999, and increased to $550 per hour in 2011. Noeckers' hourly fees started at $350 per hour in 2000 and increased to $425 per hour in 2010. Medlin's hourly fees started at $200 per hour in 1999 and went to $275 in 2010. The hourly rates are within the presumptive hourly rates for attorneys in the practice of oil and gas law in Wyoming and Colorado.

The Special Master has reviewed in detail the records of Beatty & Wozniak. The records set forth in detail the task performed and the necessity of the task to the defense of the case. The expenses are reasonable and relate to the defense of the case.

The Special Master has reviewed the records of Medlin and compared them to the Beatty billings. The tasks consist of reviewing multiple documents, e-mails, and e-mails with J. Liu and R. Noecker. The Beatty law firm was actively involved in filing pleadings, briefs, hearings and arguments for the CenterPoint defendants.  On one occasion, Medlin listened to an oral argument and in another attended a deposition by live notes. She participated in multiple phone conferences without defining the task and identifying the conference participants. Her tasks consisted of reviewing documents, pleadings and keeping the corporation informed. Where the tasks are more as a consultant, the fees may be adjusted or disallowed. Case v. United School District. No. 233, 157 F.3d 1243, 1253 (10th Cir. 1998). Because her tasks were not totally passive, fees of Medlin are reduce by 50% to $64,073.33 rather than disallowing the fees.

The Special Master has reduced the joint defense fees and expenses by 12% for a total of $168,117.10.

CenterPoint allocates $40,776.68 for appellate fees which are disallowed.

The defendants request an enhancement of the fees for the obstructive and delaying actions by Grynberg. As the Special Master found on the previous fee request by Beatty & Wozniak, enhancement should only be awarded in "rare" and "exceptional" circumstances. Grynberg's obstructive actions increased the attorneys' fees and costs using the lodestar method. *Perdue* at 1673.

The Special Master finds CenterPoint defendants are entitled to $577,971.27 in fees and expenses.

**H. CMS GAS CO. 00-MD-1633/ CONTINENTAL NATURAL GAS, INC. 00-MD-1638**

In 1999, Michael Beatty and Rebecca Noecker of Beatty & Wozniak, P.C. were retained to represent the following defendants: Case No. 00-MD-1633: CMS Gas Co., CMS Gas Marketing (n/k/a CMS Energy Management), CMS Gas Transmission and Storage Company, CMS Enterprises Company, CMS Natural Gas Gathering, LLC (f/n/a Continental Natural Gas Gathering, LLC), CMS Nomeco Oil & Gas Co. (n/k/a LCX Energy, LLC), Consumers Energy, Consumers Power, Michigan Gas Storage Co., Terra Energy Ltd.; Case No. 00-MD-1638: Continental Natural Gas Gathering, LLC, Continental Gas Processing, LLC, Continental Natural Gas, Inc. The law firm also represented or provided legal services for other defendants in the following cases: 99-MD-1603; 99-MD-1609; 99-MD-1610; 99-MD-1625; 99-MD-1626; 99-MD-1628; 99-MD-1664; 99-MD-1669; and 04-MD-1684. The following defendants shared the hourly fees and expenses for tasks performed by Beatty & Wozniak: El Paso Natural Gas, Kinder Morgan, Inc, NiSource Corporate Services Company, CMS Texas LLC, CenterPoint Energy, Panhandle Eastern Pipeline, LLC, Apache Corporation, TransMontaigne, Inc. and SourceGas LLC. The firm billed the various defendants as follows: (1) Split Bills: common tasks were divided equally between the clients and given a specific account number; (2) Shared Bills: When El Paso elected to perform tasks in-house, the billings were split among the remaining defendants to which the task applied and given another account number; (3) Direct Bills: Tasks incurred specifically for a client was given another account number; (4) Rule 11: A Rule 11 Motion was filed for certain defendants and given different account numbers; and (5) Request for attorney's fees and costs was given a different account number.

The primary timekeepers are:

| | |
|---|---|
| Michael Beatty: | 1999 - $350 per hour; 2011 - $550 per hour |
| Rebecca Noecker: | 2000 - $350 per hour; 2011 - $425 per hour |

The Defendants request the following attorney fees and costs:

| | |
|---|---|
| Split Bills: | $94,195.25 fees and $10,146.47 expenses |
| Shared Bills: | $125,081.12 fees and $9,906.15 expenses |
| Direct Bills: | $82,269.76 fees and $3,048.51 expenses |
| Application: | $6,647.94 fees and $78.49 expenses |
| Joint Defense: | $272,348.54 fees and $40,281.97 |
| Total: | $663,932.73 |

The Special Master has reviewed 449 pages of pleadings, affidavits and billing records.

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A. ex rel. Winn, 130 S. Ct. 1662, 1673 (2011).

The hourly rates are within the presumptive hourly rates for attorneys in the practice of oil and gas law in Wyoming and Colorado.

The Special Master has reviewed the billing records of Beatty & Wozniak. The records set forth in detail the task performed and necessity of the task to the defense of the case. The expenses are reasonable and relate to the defense of the case.

Defendants in their Application for Fees request the Court enhance the fee award for the obstructive discovery actions by Grynberg that affected the defense of the case. An example is the loss or destruction of 150 boxes of documents and the delivery of over 3,300 documents the day before his deposition. Grynberg was sanctioned several times by the Special Master, and the report of the Special Master details the combative and uncooperative actions by Grynberg's counsel. The increased cost and fees to the defendants are taken into consideration in applying the lodestar method. As indicated in Perdue *at* 1673, the complexity of the case is included in the increased billable hours considered by the lodestar method.  Enhancement should be awarded only in "rare" and "exceptional" circumstances. Grynberg's obstructive actions increased the attorney fees and costs to be awarded under the lodestar method.

Relator and CMS Gas stipulate that it paid $41.587.68 to Beatty &Wozniak for the appeal which will be deducted from the fees and costs.

The Special Master has reduced the joint defense and expenses by 12% to $275,114.85.

The Special Master finds that the CMS Gas Co., its subsidiaries and affiliates and Continental as, Inc., its subsidiaries and affiliates are entitled jointly to $584,834.39 in attorney fees and expenses.

## K.  CNG PRODUCING COMPANY 99-MD-1627

CNG Producing Company (CNG) retained Donald I. Schultz of Holland & Hart to represent it as one of the defendants in 99-MD-1627. Dominion Oklahoma Texas Exploration Company is the successor in interest of CNG. The Special Master has reviewed the Claim for Attorney's Fees and Expenses, Affidavit of Donald I. Schultz and 84 pages of billings by Holland & Hart.

CNG requests the following fees and expenses:

| | |
|---|---|
| Separate attorney fees and expenses: | $9,471 fees and $324.73 expenses |
| Joint defense fees and costs: | $193,124.02 fees and $28,564.19 expenses |

It does not seek fees or expenses for defending the appeal or establishing liability for fees

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenny A. *ex rel.* Winn, 130 S.Ct. 1662, 1673 (2011).

Donald Schultz billed at $375 per hour and the other counsel of Holland & Hart at a lesser amount. The hourly rate of Mr. Schultz and other counsel are within the presumptive hourly rates for attorneys in the practice of oil and gas law in Wyoming and Colorado.

47

The Special Master has reviewed the billing records which clearly set forth the task by the timekeeper, the relevancy and necessity of the expended time in defense of the litigation. The expenses billed are recoverable as necessary to the defense of the case.

The joint defense fees and expenses have been reduced by 25% to $166,266.15.

The Special Master finds that Dominion Oklahoma Texas Exploration Company is entitled to $176,061.89 in attorney fees and expenses.

## J. COLUMBIA ENERGY SERVICES CORP. 99- MD-1628

Columbia Energy Services Corp. consists of thirteen corporations named as defendants in Case No. 99-MD-1628. They retained Michael Beatty and Rebecca Noecker of Beatty & Wozniak, P.C. The law firm also represented or provided legal services for other defendants in the following cases: 99-MD-1603; 99–MD-1609; 99-MD-1610; 99-MD-1625; 99-MD-26; 00-MD-1633; 99-MD-1664; 99-MD-1669 and 04-MD-1684. The firm billed the various defendants as follows: (1) Split Bills: common services provided to Beatty & Wozniak clients were divided between the clients. The billings were given a specific account number; (2) Shared Bills: When El Paso elected to perform tasks in-house, the billings were split among the remaining clients and given a shared account number; (3) Direct Bills: Tasks incurred specifically for Columbia are billed to a separate account reserved for Columbia; (4) Rule 11: A Rule 11 Motion on behalf of Columbia was filed to establish attorney's fees and costs. Other Rule 11 motions for other defendants were billed to their accounts; (5) Request for Attorney Fees and Costs: The motion for attorneys fees and costs was shared by the defendants.

Columbia also retained Matthew J. Fischer of Schiff Hardin LLP to provide client-specific services for Columbia defendants and coordinate with in-house legal counsel and Beatty & Wozniak. Akin Gump law firm had been retained earlier to provide the same service rendered by Fischer. No affidavit or billing records have been provided for Akin Gump because the billings cannot be located, and there is not a member of Akin Gump to provide an affidavit.

Primary timekeepers are as follows:

Schiff Hardin LLP:

| M. Fisher: | 2001 - $260 per hour; 2010 - $510 per hour |
| C. Pryrosky: | $385 per hour |
| Coleman: | $210 per hour |

Beatty & Wozniak LLP:

| M. Beatty: | 1999 - $295; 2010 - $500 per hour |
| R. Noecker: | $2001 - $350 per hour; 2010 - $425 per hour |

Request for attorneys fees and expenses:

| Split Bills: | $172,817.64 fees and $15,289.96 in expenses |
| Shared Bills: | $82,269.78 fees and $3,048.54 in expenses |
| Direct Bills: | $134,091.75 fees and $13,253.01 in expenses |
| Rule 11: | $5,826.49 fees and $ 104.22 in expenses |
| Fees on Fees: | $13,664.25 fees and $333.56 in expenses |
| Application for Fees: | $6,827.94 fees and $95.44 expenses |
| Schiff Hardin LLP: | $274,649.75 fees |
| Akin Gump: | $108,613.47 |
| Joint Defense: | $161,868.97 fees and $23,941.39 expenses |
| **Total:** | $1,016,696.16 |

The Special Master has reviewed 786 pages of pleadings, affidavits and billing records.

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenny A. ex rel.Winn, 130 S. Ct. 1662, 1673 (2011).

The hourly rates are within the presumptive hourly rates for attorneys in the practice of oil and gas law in Wyoming and Colorado.

The Special Master has reviewed the billing records of Beatty & Wozniak in detail. The records set forth in detail the task performed and necessity of the task to the defense of the case. The expenses are reasonable and relate to the defense of the case. Shiff Hardin did not bill for services of paralegals or clerks. It did not bill for any expenses. The records detail the task performed and the necessity of the task to the defense of the case.

No records have been provided for Akin Gump. Although Columbia defendants paid $108,613.47, it is the burden of the party seeking attorney fees to provide the records establishing the fees and expenses. Case v. Unified School Dist., No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998). The request for fees of Akin Gump will be disallowed.

The joint defense fees and costs have been reduced by 12%. Joint defense fees and expenses are $163,513.12.

Relator and Columbia defendants agree the Columbia paid $44,144.10 in appellate fees and expenses which is disallowed.

The Special Master finds that the Columbia defendants are entitled to $841,644.67 in attorney fees and expenses.

**K. CONOCOPHILLIPS COMPANY 99-MD-1666-NDF, Civil Act. NO. 97-CV-237, Wyoming United States District Court**

Grynberg filed a False Claims Act against Conoco, Inc., Louisiana Gas Systems, Inc, and Oryx Energy Company on October 6, 1997 as Civil Action No. 97-CV-237 in the U.S. District Court on April 14, 1999. It was transferred to case 99-MDL-1293-NDF as case No. 99-MD-1666. Frank Neville of Williams Porter Day & Neville of Casper, Wyoming, was retained as local counsel by the firm of McGuire Woods Battle & Boothe of Virginia in 1997. Conoco, Inc. merged with Phillips Petroleum Company and became ConocoPhillips Company (COP).

In January, 2003, Locke Lord was retained by COP, Amerada Hess Corporation (Hess), Pacific Interstate Offshore Company, Pacific Offshore Pipeline Corporation and Southern California Gas Company (collectively known as the "Sempra Energy Entities") to represent the parties in MDL 1293. Locke Lord was already representing Phillips Petroleum Company in United States *ex rel.* Wright v. AGIP Petroleum Co., Inc., *et al.,* No. 2:00-MD-1675 and Comstock Resources in United States *ex rel.* Kennard and Wright v. Comstock Resources, Inc., No. 2:01-MD-1679 which were transferred to MDL 1293.

The primary timekeepers are as follows:

Williams, Porter, Day and Neville, PC:

| | |
|---|---|
| Frank Neville, Partner: | 1999 - $150 per hour; 2006 - $175 per hour |
| Anne Rochelle: | 1999 - $110 per hour |
| Kevin Huber: | 2004 - $125 per hour |

Locke Lord Bissell & Liddell LLP:

| | |
|---|---|
| J.R. Beatty, Partner: | 2003 - $320 per hour; 2009 - $475 per hour |
| W.S. Hastings, Partner: | 2003 - $186 per hour; 2009 - $381 per hour |
| A.R. Terry, Partner: | 2003 - $216 per hour; 2004 - $240 per hour |

**REQUESTED FEES AND EXPENSES**

Locke Lord:

Separate Fees and Expenses:     $178,640.02 attorney fees and $10,110.06 expenses

It allocates $35,763.25 attorney fees and $2,806.83 expenses for appeal.

It allocates $13,860.80 and $1,422.36 for fees for establishing liability for an amount of fees.

Joint defense fees and expenses: $213,962.22 fees and $25,212.89 for expenses

Williams, Porter:                    $23,828.12 fees and $1,384.77 expenses

The Special Master has reviewed over 250 pages of billings and expenses submitted by Locke Lord Bissell & Liddell and Williams Porter Day & Neville.

The lodestar test has been used to determine the presumptive reasonable fees. <u>Perdue v. Kenney A. *ex rel.*Winn</u>, 130 S.Ct. 1662, 1250 ((2010).

The hourly fees charged by the attorneys, paralegals and staff of Locke Lord are reasonable for attorneys practicing in the specialized oil and gas area of law. The fees were lower because of special rates provided to separate parties. The hourly fees charged by Williams Porter Day & Neville were reduced fees as local counsel and are reasonable fees for attorneys acting as local counsel.

The records of Lord Locke are an example of how records should be maintained. The records reflect the attorney or paralegal for whom the fees are requested, the specific task and how it is applicable to the defense of the case. <u>Case v. United School Dist. No. 233.</u>, 157 F.3d 1243,1250 (1998); <u>Cadena v. Pacesetter Corp.</u>, 224 F. 3d 1203,1215 (10th Cir. 2000). The fees and expenses are broken down as follows: ConocoPhillips is entitled to $154,660.26 fees after deduction for the appeal.

Williams, Porter, Day & Neville, PC were retained as local counsel in Casper, Wyoming. The tasks performed by Neville in 1999 did include preparing a motion and attending the pretrial conference. He also attended a scheduling conference in 2002. All other tasks consist of reviewing pleadings and documents prepared by multiple defendants. He periodically had conference calls with various attorneys as to the status of the case. His entries for reviewing documents and pleading are less than 1 hour and do not reflect any legal assistance to Conoco. Between August 1999 and April 2000, Neville, Rochelle and Skavdahl had tasks that involved preparing pleading, comment of drafts and attending a pretrial conference. The firm billed $14,434.50 for the tasks. From April 2000 the tasks consisted of review and participation in conference calls and do not reflect any additional legal tasks that are necessary to the litigation in the amount of $10,778.39. The $9,393.62 is reduced by 50% for failure to identify the nature of the task and as administrative tasks to $4,696.81. The total amount of fees approved is $19,131.31. The requested expenses consist of long distance phone calls, Fed Ex, copies and mailing costs which are reasonable and necessary to the litigation in the amount of $1,384.02. ConocoPhillips is entitled to $20,516.08 for work performed by Williams, Porter, Day & Neville, PC.

The fees and expenses allocated for defending the appeal are disallowed in the amount of $38,570 for a remaining balance of $175,392.34.

Conoco requests reimbursement for joint fees and expenses. The Special Master has reduced the joint fees and expenses by 25%. The joint fees and expenses are reduced to $163,941.21.

I find that ConocoPhillips Company is entitled to the following fees and expenses: $334,636.54

## L. CORAL ENERGY L.P.  99-MD-1626

Coral Energy, L.P. is a defendant in Case No. 99-MD-1626 and was named as a defendant in a *Qui Tam* civil suit by Grynberg in a U.S. District Court for the Eastern District of Louisiana. Coral retained William D. Wood of Fulbright & Jaworski L.L.P. in September, 1998, with whom they had a long standing relationship. William D. Wood represented Coral from September 1998 until March 2002, when Coral became affiliated with Shell Oil Co. and its affiliates. The timekeeper entries are from the defense of the litigation in Louisiana, MDL panel litigation and participation in the joint defense group established during the MDL proceedings. It does not separately claim any appeal fees or legal fee litigation.

**REQUESTED ATTORNEYS FEES**

Coral Energy claims the following separately incurred attorney fees and expenses: $97.801.53 attorney fees and $6,404.03 expenses.

The Special Master has reviewed the 20-page summary of billings and applied the lodestar evaluation.

The timekeepers providing the primary services are as follows:

| | |
|---|---|
| William Woods, Partner: | 1998 - $300 per hour; 2002 - $390.00 per hour. |
| Jennifer Price, Sr. Counsel: | 1999 - $395 per hour. |
| George Murr, Sr. Associate: | 2000 - $235 per hour; 2002 - $270 per hour. |
| John Bowman, Partner: | 1999 - $335 per hour. |
| Angelina Craig, Sr. Paralegal - | 100 per hour. |

There were 15 timekeepers listed, but only six had billings that exceeded $1,000 with Woods, Price, Murr and Craig performing 97% of the entries. The timekeeper hours were incurred during the litigation in Louisiana and the MDL panel review. Jennifer Price and George Murr were the litigation counsel. Reasonable presumptive hourly fees in Colorado and Wyoming are not applicable. The Special Master does not have any evidence concerning the reasonable fees in Louisiana and the Relator has not objected to the reasonableness of the fees. William Woods, as the supervising partner, participated in joint defense meetings as well as multiple conferences with the client. In 2001, he also became the supervising counsel in the defense of Acadia Gas and the Enterprise group.

The Special Master has reviewed the 20 pages of the summary billings and expenses by the timekeepers for Coral Energy. The timekeeper entries from June 29, 2001, through February 28, 2002, are identical billings submitted by Fulbright & Jaworski for Acadia Gas LLC. The billings differ only in the hourly billing. The hourly billings to Coral are higher for all of the timekeepers. Wood bills $20 an hour higher, Murr $15 an hour higher, Palmer $10 an hour higher and Craig $5 per hour higher. The Special Master assumed that the client agreement with Coral called for higher hourly fees than for Acadia Gas. The Special Master has disallowed the duplicative entries from the fees and expenses requested by Acadia Gas.

The records maintained are detailed and were necessary for the defense of the litigation with the following exceptions:

Research on U.S. District Judge Dubal of 8.75 hours for $838.75.

Billing for publicly-traded audit of 14.75 hours for $2,048.25.

Base upon the subsequent request that I reviewed the billings for Coral and the Enterprise group, I have also reviewed William Woods involvement in the joint defense group. Woods involvement in the Joint Defense Team and counsel representing other defendants was compensated by his clients rather than the Joint Defense Team. The involvement required multiple phone calls and conferences. Coral is entitled to reimbursement for his hourly billings without deduction. The fees are reduced by the research on Judge Dubal, and the audit in the amount of $2,887.00.

**REQUESTED EXPENSES**

Coral requests $6,404.03 in expenses. The expenses are reasonable and related to the litigation.

I find that Coral Energy LP is entitled to $85,777.53 in attorney fees and expenses.

## M. DYNEGY INC. 99-MD-1631

Grynberg filed a claim against Dynegy, Inc. on January, 1999, in Civil Action No. 99-CV-0028-SRD, United States of America ex rel. Jack J. Grynberg v. Dynegy Inc. and Venice Energy Services Company, L.L.C., in the U.S. District Court for the Eastern District of Louisiana. The case was transferred to MDL. No. 99-MD-1293-NDF and became Case No. 99-MD-1631-NDF. Venice Energy Services Company, L.L.C. (VESCO) was an affiliate of Dynegy. Both companies were represented by Akin Gump until December 2006. Venice retained John B. Hall of Locke Lord in December 2006. VESCO submitted a separate billing after December, 2006. The billing records reflect that research, settlement negotiations and pleadings done by Dynegy after 2006 benefitted VESCO. There were continuing conferences and communications with Hall regarding the status of the defense and settlement discussions with Akin Gump attorneys.

While defending this case, Akin Gump was also involved in closely related class actions in Kansas (Quinque case) and the Eastern District of Kansas (Wright case). It also filed a Freedom of Information Act to obtain documents from the U.S. Government. In the summary of fees and expenses, Akin Gump has deducted fees and expenses it believes are related to the other cases. The billing records do not reflect the deductions as to the hourly billings, fees or expenses.

The primary timekeepers are as follows:

| | |
|---|---|
| J.E. Rothrock, Partner: | 1999 - $300 per hour; 2008 - $550 per hour. |
| C. Spillman, Partner: | 1999 - $325 per hour; 2007 - $500 per hour. |
| L.E. Tanenbaum: | 2003 - $400 per hour. |

## REQUESTED FEES AND EXPENSES

Separate fees and expenses: $476,423.60 fees and $38,360.94 expenses to a total of $514,784.54.

Appeal allocation:                    $31,993.20 fees and expenses.

Joint defense fees and expenses: $139,889.94.

The Special Master has reviewed the Dynegy, Inc. Motion for Fees, affidavits, 319 pages of billing records and 6 pages of its summary of fees and expenses.

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A., ex rel. Winn., 130 S.Ct.1662, 1673 (2011).

The lead counsel, J. Rothrock, commenced billing in the year 2000 at $325 per hour. His billing rate in 2008 was $550. The billing rates of the other counsel and paralegals are less and comparable to other law firms representing other MDL defendants. The Special Master finds that the attorney fees are within the prevailing market rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado.

The Special Master must determine whether the hours billed are reasonably expended on defending the litigation. Case v. United School Dist. No. 233, 157 F. 3d 1243, 1250 (10th Cir. 1998). The party seeking fees and expenses must, by the billing records, identify the specific task, the applicability to the case, and work product actually necessary to the defense of the case. Id. at 1255. Dynegy attorneys were involved in serious settlement negotiations in 2002 and again in 2007. Drafts of proposed settlements were exchanged. In 2007, Dynegy explored filing a civil suit to enforce a settlement agreement. Dynegy has taken a 10% discount of its fees as an adjustment for hours that might be duplicative or not related to the defense of the case. It requests $428,781.24 in attorneys fees. Rothrock was active both in the defense of Dynegy and Venice Energy and also participated in the joint defenses committee pro bono. In 2007-2008, he negotiated with Relator's attorneys concerning a settlement including drafting a settlement agreement. Grynberg did not sign the agreement, and there was research done on how to enforce it. He has tasks for "review" and identifies what he is reviewing and, further tasks which are documented, that reflect some action.

In order to determine the expenses, I reviewed every billing and the tasks. The Special Master finds that $38,360.94 in expenses is reasonable and necessary.

The Special Master has found that the joint defense fees and expenses should be reduced by 25% to $104,917.45.

Dynegy allocates $31,993.94 for defending the appeal. $31,993.94 is disallowed.

The Special Master finds that Dynegy is entitled to $469,991.99 fees and expenses.

**N. DELHI GAS PIPELINE COMPANY (99-MD-1645)**

Delphi Gas Pipeline Company was a defendant in Case No. 99-MD-1645 with Marathon Oil Company. Marathon Oil provided a defense to the MDL litigation. Delphi relied on in-house counsel to monitor the litigation and pleadings filed by the Joint Defense Team and Marathon. It did agree to participate in the reimbursement of the joint defense attorney fees and expenses. It paid $119,775.65 in fees and $17,715.83 in expenses to Holland & Hart for joint fees and expenses.

Delphi claims: $137,493.38 in joint fees and expenses.

The Special Master has reduced the joint fees and expenses by 25%, which reduces the claim to $103,120.03.

The Special Master finds that Delphi Gas Pipeline Company is entitled to $103,120.03 in joint fees and expenses.

### O. EL PASO DEFENDANTS:  99-MD-1605, 1609, 1625, 1632

Grynberg brought six False Claims Acts against El Paso Natural Gas Company d/b/a El Paso Energy Corporation and its affiliates known as the El Paso family. They are as follows:

U.S. District Court, District of Colorado Case No. 97-D-1417 (Wyo. 99-MD-1605) (10 defendants)

U.S. District Court, District of Colorado Case No. 97-D-1422 (Wyo. 99-MD-1609) (9 defendants)

U.S. District Court, E. D. of Louisiana Case No. 97-D-2087 (Wyo. 99-MD-1625) (6 Defendants)

 U.S. District Court, E.D. Michigan S.D. Case No. 40259 (Wyo. 99-MD-1632) (6 Defendants)

U.S. District Court, W.D. Texas (Wyo. 99-MD-1622) (5 Defendants)

U.S. District Court, S.D. Texas (Wyo. 99-MD-1649) (3 Defendants)

The Texas cases were dismissed while Grynberg's appeal was pending and all fees and costs were waived.

#### Case: No. 99-MD-1605

In Case 99-MD-1605, the El Paso defendants retained Michael Beatty of Beatty & Wozniak. Michael Beatty has served previously as General Counsel for Colorado Interstate Gas Company and the Coastal Corporation. Beatty and Wozniak also performed legal work that was a benefit to other defendants with similar defenses in MDL 99-MD-1293. El Paso paid for case specific tasks performed by the Beatty firm and its respective share of tasks that were common to multiple defendants. El Paso retained local counsel in Wyoming for advice and logistical support. It initially retained Hugh Schaefer and then Brown, Drew & Massey. Brown Drew & Massey acted as local counsel for Duke and Kinder Morgan. The Brown firm divided the hourly billings by a third. The hourly billing records submitted for review are for the years 2001 to 2006. EL Paso did not submit billings for defending the appeal by Grynberg or for tasks establishing its entitlement for legal fees and costs.

The primary timekeepers are as follows:

Beatty & Wozniak PC: The attorneys fees have consistently been found to be reasonable.

Hugh Schaefer:                        $150 per hour.

Brown Drew & Massey:           Thomas Reese, $225 per hour and law clerks at $75 per hour.

Request for attorneys fees and expenses for Case No. 99-MD-1605:

| | |
|---|---|
| Beatty & Wozniak: | $237,433.18 |
| Brown, Drew & Massey: | $38,171.83 |
| Hugh V. Schaefer: | $22,625.51 |
| Joint fees and expenses: | $145,098.72 |
| Total fees and expenses: | $443,329.24 |

The hourly fees of the timekeepers are within the presumptive reasonable rates for attorneys practicing oil and gas law in Wyoming and Colorado.

The Special Master has reviewed 224 pages of billing records of Beatty & Wozniak, PC and find that they set forth in detail the task performed and the relationship of the tasks to the defenses of El Paso.

The Special Master has reviewed 15 pages of billing records for Schaefer. Schaefer's task entries were "Review, updates to extranet." He participated in two phone calls.  A party seeking fees and expenses, must by the billing records, identify the specific task, the applicability to the case and work product actually needed for the case. Case v. United School Dist. No. 233, 157 F. 3d 952, 956 (10th Cir. 1998).   Other than reviewing documents, attending some conferences and telephone conferences, Schaefer produced no work product. Half of the fees billed were in 2000. The entries for that period have not been submitted for review.  I disallow the fee of $22,625.51 for failure to provide adequate billing records and failing to establish how the tasks were relevant to the litigation defense.

The Special Master has reviewed 134 pages of billings of Brown Drew & Massey. Thomas Reese was retained as local counsel in Casper in December, 2000. From January to July 2001, his tasks included filing a pleading with the court and attending hearings. After August, 2001, the tasks involved reviewing emails, pleadings and participating in conference phone calls. He does not identify the tasks or the applicability to the case. The clerks reviewed, downloaded and distributed recently received e-mails from the Joint Defense Team. The clerks also contacted the court and electronically filed documents. Tasks recorded do not identify the documents or e-mails received by the firm. The billing records of Beatty & Wozniak do not identify the use of Reese. The Special Master has reviewed the expenses, which are minimal, but necessary, for the defense of the case. The fees will be reduced by 50% as being administrative by the law clerk. The review entries by Reese did not meet the requirements of Flitton v.

Primary Residential Mortgage Inc., 614 F.3d 1173, 1178 (10th Cir. 2010).  The Special Master finds that El Paso is entitled to $19,085.92.

The Special Master finds that El Paso defendants are entitled the following fees and expenses:

| | |
|---|---|
| Beatty & Wozniak: | $237,433.18 |
| Brown, Drew & Massey: | $19,085.59 |
| H. Schaefer: | $0 |

The Special Master finds that the joint defense fees should be reduced by 25% to $108,824.04.

The Special Master finds that El Paso is entitled to $365,342.81 in attorneys fees and expenses for Case 99-MD-1605.

Case No. 99-MD-1609

In 1998, El Paso defendants retained David Palmer of Zevnik, Horton, Guibord, McGovern, Palmer & Fogani (Zevnik Horton) who had represented El Paso in previous legal matters. In 2001, David Palmer became partner in Greenberg Traurig and continued the representation of defendants. El Paso retained as Wyoming local counsel the firm of Rothgerber Johnson & Lyons. It served in that capacity from 1998 to 2001. The firm of Zevnik Horton was representing El Paso in a Kansas class action complaint, known as the Quinque case. Grynberg was not the named Relator. The case was transferred by the MDL panel to Wyoming. After motions to remand, Judge Downes remanded the case to the state court in Kansas. Quinque is not a case in MDL 99-MD-1293.

The primary timekeepers are:

Zevnik Horton:

Palmer:                      $330 per hour; Shure - $295 per hour; Beer - $225 per hour.

Greenberg Traurig:

Palmer:                      $330 per hour; B. Pringle: $330 per hour; Beer: $250 per hour.

Rothgerber Johnson & Lyons: Lyons:              $375 per hour; Minier: $220 per hour.

The hourly fees are within the presumptive hourly fee for attorneys practicing oil and gas law within Wyoming and Colorado.

Request for fees and expenses:

| | |
|---|---|
| Zevnik Horton: | $164,584.64 |
| Rothgerber Johnson and Lyons: | $31,610.33 |

| Greenberg Traurig: | $350,553.85 |
| Joint fees and expenses: | $226,901.27 |

The Special Master has reviewed 69 pages of billings by Zevik Horton, 37 pages of billings by Rothergerber Johnson and Lyons and 151 pages of billings by Greenber Traurig. Zevnik Horton commenced representation in 1998. It was defending the Qunique class action in Kansas and 99-MD-1609 when Qunique was transferred by the MDL panel to Wyoming case 99-MD-1293. The tasks relate to the defense of El Paso in 99-MD-1293 and the pleading to remand the case to the Kansas state court. The firm has not billed for the Quinque case after the remand. The billings reflect the tasks and the relevancy of the tasks to the defense of El Paso.

Rothgerber billings also reference the Kansas litigation. Most of its records indicate review of documents and e-mails without identifying the whether it relates to the MDL or Kansas case. Tasks by Lyons concern "legislation." The defense tasks are performed by Minear. The billing tasks relate to the defense of El Paso during the period that Quinque was a part of the Wyoming MDL. Lyons participated in some meetings with the Joint Defense Committee. The Rothgerber firm reviewed documents but did not produce any pleadings or briefs in the MDL litigation.

Greenberg Traurig until also billed for the Kansas case until July, 2001. Greenberg Traurig submitted a billing for $37,507 in July, 2001 which included invoices from April through July, 2001 for both the Kansas and MDL litigation. The billing tasks related to the defense of El Paso during the period the Kansas case was a part of the MDL. El Paso has submitted an affidavit of G. Graham, Paralegal, identifying billings she believes were related to the defense of the Quinque case as $13,192.50. I have again reviewed the billings of Greenberg Traurig and the affidavit clarifying the billings. El Paso is entitled to $337,361.35 in fees and expenses for the representation by Greenberg Traurig.

The joint defense fees and expenses have been reduced by 25% to $170,176.09

Grynberg is not the Relator in the Quinque litigation. Although there are allegations are that he was the instigator of the Kansas case and through his counsel provided the pleadings, he is not the Relator. Judge Downes returned the case to Kansas and awarded attorneys fees. Because the allegations were the same as the Grynberg Qui Tam cases, counsel did participate with the Joint Defense Team and pleadings in the MDL. The attorney fees relating to Quinque case must be addressed by the Kansas court and are disallowed.

El Paso is entitled to fees and costs of $507,537.44 in case 99-MD-1609.

Case No. 99-MD-1625

In Case No. 99-MD-1625, El Paso retained Douglas Robinson of Skadden, Arps, Slate, Meagher and Flom (Skadden Arps) in New York. Robinson represented Southern National Gas Company in U.S. ex

*rel.*Grynberg v. Alaska Pipeline Co., *et al.*, Case No. CIV-95-725, U.S. District Court for the District of Columbia. The Special Master has reviewed 262 pages of billings submitted by Skadden Arps.

The timekeepers are:

Robinson: $582 per hour.

Runyon: designated as an associate, and performed most of the tasks. The billings do not indicate the specific hourly fee, but it is less than Robinson.

The hourly fee is within the presumptive hourly fee for attorneys practicing in the field of oil and gas law in Wyoming and Colorado.

Request for fees and expenses in case 99-MD-1625:

El Paso requests separate attorney fees and expenses of $586,318.

Joint defense fees and expenses: $140,474.33.

The Special Master has reviewed the invoices, and they set forth the task of the timekeeper and relate it to the defense of the El Paso affiliates in case 99-MD-1625.

The joint defense fees and expenses have been reduced by 25% to $105,355.74

 The Special Master finds that El Paso is entitled to attorney fees and expenses of $691,673.74.

Case No. 99-MD-1632

El Paso does not seek attorney fees and expenses incurred by in-house attorneys. It seeks joint defense fees and expenses of $139,866.90, which are reduced by 25% to $104,900.17.

Conclusion:

The Special Master finds that El Paso Defendants are entitled to $1,669,454.10 in attorney fees and expenses.

**P. ENOGEX (ENOGEX INC., ENOGEX SERVICES CORPORATION, TRANSOK, INC.) AND OKLAHOMA GAS & ELECTRIC CO. (OG&E) CASES: 99-MD-1626, 1640, 1641**

The Enogex Inc., Enogex Services Corp., and Transock, Inc. (Enogex) defendants retained Robin Fields to represent them in U.S. ex rel. Grynberg v. Alaska Pipeline Co., et al., Case No. CIV-95-725, U.S. District Court for the District of Columbia. Enogex filed a Motion to Dismiss. The case was dismissed. Grynberg then filed False Claims Act claims in the following litigation, which included Enogex companies and Oklahoma Gas & Electric Co. (OG&E): Case No. CIV-97-1009 (W.D. Okla.)(99-MD-1640); Case No. CIV-97-1010(W.D. Okla)(99-MD-1641) and Case No. CIV-97-2089 (E.D.La.)(99-MD-1626). Robin Fields has continued to represent Enogex/OG&E. She also was lead counsel for the Cross Timbers companies, which consisted of Cross Timbers Oil Company, Cross Timbers Operating Co., Cross Timbers Energy

Services, Inc., Timberland Gathering and Processing, Inc., and Ringwood Gathering Co. Where her legal tasks were common to all defendants, the billing hours were divided between the defendants. Where the task was specific to a defendant, the defendant was billed the full hourly fee. Cross Timbers is not filing a claim for attorney fees or costs.

Fields and the law firm were active in the Joint Defense Team defense of the case. There was continual contact by phone, e-mail and documents. The records reflect research and material being provided for the joint defense effort. This was particularly noted in the billings for 2004, 2005 and 2008. The hourly tasks performed on behalf of the joint defense were paid by Enogex/OG&E and the other defendants because the joint pleadings and briefs also applied to the defense of their cases.

Primary timekeepers are as follows:

Robin Fields: 1998 - $175 per hour; 2009 - $400 per hour.

Steven Jantzen: 2001 - $180 per hour; 2005 - $225 per hour.

Corey Neller: 2002 - 120 per hour; 2007 - $180 per hour.

Melissa Keplinger, Paralegal: 1999 - $55; 2007 - $115.

Misty Dalke, legal assistant:  $50 per hour.

Requested fees and expenses:

Separate attorney fees: $1,115,215.07. It allocates $196,115.34 as appeal-related fees.

Joint Defense fees and costs: Fees: $197,749.99 and costs of $28,952.60

The lodestar test has been used to determine the presumptive fees. Perdue v. Kenney A. *ex rel.*Win, 130 S. Ct. 1662, 1673 (2011); Anchondo v. Anderson Crenshaw and Associates, 616 F.3d 1098 (10th Cir. 2010).

The attorney fees and paralegal fees are within the presumptive prevailing market rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado.

Enogex/OG&E did not submit $44,285.66 in fees and expenses where they had inadequate invoices, or where they used staff in defense of the case who were not a part of the defense team. It also waived a request for cost and expenses incurred in the defense of the case in the amount of $87,935.48. I reviewed the expenses in reviewing the billing records, and the expenses would have been compensable.

 The Special Master has reviewed 1426 pages of billing and affidavit records. Thirteen attorneys and five paralegals were timekeepers. The Special Master has reviewed in detail all of the billing records with additional review of the billing records in 2003, 2004 and 2008 because $580,000 of the fee requests occurred within those three years. Multiple staff members were billing daily. The use of multiple attorneys and paralegals in a complex case is not inherently unreasonable as long as the work is

not duplicative. Anchondo, 616 F.3d at 1105. The timekeepers identified the tasks that each was performing. There were separate issues that required research, briefing, pleadings and documentation. The records meet the requirements that party seeking fees and expenses identify the task, the applicability to the case and work product necessary to the defense of the case. Case v. United School Dist. No. 233, 157 F.3d 1243, 1252 (10th Cir. 1998).

$93,304 in fees incurred from November, 1998 until January, 2000. The fees relate to the defense of the litigation in Oklahoma and the issue of the Oklahoma cases being transferred by the MDL panel.

There are certain billings that are reduced or disallowed. Keith Klein, a partner, billed 158 hours from 1999 to 2004. The tasks are for review and conferences. I could not find any entries that involved research, pleadings or input to the defense of the case. He has billed $13,190 in fees which will be disallowed. Patrick Pearce billed 516 hours of which 161 hours were in 2003. In 2003, his task was "Review file produced by Grynberg on public disclosure and original source." It is the same task for the year 2003 without any evidence regarding how the review was used in the litigation. $28,512 in fees is disallowed. Misty Dalke, legal assistant, had daily entrees during certain months of 2003, 2004 and 2005 which consisted of "work on joint defense communications" or "acquisition of documents." Ms. Dalke's tasks for a 6-year period were administrative. She billed 949 hours for $43,346, which is disallowed. Robin Fields has over 60 phone calls with various individuals which do not identify how the call relates to the litigation. The entries do not meet the standard in Case; the entries are brief and no reduction will be applied.

Enogex has allocated $196,115.34 to appeal-related fees and costs. The fees and costs are disallowed.

The joint defense attorney fees and expenses have been reduced by 25% for a total of $170,026.94.

The Special Master finds that Enogex, Inc., Enogex Services Corporation, Transok, Inc., and Oklahoma Gas and Electric Co. are entitled to $815,216.70 in attorney fees and joint defense attorney fees and costs of $170,026.94 for a total of $985,243.64.

### Q. EQUITABLE RESOURCES, INC. 99-MD-1630 and 99-MD-1644

Charles D. Tetrault of Vinson & Elkins L.L.P. represents multiple defendants in separate MDL cases. He represents Equitable Resources, Inc. and its subsidiary companies, Equitrans LP, Equitable Storage, Inc. and Louisiana Intrastate Gas Company LLC in Case Nos. 99-MD-1630 and 99-MD-1644. He also represents the following corporations: Agave Energy Company in case 99-MD-1635; Florida Gas Transmission Company LLC; Northern Natural Gas Company and Transwestern Pipeline Company, LLC. Each has filed a separate application for attorney fees and expenses. He also represented dismissed defendants in Case Nos. 1602, 1608, 1622 and 1640.

The multiple defendants retained Vinson & Elkins,L.L.P. in order to reduce expenses on common claims by sharing counsel. Tetrault split the common hours and billings between all of the defendants. An example would be reviewing documents, conferences, research and pleadings. When the work or task related to a specific defendant, the defendant was billed for hours and expenses. Because of his expertise and the number of defendants he represented, Tetrault was the only outside, non-paid attorney to the five-member Coordinating Counsel Committee of the Joint Defense Team. The Coordinating Counsel Committee determined overall strategy and tactics, structuring and editing of major joint defense pleadings and briefs and preparation of arguments in the district and appellate courts. He was a non-paid member. The position required him to review pleadings, review and comment on joint defense pleadings and strategy, and attend hearings and meetings of the committee. The hourly tasks performed for the Joint Defense Team were divided equally between his clients. The individual defendants benefited by his involvement in the research, strategy, pleadings and decisions on the Coordinating Counsel. The time records of timekeepers for the Joint Defense Team and other defendants reflect that he was actively involved in making decisions and recommendations from 1999 through 2011.

The primary timekeepers for Equitable Resources Inc. and Equitrans LP are:

| Charles Tetrault: | 1998 - $300 per hour; 2003 - 2011 - $460 per hour. Tetrault performed 95% of the billings. |
|---|---|
| John Faust: | 2001 - $280 per hour; 2003 - $375 per hour. |
| Virginia Brooks: | 1999 - $210 per hour. |

The Special Master has reviewed 106 pages of the Application of for Attorneys' Fees and Expenses, Declaration in Support of Attorneys' Fees and Expenses, Reply Brief and Billings. The Special Master has compared the billings in the other cases represented by Vinson & Elkins, LLP for duplications of billings. The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A., ex rel. Winn, 130 S.Ct. 1662, 1673 (2011).

**REQUEST FOR FEES AND EXPENSES**

Equitable Resources Inc. requests the following fees and expenses:

| Equitrans LP: | $9,039 fees and $380.57 expenses. |
|---|---|
| Equitable Resources: | $637,598 fees and $12,663.32 expenses. |

Equitable allocates a portion of the fees and expenses as follows:

| Appellate fees: | $31,266 fees and $366.42 expenses. |
|---|---|
| Liability for fees: | $7,396 fees and $50 expenses. |

Joint defense: $207,726.50 fees and $30,726.20 expenses. It seeks an additional $5,000 for preparation of the Joint Defense Reply Brief for a total of $243,496.79.

Total: $854,378.44 fees and $43,770.29 expenses.

The lead counsel, Tetrault's fees and the other timekeepers are within the presumptive prevailing market rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado.

Equitable Resources, Inc. and the Relator have reached a stipulation for fees and expenses (Document 2312) as follows: "Equitable and the Relator stipulate that the Special Master's recommended award for Equitable should be $624,324.78."

Pursuant to the stipulation, I recommend that Equitable Resources. Inc. is entitled to $624,324.78.

## R. FLORIDA GAS TRANSMISSION COMPANY, LLC   99-MD-1608; 99-MD-1625

Florida Gas Transmission Company, LLC (FGT) was named as a defendant in the False Claims Act by Grynberg in the U.S District Court for the District of Colorado in 1998 with nine other defendants including Transwestern Pipeline Company, LLC. FTG is affiliated with Transwestern. It retained Charles D. Tetrault of Vinson & Elkins LLP.   The case became 99-MD-1608 in MDL-22-MD-1293. Along with Transwestern, FTG was named in a FCA case filed by Grynberg in the U.S. District Court for the Eastern District of Louisiana. This case became 99-MD-1625 in the MDL case. All billings by Vinson & Elkins for FTG from 1998 to 2001 were made to Transwestern, which divided the fees and costs with FTG. Vinson & Elkins billed FTG and Transwestern after 2001.

While representing multiple defendants including FTG, Tetrault divided hours and billings from common tasks among the multiple defendants. Where the task was specific to FTG, it was billed the full amount of the task. As I found in the application by Equitable Resources, Inc., Tetrault was a non-paid member of a five-member Coordinating Counsel Committee of the Joint Defense Team. FGT benefitted by the hours he billed for work also on the committee. Tetrault divided the hours between the multiple defendants including FTG.

## Request for fees and expenses

Florida Gas Transmission Company requests the following fees and expenses:

Separate attorney fees and expenses:            $62,557.50 attorney fees; $537.03 expenses.

Of the total fees and expenses, FTG allocates the following:

    Appellate defense:                          $25,555 fees and $366.43 expenses.

    Liability for fees:                         $4,797.50 fees and $50 expenses.

The lodestar test has been used to determine the presumptive reasonable fees. Perdue v. Kenney A. ex rel. Winn, 130 S.Ct. 1662, 1663 (2011).

Charles Tetrault is the only timekeeper. He billed $460 per hour. The attorney fees are within the presumptive prevailing market rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado.

FTG waived submitting fees and expenses incurred between 1998 through 2001 for Cases 99-MD-1608 and 1625. The Special Master has reviewed the Affidavit for Attorney Fees and Expenses, Declaration of Tetrault, billings and other documents. The Special Master finds the billing records meet the requirements pursuant to Case v. United School Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998). The records establish that the hours and expenses were necessary and reasonable for defense of the litigation.

Florida Gas Transmission Company allocates $25,555 in fees and $366.43 in costs to defending the appeal. The fees and costs are disallowed.

The Special Master finds that Florida Gas Transmission Company is entitled to $36,636.07.

## S. GPM GAS CORPORATION n/k/a DCP Midstream LP 99-MD-1682

In January, 1999, Jack Grynberg filed a Federal Claims Act against GPM Gas Corporation (GPM) in the United States District Court for the Southern District of Texas. It retained Daniel M. McClure of Fulbright & Jaworski L.L.P (Fulbright). McClure had represented GPM in other matters. Other defendants chose to retain individual counsel within Fulbright. Gerard G. Pecht of Fulbright's Houston office had been retained previously by PanEnergy Corp. affiliated companies (10 companies) in a Federal Claims Act filed in the United States District Court for the Southern District of Texas in 1998. GPM was represented by McClure from 1999 until 2004. GPM became affiliated with the Pan Energy Defendants in Case No. 1610. GPM's current successor is DCP Midstream LP. Billings for GPM after 2004 are included in the Pan Energy billings.  Fulbright timekeepers billing in the GPM claim for fees and costs also billed in other cases represented by Fulbright.

A Dispositive Motion was filed in the USDC Southern District of Texas. Summary Judgment was entered in favor of GPM. On appeal by Grynberg, the United States Court of Appeals for the Fifth Circuit in summary opinion reversed the judgment and remanded the case back to the District Court. United States of America, ex re., Jack J. Grynberg v GPM Gas Corporation, 277 F. 3d 1373 (5th Cir. 2001). GPM filed a Petition for Writ of Certiorari which was denied. GPM Gas Corp et al. United States ex rel. Grynberg, 535 US 107 (2002).

GPM was involved in motions, research, pleadings and conferences with other defendants concerning Grynberg's MDL motion. GPM was also named in a class action in Kansas. The Texas case became 99-MD-1682.

## REQUESTED FEES AND EXPENSES

| | |
|---|---|
| Separately incurred fees and costs: | $149,522.50 attorney fees and $12,767.32 |
| Joint Defense fees and costs: | $164,492.03 |

The primary timekeepers providing billing hours are as follows:

| Daniel McClure, Lead Partner: | 1999 - $355 per hour; 2004 - $455 per hour |
| Richard Carrell, of Counsel: | 1999 - $380 per hour |
| William Boyce, Partner: | 1999 - $330 per hour |
| Warren Huang, Partner: | 1999 - $270 per hour |
| Dean Moesser, Counsel: | 1999 - $225 per hour |

The law firm has listed 24 timekeepers.

The lodestar test is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Anchondo v. Anderson, Crenshaw & Associates, L.L.C., 616 F.3d 108,112 (10th Cir. 2010). The lodestar is favored in determining a presumptive reasonable fee. Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1673 (2010).

The hourly fees of all counsel are within the reasonable prevailing market rates for counsel representing oil and gas clients in the Colorado/Wyoming area. The majority of the fees were incurred defending and appealing and MDL panel issues prior to the case being transferred to Wyoming from Texas.

The attorneys for GPM must review the hours actually expended and "winnow" out the hours reasonably expended to defend the case. Case v. United School Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998). The Special Master has reviewed the 21 pages of billings. The various attorneys and staff had clearly assigned issues without duplication. The hours were reasonable and not excessive.

The following billings are disallowed:

GPM was successful in obtaining summary judgment in the United States District Court for the Southern District of Texas. The summary judgment was reversed and remanded to the District Court. Petition for *Writ of Certiorari* with the United States Supreme Court was denied. GPM is not entitled to recover attorneys fees where it was not the successful party on appeal of the summary judgment in the United States District Court for the Southern District of Texas. Crumpacker v. Kansas, Dep't of Human Resources, 474F.3d 747, 755 (10th Cir. 2007). William Boyce and Warren Huang devoted their research, pleadings and conferences to defending the Summary Judgment on appeal to the 5th Circuit and filing a Petition for *Writ of Certiorari*. Boyce billed 33.70 hours at $355 per hour and Huang billed 43.50 hours at $270 per hour. McClure billed 34 hours on the appeals at $355 per hour. The total time expended on the failed appeals is 111.20 with fees of $38,891 which are deducted from the fee request.

Richard Carell, of Counsel, billed 34.30 hours at $380 per hour for a total of $13,011. His hours billed are for reviewing correspondence, conferring with McClure, and an occasional letter reporting to the client. The entries do not identify the subject of the reviews and conferences or how each related to the defense of the case. There is no evidence that he prepared or participated in the preparing of any

pleadings. The billing of Carell is denied as unnecessary to the defense of the litigation in accordance with Case, 157 F.3d at 1252.

Darryl Anderson had 17.60 hours for $2,900 in fees for research on an ethical issue concerning whether there was a conflict of interest by defending GPM when another client of Fulbright was a putative defendant. The issue is an internal issue not relevant to the defense of the Grynberg litigation.

The total fees disallowed: $54,802.

Costs and expenses: The costs and expenses submitted are reasonable and recoverable with the exception of local travel and "other" for a total of $74.52.

It is stipulated that GPM is entitled to $124,966.52 in Joint defense fees and expenses

The Relator and GPM have stipulated that PGM be awarded fees and costs of $232,380.

Pursuant to the stipulation set forth in Document 2312, I recommend that GPM n/k/a DCP Midstream LP is entitled to $232,380.00 attorney fees and expenses.

### T. KN ENERGY n/k/a KINDER MORGAN Case: 99-MD-1603, 99-MD-1668. 99-MD-1626

KN Energy and its affiliates retained Mark D. Colley of Holland & Knight LLP in 1997 when Greenberg filed a False Claims Act against the following defendants: KN Energy, Inc n/k/a Kinder Morgan, Inc., KN Interstate Gas Transmission Co, KN Natural Gas, Inc, Northern Gas Company, Rocky Mountain Natural Gas Company, TCP Gathering Co., Westar Transmission Company and Wildhorse Energy Partners, LLC. Michael Beatty and Associates were retained in December 1999 when the case became part of the Wyoming MDL case. It was filed as Case 99-MD-1603. The Beatty firm was also retained by KM to represent TransColorado Gas Transmission Company (99-MD-1609); Gulf Energy Pipeline Company, LLC; Tejas Gas Corporation, Tejas Natural Gas Company (99-MD-1626); and Midcon Corp., Midcon Gas Services Corp., Midcon Marketing Corp., Midcon Texas Pipeline Operator, Inc., and Natural Gas Pipeline Co. of America (99-MD-1668).

According to the affidavits of Noecker and Colley, the Department of Justice (DOJ) commenced an investigation of KN's measurement and valuation practices as a test to determine whether the DOJ should join Grynberg as a litigant in the MDL cases. Grynberg suggested to the DOJ that KN should be the test case.

Colley's expertise is in government contracts, audits and investigations, not oil and gas law. As set forth in Colley's affidavit, his publications and presentations as an expert in government law commenced in 2007 through 2011. Holland & Knight's representation included presentations to Congress on possible legislation. The Holland & Knight's representation of KM ended in September, 2001.

Beatty & Wozniak represented multiple defendants in the MDL case. Tasks performed specifically for KM were designated Kinder Morgan/*Qui Tam*. Tasks performed on behalf of all

defendants were equally divided in two accounts as follows: Advisory & El Paso and Advisory where El Paso was not a participating defendant. It separated out MDL/Rule 11 Motions, MDL/Motion for Fees and Application for Fees.

Primary timekeepers are as follows:

| | |
|---|---|
| Colley: | 1998 - $265 per hour |
| Duvall: | 1998 - $310 per hour |
| M. Beatty: | 2000 - $375 per hour; 2011 - $550 per hour |
| R. Noecker: | 2002 - $350 per hour; 2011 - $450 per hour |
| G. Graham, Paralegal: | 2002 - $100; 2011 - $140 per hour |

Request for fees and expenses

| | |
|---|---|
| KM/*Qui Tam*: | $629,304.50 fees and $59,676.25 costs |
| Advisory & El Paso: | $121,693.16 fees and $9,611.26 costs |
| Advisory: | $82,581.87 fees and $3,052.50 costs |
| MDL/Rule 11: | $5,353.19 fees and $104.22 costs |
| MDL/Motion for Fees: | $13,665.23 fees and $333.75 costs |
| Application: | $8,654.44 fees and $122.14 costs |
| Joint Defense: 99-MD-1603: | $152,065.27 fees and $22,491.36 costs |
| Joint Defense: 99-MD-1626: | $146,400.60 fees and $21,653.52 costs |
| Joint Defense: 99-MD-1668: | $6,345.05 fees and $938.47 costs. |

The lodestar evaluation has been used to determine the presumptive reasonable fees and costs. Perdue v. Kenny A. ex rel.Winn, 130 S. Ct. 1662, 1673 (2010). I find the fees are within the presumptive range of fees of attorneys practicing oil and gas law for Wyoming and Colorado.

The Special Master has reviewed 974 pages of billings in detail as well as the Application for Fees, Affidavits of Noecker and Colley and CVs. The Special Master has also compared some of the Beatty billings with others submitted for other defendants.

Beatty & Wozniak represented KM and its affiliates in four separate lawsuits filed by Grynberg. Tasks were increased by the investigation of the Department of Justice. The Special Master has reviewed the *Qui Tam* hourly billings and costs. The billings set forth the task performed and the relation of the task to defense of the lawsuits. With exception of some minimal billings for "working lunches," the costs

relate to the defense of the cases. When Holland & Knight transferred its files to Beatty in 2001, 73 hours and $19,456 in fees were devoted to reviewing the documents, coding documents and integrating them into Beatty files. The hourly billing and fees were related to the transition of counsel, are redundant and administrative.  As such, they should not be passed on to Grynberg. <u>Mares v. Credit Bureau of Raton</u>, 801 F.2d 1197, 1206-07 (10th Cir. 1986). The *Qui Tam* fee is reduced to $609,848.50.

KM billings for KM/Advisory & El Paso have the following notations: "Total Non-billable Hours". Behind each hourly billing is the notation "NC". KM was not billed for the hours. The request for $121,693.16 fees and a total of $9,611.26 costs is disallowed.

KM argues that it is entitled to the non-billable hours which were not paid by it. It cites <u>Centennial Archaeology, Inc. v. Aecom, Inc.</u>, 688 F.3d 673 (10th Cir. 2012). Centennial had a fixed fee agreement with its attorneys. The Wyoming Magistrate Judge and District Judge sanctioned Aecom because of a "pattern of obstructive discovery behavior had been pervasive and persistent throughout the entire course of written discovery and detrimental to the function of the judicial process" and "evinced a cavalier disregard for rights, the Rules of civil Procedure governing discovery, and Orders of this Court seeking to enforce those rules." *Id* at 677. The 10th Circuit held: "The purpose of Rule 37 attorney-fee sanctions would be thwarted if a party could escape the sanction whenever opposing counsel's compensation is unaffected by the abuse, as when the fee arrangement is a contingency fee or, as here, a flat rate." *Id.* at 680. Rule 37 is a sanction that compensates a party for costs incurred on only a discrete portion of the litigation and not whether the litigant is the prevailing party. <u>Hamilton v. Boise Cascade Exp.,</u> 519 F.3d at 553. <u>Fox v. Vice,</u> 131 S. Ct. at 2214-2215 (2011) discusses the equitable difference between reasonable fees to a prevailing plaintiff compared a defendant that prevails on a portion of the claims of the plaintiff. Section 1988 permits KM is entitled to be reimbursed by the plaintiff for fees and costs it incurred but for the frivolous claim. The Supreme Court stated: "In this situation, we explained, a court could properly award fees to both parties-to the plaintiff to reflect the fees he incurred in bringing the meritorious claim; and to the defendant, to compensate for the fees he <u>paid</u> in defending against the frivolous one." <u>(Emphasis added)</u> \*\*\* "Section 1988 permits the defendant to receive only the portion of his fees that he would <u>not have paid</u> but for the frivolous claim." (Emphasis added). As stated KM was not billed nor did it pay for the non-billed hours and therefore should not be reimbursed. I have reviewed the billings and compared the billings to the El Paso. The records do not reflect why there were non-billable hours, but KM did not incur any payment for the hours and is not entitled to be reimbursed.

KM billings for KM/Advisory have similar notations of "NC" until February, 2006. In February, 2006, Beatty starts billing multiple defendants. KM is assessed 13% of the fees and costs for a total of $35,857.98 in fees. The Special Master has reduced the costs requested to $1,200.  The tasks performed were for defense of the appeal. The cost was divided between defendants represented by Beatty & Wozniak. Appellate fees and costs have been disallowed.

KM billings for KM/Rule 11 Motion have the same notation of Non-billable and "NC." The request of $5,353.19 of fees and a total of $104.22 costs is disallowed.

KM billings for MDL/Motion for Fees are also puzzling. In April, 2007, and the first week of May 2007, Beatty billed 359.10 hours for $88,365.25. The billings all relate to the preparation of a motion for attorneys fees argued on April 24, 2007 before Judge Downes. By the billings, an electronic presentation was made to the court as well as the briefs. This required the assistance of the technical staff and the defendants for the presentation. Both Beatty and Noecker prepared for the oral argument and attended the hearing, as well as the paralegal and technician. They traveled to Casper on April 22, 2007. Costs include $900.91 for three rooms, meals and travel expense; car rental, meals and gas for $483.77 and separate meal costs of $310. The costs were shared by the multiple defendants with KM's share being 11%.  11% of the fees and costs would be $9,934.65. The actual bill to KM is $216. The KM/*Qui Tam* hourly bills for April, 2007, do not show any billing for the Motion for Fees to KM. $216.00 is approved for fees and costs.

Under the designation Application, KM requests $8,654.44 for fees and $122.14 in costs. The billing hours and fees submitted to the Special Master are 136.10 hours and $13,896.00 fees for the multiple defendants. Beatty billed KM its portion of the advisory fees and costs at 13% for $1,785.45. Beatty separately billed KM $2,006.50 and costs of $42.65. The total billed is $3,835.60 for the application for fee.  $3,835.60 in fees and costs are approved.

To summarize the fees and expenses, Beatty & Wozniak billed KM $671,241.08 in fees and $105,063.78 in expenses for a total of $776,277.86. KM allocates $93,991.11 in fees and $840.54 costs for the defense of the appeal. The appellate fees and costs are disallowed for remaining fees and costs of $681,445.95.

KM seeks joint defense attorney fees as follows: Case 1603: $152,065.27 fees and $22,491.36 costs; Case 1626:  $146,400.60 fees and $21,653.52 costs; and Case 1668: $6,345.05 and $938.47 in costs. Joint defense fees and costs have been adjusted by 12%. The fees and costs are adjusted as follows: Case 1603 - $153,609.83 fees and costs; Case 1626: $147,887.63 fees and costs and Case 1668: $6,409.49 fees and costs.  KM is entitled to $307,906.95 joint defense fees and costs.

Holland & Knight was retained in 1997 by KN because of Colley's expertise in government law. The firm also entered an appearance in the *Qui Tam* lawsuit on behalf of KN in case 99-MD-1603. As set forth by Colley's affidavit and reflected in the billing records, extensive hours were spent in studying industry gas measuring practices and procedures and translating them "into understandable form and analysis of implications relative to the False Claim Act." It included historical studies, meetings with engineers and ground personnel in field, attending, meeting and reviewing industry associations such as American Gas Association, Gas Processors Association, American Petroleum Institute and U.S. Department of Interior and Mineral Management Service. Multiple meetings were held with DOJ officials including the Assistant United States Attorney for Colorado. The firm responded to DOJ administrative subpoenas and made multiple FOIA requests for government records. Colley and firm members met with and participated in meetings of the MDL Joint Defense Team and Beatty. Colley produced a "White Paper" to the DOJ defending the gas measurement practices and procedures of KN and the oil and gas industry. The DOJ did not pursue a FCA claim against KM and its affiliates or any of the defendants in the MDL proceedings.

The Special Master has reviewed in detail the billings of Holland & Knight. Upon being retained, it established a "War Room." There were multiple meetings with attorneys billing for the planning meetings during 1997 and 1998. The first issue is whether tasks of responding to the DOJ are related to the defense of the Grynberg *Qui Tam* cases against KM and its affiliates. The DOJ would not have submitted the administrative subpoenas absent the MDL cases brought by Grynberg. His claims against KN involved leases on federal and Indian lands which were under the jurisdiction of the U.S. Department of Interior's Mineral Management Service in Denver, Colorado. The policies and practices of the oil and gas industry were important in establishing KN's gas measuring policies and procedures. The "White Paper" and the documents supporting it were used by the Joint Defense Team as well as individual defendants in the MDL cases. The Special Master finds that the fees and costs of Holland and Knight are recoverable by Kinder Morgan with the following exceptions:

Computer and JFS training of $11,142 as administrative fees and costs.

Congressional oversight hearing, history study of the 105th Congress, history of the Federal Claims Act, history of the Natural Gas Policy Act, research on duplicative lawsuits, duties and authority of the Mineral Management Service, research of the judges and case loads of the U.S. District Court in Colorado and 10th Circuit Court of Appeals, research of FCA cases in all Federal Circuits and contact with Senate Committee concerning Solicitor nomination and review of Kansas class action for a total of 734 hours and fees of $14,153.  The hours involved informational tasks that are not reasonably related to the defense of the case and also involve political issues. Mares v. Credit Bureau of Raton, 801 F. 2d 1197, 1204 (10th Cir. 1986);  Case v. Unified School Dist. 233, Johnson County, 157 F.3rd 123, 1252 (10 Cir. (1998).

In September and October, 2001, the firm closed the "War Room" and billed for closing, boxing records and conveying appropriate documents to the Beatty firm in the amount of $8,697.25. The hours involve administrative tasks not related to the defense of the case and the transfer of litigation to the Beatty firm.

The travel costs were high because of the intensive investigation of the policy and practices of the oil and gas industry as well as meetings with DOJ counsel. The billings reflect "working" while traveling and will not be adjusted. There are minor costs that cannot be identified as reasonably necessary for the defense of the case: Purchase of encyclopedia and reference material in the amount of $1,198, unidentified travel expenses of $1,621 and $401 in luncheons. The remaining costs reasonably relate to defense of the case.

The total attorney fees and costs is $1,848,613.40. less appellate fees and costs of $94,831.65 for a total of $1,753,781.80.

Kinder Morgan seeks enhancement of the fees by the court for the obstructive and delaying actions by Grynberg. Enhancement should only be awarded in "rare and exceptional circumstances." Grynberg's obstructive actions increased the attorney fees and costs awarded under the loadstar method. Perdue, 130 S.Ct. at 1673.

I find that Kinder Morgan is entitled to attorney fees and expenses of $1,753,781.80.

## U. MARATHON OIL COMPANY 99-MD-1645

Marathon Oil Company retained the firm of Baker Botts L.L.P. of Houston, Texas with J. Gregory Copeland as lead counsel. The case is 99-MD-1645. The Special Master has reviewed the Motion and Affidavits for Attorney's Fees and Expenses and 386 pages of hourly billings from 1999-2010. Marathon Oil Company did not participate in the Joint Defense Team.

The primary timekeepers are as follows:

| | |
|---|---|
| C. Copeland, Partner: | 1999 - $340 per hour; 2005 - $546.25 per hour; 2007 - $607 per hour; 2009 - $688 per hour |
| T. Gehl: | 2001 - $279 per hour; 2003 - $313 per hour |
| K. Silver: | 2004 - $261 per hour; 2007 - $365 per hour |
| C.W. Cominsky, Paralegal: | 2000 - $80 per hour; 2004 - $128 per hour; 2007 - $200 p/hour |

The lodestar test has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A. ex rel.Winn, 130 S. Ct. 1662, 1673 (2011).

The hourly fees charged by the attorneys, paralegals and staff of Baker Botts are within the prevailing market rate for attorneys practicing in the area of oil and gas in Colorado and Wyoming. Copeland's fees from 2007 to 2011 exceed the $550 reasonable fees.

Requested fees and expenses:

Marathon Oil Company requests $440,084.36 in attorneys fees and expenses which includes $108,335.00 joint defense fees and costs.

The Special Master must determine whether the hours billed are reasonably expended on defending the litigation. Case v. United School Dist. No.233, 157 F.3d 1243, 1250 (10th Cir. 1998).The time records are inadequate and fail to meet the standards by failing to identifying how the task related to the defense of the litigation.

Gehl's hourly records in 2002 and 2003 start with "review" of multiple documents and pleadings. He prepared pleadings and deposed Grynberg. The multiple reviews of documents were necessary for carrying out his tasks in defending the litigation and are not excessive.

Silver became actively involved with the litigation from 2003 to 2006. She has entries of 10 minutes to 30 minutes that consist of "review e-mails" without identifying how the task related to the defense of the case. The tasks add up to 45 hours for $14,562 in billings. I will disallow $14,562.

The paralegal Cominsky billed over $86,000 or 20% of the fees. 60% of the entries are for "print and review joint defense documents" and "print and review recent correspondence." She maintained a

notebook of the documents. The billings do not generally reflect any review or substantive action by attorneys from the entries by Cominsky. She also performed tasks for legal research, drafted pleadings and filed the pleadings. Although the tasks do not identify each document, Cominsky provided the firm with updated information at a reasonable hourly rate for less than an attorney. The tasks are reasonable and necessary for defense of the litigation. As the Special Master has previously found, it was necessary and reasonable to assign the task of gathering and maintaining the pleadings and correspondence of the 70 separate cases and hundreds of defendants. The general entries by Cominsky were necessary and reasonable.

Copeland, as the senior partner, attended hearings and joint defense conferences. He prepared a motion to stay in 1999, a reply to Relator's response in 2004, and was involved in settlement negotiations with Relator in 2005.

The Relator and Marathon Oil have stipulated that $27,083.89 be disallowed from the joint defense attorney fees and expenses. They also stipulate the amount allocated to appellate fees and expenses was $42,145.18. They stipulate the award should be $356,293.29.

I find in accordance with the stipulation, Marathon Oil Company is entitled to $356,293.29 for attorney fees and expenses.


## V. NORTHERN NATURAL GAS COMPANY 99-MD-1608

Northern Natural Gas Company LLC (Northern Natural) is one of 10 defendants in a False Claims Act filed in the U.S. District Court for the District of Colorado in June 1997. The case was filed against ten Enron companies which included six pipelines. Transwestern Pipeline Company LLC, Northern Natural Gas Company LLC, and Florida Gas Transmission Company LLC are three of the six pipelines. Charles D. Tetrault of Vinson & Elkins L.L.P. was retained to represent the 10 defendants. This became Case 99-MD-1608 in MDL 99-MD-1293 in the U. S. District Court for the District of Wyoming. Grynberg also filed a False Claims Act against Enron and three companies including Florida Gas Transmission Company in the U.S. District Court for the Eastern District of Louisiana. This became Case 99-MD-1925. Enron took bankruptcy in 2001. Tetrault continued to represent the remaining defendants along with other defendants in the MDL case.

While representing multiple defendants, Tetrault divided hour and billing from common tasks among the multiple defendants. Where the task was specific to Northern Natural, Northern Natural was billed for the task. As I found in the application by Equitable Resources, Inc., Tetrault was also selected as a non-paid member of the five-member Coordinating Counsel Committee of the Joint Defense Team. Northern Natural benefitted by that position, and like the other multiple defendants, was billed a proportional fee for his work on the committee. The Special Master has provided more detailed tasks and benefits in my findings in Equitable Resources Inc.

The primary timekeepers for Northern Natural Gas Company are:

| Charles Tetrault: | 2002 - $450 per hour; 2003 - $475 per hour. All but $2,000 are billed by Tetrault. |
|---|---|
| Judith Mikusky: | 2006-$220 per hour. |

**Requested fees and expenses**

Northern Natural requests the following fees and expenses:

| Attorney Fees: | $314,623.50 and Expenses of $2,719.92 |
|---|---|

Included in the fees and expenses it allocates the following:

| Appellate: | $31,698.75 fees and $366.43 expenses. |
|---|---|
| Liability for fees: | $7,256.50 fees and $50.00 expenses. |

The lodestar test has been used to determine the presumptive reasonable fees. Perdue v. Kenney A. ex rel. Winn, 130 S.Ct. 1662, 1663 (2011).

The attorney fee of $475 per hour is within the presumptive prevailing market rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado.

Northern Natural waived submitting fees and expenses incurred between 1998 and 2001 for Case 99-MD-1608. The Special Master has reviewed 106 pages of the Application for Attorney Fees, Declaration by Tetrault, Reply Brief on Attorney Fees, billings records, and other documents. The Special Master has compared the records with other defendants represented by Tetrault. The Special Master finds the billing tasks meet the standard established in Case v. United School Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998). As I found in Equitable Resources Inc., the records establish the hours and expenses were necessary and reasonable for the defense of the litigation.

Northern Natural allocates $31,698.75 fees and $366.43 costs for defending the appeal. The fees and cost are disallowed.


**W. Pacific Gas & Electric Company 99-MD-1602**

Pacific Gas and Electric Company (PG&E) retained Craig A. Haynes of Thompson & Knight LLP in February, 2002. It has previously been represented by Charles D. Tetrault of Vinson & Elkins LLP. PG&E seeks the separate fees and expenses in defending the litigation from February 2002 to 2011. In 2004, Haynes also represented other defendants acquired by Devon Energy Corporation or its affiliates 99-MD-1659(Snyder defendants). He divided in half the fees to each client for common tasks. His Motion for Recovery of Fees and Expenses in Case No. 99-MD-1659 indicates fees being divided by one third, but does not identify the defendants.

The primary timekeepers are as follows:

73

| C. Haynes: | 2002 - $345 per hour; 2004 - $400 per hour; 2009 - $615 per hour; 2011 - $650 per hour |
|---|---|
| S. Leahy: | 2003: $450 per hour |
| Ritter, paralegal: | $155 per hour to $175 per hour |

Request for Separate fees and Expenses:

| Separate Fees and expenses: | $82,129.00 fees and $1,457.97 expenses. |
|---|---|
| Joint fees and expenses: | $58,682.33 |

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A., *ex rel. Winn*, 130 S. Ct 1662, 1673 (2011).

Haynes' billings increased from 2002 through 2011. The billings reached $450 until 2009. The hourly billing increased to $615 per hour and in 2011 to $650 per hour. The 2009 – 2011 hourly rates are higher than the presumptive hourly rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado. There were limited billings during that period at the above rates with excessive cost of less than $500. The billing hours prior to 2009 are within the presumptive reasonable hourly rates.

The Special Master has reviewed the billing in Case No. 99-MD-1659 and 1602. I do not find any timekeepers' billings that relate to defending the appeal or to establishing the liability for fees.

An attorney seeking fees and expenses must by the billing records identify the specific task, the applicability to the case and work product actually necessary to the defense of the case. Case v. United School Dist. No. 233, 157 F.3d 952, 956 (10th Cir. 1994). The party must prove every dollar and each hour above zero. Cadena v. Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000). As lead counsel, Haynes was required to check the status of the litigation. He checked the e-mails and pleadings from two to six times a week except when he was actively involved in depositions, hearings or conferences. The Special Master finds the tasks of review are reasonable and necessary.

The joint fees and expenses are reduced by 25% to $37,409.98.

The Special Master finds that Pacific Gas & Electric Company is entitled to the following:

| Separate attorney fees and expenses: | $83,586.97 |
|---|---|
| Joint fees and expenses: | $37,409.98 |
| Total: | $120,996.95 |

**X. PANENERGY CORP. and affiliates a/k/a Spectra Energy Corp. Cases: 99-MD-1605, 99-MD-1610, 99-MD-1627 and 99-MD-1682.**

In 1998, Fulbright & Jaworski LLP represented Duke Energy upon the filing of the *Qui Tam* complaint against PanEnergy Corp. and its entities. Duke Energy purchased PanEnergy in 1997. Duke Energy sold its gas operations to Spectra Energy Corp. in 2007 and Spectra Energy is entitled to the reimbursement of attorney fees and expenses in defense of the *Qui Tam* complaints filed by Relator. The PanEnergy complaint became 99-MD-1610 in 99-MD-1293-NDF. The PanEnergy case consists of the following corporations: PanEnergy Corp., Centana Energy Corporation, PanEnergy Field Services, Inc., PanEnergy Natural Gas Corporation, PanEnergy Services, Inc., Texas Eastern Transmission Corporation, and Westana Gathering Company. Fulbright & Jaworski LLP also jointly represented PanEnergy-affiliated companies who were named in other *Qui Tam* complaints which are: Main Pass Gas Gathering Company (Main Pass) in Case No. 99-MD-1627; Dauphin Island Gathering Partners (Dauphin Island) in Case No. 99-MD-1605; Overland Trail Transmission Co. (Overland Trail) in Case No. 99-MD-1653; and GPM Gas Corporation (GPM) in Case No. 99-MD-1682. Spectra Energy has a separate claim in Case No. 99-MD-1682. The lead counsel was Gerard Pecht, Partner, of Fulbright & Jaworski. PanEnergy participated in the Joint Defense Team and incurred billings for fees and expenses.

Overland Trail settled with Grynberg in Case No. 99-MD-1653 and waived attorneys fees and expenses. PanEnergy has reduced its claim by 9.1% to reflect the Overland Trail settlement.

Fulbright and Jaworski LLP separately retained by the Joint Defense Team to provide research and pleadings as jointly incurred fees. Brown Drew & Massey LLP of Casper, Wyoming, was retained as local counsel. Brown Drew divided the billings between three defendants with some exceptions.

The primary timekeepers providing billing hours for Fulbright & Jaworski are as follows:

| | |
|---|---|
| Gerald Pecht, Partner: | 1998 - $325 per hour; 2005 - $500 per hour |
| Marsha Gerber, Partner: | 2003 - $325 per hour; 2006 - $480 per hour |
| Jennifer Price, Sr. Counsel: | 1998 - $250 per hour; 2001 - $300 per hour |
| Daniel McClure, Partner: | 2004 - $455 per hour; 2006 - $495 per hour<br>2007 - $590 per hour; 2009 - $660 per hour |
| Julie Teperow, Sr. Associate | |
| Farmer, Sr. Paralegal: | 2007 - $150; Morgan, Sr. Paralegal: 1998-$100 per hour;<br>2007 - $130 per hour |

Fulbright & Jaworski had 24 timekeepers. 60% are by Gerber, Pecht, Price and Paralegal, Morgan.

The primary timekeepers providing billing hours for Brown Drew & Massey, LLP are as follows:

| | |
|---|---|
| Thomas Reese: | 2002 - $200 per hour; 2005 - $225 per hour |
| Randall Carahan: | 2003 - $125 per hour; 2005 - $150 per hour |

Legal Assistant:                              $75 per hour

The Special Master finds that the hourly billing for the attorneys and paralegals are within the presumptive reasonable hourly fees for attorneys and paralegals practicing oil and gas law in Colorado and Wyoming except the hours for McClure in 2009.

Requested fees and expenses

Fulbright & Jaworski, LLP

Separately incurred fees: $705,842.41 fees and $28,821.66 expenses after a 9.1% deduction.

It allocates $15,740.61 for defending the appeal.

It allocates $10,180 to prove liability for fees.

Joint defense fees and expenses: $207,057 fees and$30,624.96 expenses.

Brown Drew & Massey LLP: $28,745.82 fees.

The Special Master has reviewed the 87 pages of billing summaries of Fulbright & Jaworski and 108 pages of billings by Brown Drew. PanEnergy is required to exclude hours that are excessive, redundant or otherwise unnecessary. Carter v. Sedgwick County, Kan., 36 F.3d 952, 956 (10th Cir. 1994).

In 1998, Jennifer Price was assigned various tasks. She was the primary contact with other defendants and the joint defense committees. She attended meetings of the MDL Committee, Dispositive Motion Committee, Original Source Committee and meeting of the Coordinating Committee. She summarized the meetings with administrators of Duke as well as with Pecht. She participated in drafting pleadings for the joint defense as well as for PanEnergy. She devoted over 70 hours to establishing the discovery program and assignment of personnel. In 2003, Marsha Gerber became the primary attorney tasked with pleadings, contact with the joint defense team and the appeal.

The following are reduced or disallowed:

Gerard Pecht was the lead counsel. As noted in the other Fulbright & Jaworski cases, Gerard Pecht's tasks were devoted to reviewing documents, e-mails, pleadings and attending conferences by phone or in person. He identified the general nature of the documents or conferences but no active follow-up on the information. He reported on a regular basis to the corporation the status of the case. There are 356 hours of entries that are 1 hour or less with the majority being between .25 to .75 minutes, or 59% of the entries.  As lead counsel, he was the contact with the corporation. There were multiple corporations and four MDL cases which Pecht reported to Duke Energy. The parties stipulate that Pecht's total fees were $231,098.19. The hours will be adjusted by 25% as excessive. The billing will be adjusted to $173,323.64..

Ann Morgan, Senior Paralegal, has over 100 hours of tasks consisting of one hour or less. The tasks consist of entries such as "attend research of recent events", "research list" or "assist" a person.

The tasks do not meet the requirements of Case. It is stipulated Morgan's fees were $43,023.79. Her fees billed are adjusted by 30% to $30,116.65.

Daniel McClure's hourly billings that exceed $550 are reduced by $1,000 for a total fee of $34,174.93.

Relator and Pan Energy stipulate that the reduction is $71,681.69 and the fee request is reduced to $634,160.72.

PanEnergy requests $28,821.66 for separately incurred expenses. The following expenses are disallowed: Lobby-meals and expenses-$210; meals-$644.61; local travel-$130.50; and secretary overtime-$42 for a total $1,027.11. They are expenses normally assumed by the law firm. The parties stipulate the correct expense request is $28,821.66 and that with the deduction the net expense is $27,794.55.

REQUESTED FEES AND EXPENSES FOR BROWN, DREW & MASSEY LLP

Separately incurred fees: $28,745.82 after deduction of 9.1%.

Brown Drew & Massey LLP of Casper, Wyoming was retained as local counsel by Kinder Morgan (Beatty law firm); El Paso Gas (Beatty law firm) and Duke Energy (Fulbright & Jaworski) in 2002. The billing tasks were divided by 1/3 to each defendant until El Paso no longer participated, at which time the billings were divided between Kinder Morgan and two Duke Energy companies. The Special Master has reviewed the 106 page of billings and compared the entries to the PanEnergy billings.

Thomas Reese, attorney, tasks consisted of the following entries: "Review and file pleadings"; "Prepare and participate in conference calls" or "hearings"; "Review material"; and "participate in hearing, assisted counsel with materials." He does not identify the material reviewed, the legal issues discussed in conferences or the tasks performed in hearings before the court. Randall Carahan's tasks were to "receive correspondence and forward for filing." He also calendared events. His position with the firm is not identified. There are no entries that he performed legal tasks. During the period that the firm was retained, there were three personnel in different years paid $75 per hour. There is a reference to "legal assistant" by Carahan. The tasks performed were administrative such as keeping the calendar, maintaining the files, arranging phone calls and communicating with court staff. As in the billings to El Paso Gas, the fees are reduced by 50% as being administrative, not reasonably necessary and for failure to identify tasks performed when reviewing communications and conferences. The Special Master finds that PanEnergy is entitled to $14,372.91 in fees of Brown Drew & Massey.

Joint fees and expenses

The Special Master has reduced the joint fees and expenses allowed by 25%. The adjusted joint fees and expenses are as follows: Joint fees: $155,292.75; Joint expenses: $22,968.72. Total: $178,261.47.

I concur with the parties that with the adjustment for Joint fees and expenses, the Spectra Energy Corp is entitled to $838,849.04 in attorney fees and expenses. It is recommended that Spectra Energy Corp. is entitled to $838,849.04 attorney fees and expenses.

## Y. PANHANDLE EASTERN PIPE LINE COMPANY and ROBIN PIPELINE COMPANY 99-MD-1610, 99-MD-1625

Panhandle Eastern Pipe Line Company LP f/k/a CMS Panhandle Eastern Pipeline Company; Trunkline Gas Company; Pan Gas Storage Co. n/k/a Pan Gas Storage, LLC (Case 99-MD-1610) and Sea Robin Pipeline Company, LLC (Case 99-MD-1625) retained Beatty & Wozniak, P.C. for the purpose of Application for attorney fees and expenses. The record of the hours identical to the of the Application for Attorney Fees on behalf of Kinder Morgan, Inc., NiSource Corporate Services Company, CMS Texas LLC, CenterPoint Energy, Apache Corporation, Transmontaigne, Inc. and SourceGas LLC with the exception of fees and expenses designated Panhandle/Qui Tam. Panhandle was assessed 13% of the joint fees and expenses billed by Beatty & Wozniak.

The primary time keepers are:

| | |
|---|---|
| Rebecca Noecker: | 2011-$450 per hour |
| Gabrielle Graham, Paralegal: | 2011- $140 per hour |

The Defendants request the following attorney fees and costs:

| | |
|---|---|
| Direct Bills: | $32,191.25 fees and $1,959.70 costs |
| Split Bills: | $110,878.13 fees and $8,330.30 costs |
| Shared Bill: | $70,401.69 fees and $2,694.09 |
| Application for fees: | $13,664.26 fees and $333.56 costs |
| Application: | $6,647.94 fees and $78.49 costs |
| Total fees and costs: | $247,179.41 |

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A. ex rel. Winn, 130 S.Ct. 1662, 1673 (2011). The hourly rates are within the presumptive hourly rates for attorneys in the practice of oil and gas law in Wyoming and Colorado.

I have reviewed the billings records of Beatty & Wozniak and compared them to the billings CMS Texas, CenterPoint Energy and Apache Corporation. The records set forth in detail the task performed and necessity of the task to the defense of the case. The expenses are reasonable and relate to the defense of the case.

Relator and the defendants have stipulated that $40,776.68 of the fees and expenses are allocated as appellate fees and expenses which I disallow.

Defendants in their Application for Fees request the Court enhance the fee award for the obstructive discovery actions by Grynberg that affected the defense of case. Special Master Pringle sanctioned Grynberg during the discovery stage therefore the sanction requests were appropriately resolved. As stated in Perdue at1673, the complexity of the case is included in the increased billable hours considered by the lodestar method. Enhancement should only be awarded in "rare" and "exceptional" circumstances. The request for enhancement is denied.

I find that Panhandle defendants and Sea Robin Pipeline Company are entitled to $206,402.73 in fees and expenses.

## Z. PUBLIC SERVICE COMPANY OF COLORADO  99-MD-1612

Grynberg filed in the United States District Court for the District of Columbia a False Claims Act against 66 defendants including Public Service Company of Colorado. (PSCO) The case was dismissed for lack of jurisdiction. Grynberg his claims against PSCO in the United States District Court for the District of Colorado, Case 97-D-1425. PSCO retained the law firm of Hogan & Hartson L.L.P. which had offices in Denver, Colorado. Kevin D. Evans was lead counsel. The case was transferred to MDL 99-MD-1293-NDF, United States District Court for the District of Wyoming and became case 99-MD-1612. Evans In April, 2003, Evans left Hogan & Hartson and established his practice at Steese & Evans, P.C. He continued to represent PSCO in case 99-MD-1612.

The Special Master has reviewed the Amended Application for Fees, Reply for its Application for Fees, Affidavit of Kevin Evans , Affidavit of Larry M. Cowger and a total of 623 pages of billing records.

The primary timekeeper hourly rates are:

| P. Walsh: | 2000 - $160 per hour; 2004 - $305 per hour |
| K. Evans: | 2000 - $300 per hour; 2004 - $385 per hour |

Request for fees and expenses:

PSCO separate request: $389,968.86 fees and $8,479.84 costs for a total of $398,448.70.

| Appellate allocation: | $60,078.25 fees and $630.24 expenses |
| Joint fees and expenses: | $239,429.11 |

The lodestar test has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A. ex rel.Winn, 130 S. Ct. 1662, 1673 (2011).

The hourly fees of the attorneys in the case are within the prevailing market rate for attorneys practicing in the area of oil and gas in Colorado and Wyoming.

The billing records meet the requirements of identifying the timekeeper, the specific task and how it was applicable to the case. Case v. United School District. No. 233, 157 F. 3d 1243, 1253 (10th Cir. 1998). Unlike other MDL defendants, the records do not include time records for paralegals or other

staff which assisted in the case. The expenses requested are limited expenses and travel costs, and have not included other expenses to which the firm may be entitled. PSCO does request attorneys fees for the Squire Sanders & Dempsey L.L.P. law firm of $1,667.50. Mr. Albright was the Assistant General Counsel at PSCO who reviewed the work of the private counsel. He left PSCO and continued to review the case for two months until the new in-house counsel became familiar with the case. The claim with be disallowed as administrative costs rather than defense of the litigation.

After Evans established his own firm, Walsh became the only timekeeper for Hogan & Hartson. His tasks in 2003 were for 33.4 hours of "Review correspondence and pleadings." He did attend a conference and communicated with Evans. The review of the pleadings is necessary. The hours are not excessive and are actually minimal compared to other defendants.

Public Service has allocated $60,708.49 for attorney fees and costs in defending the appeal. The request is disallowed.

The Special Master has adjusted the joint fees and expenses by 25%. The joint fee and expense is reduced to $179,571.83.

The Special Master finds the Public Service Company of Colorado is entitled to following reasonable attorney fees and costs of $498,684.86.

## AA. QUESTAR PIPELINE COMPANY 99-MDL-1604

Questar Pipeline Company and its affiliate companies retained Donald I. Schultz of Holland & Hart to to represent it in Case No. 99-MD-1604. Questar retained two experts to assist in defending against the technical claims by Grynberg. Don Stinson, P.E. attended depositions of Grynberg experts and assisted counsel in preparing and taking depositions. Zeebco & Company provided tests of Questar pipelines that were at issue. Grynberg has not objected to the billing of experts.

The primary timekeepers are:

| | |
|---|---|
| Don Schultz, Partner: | 1998 - $210 per hour; 2007 - $405 per hour |
| Mike Smith, Partner: | 2002 - $210 per hour; 2005 - $240 per hour |
| Betsy Phelan, Partner: | 2006 - $375 per hour |
| Dawne Davis, Paralegal: | 1999 - $100 per hour; 2007 - $145 per hour |
| Robert Salcido, Partner: | 2004 - $450 per hour; 2007 - $525 per hour |

Request for Attorneys fees and expenses:

Questar requests the following fees and expenses:

Akin Gump, Separate attorneys fees and expenses:     $15,523.50 fees and $705.50 expenses.

Holland & Hart LLP, Separate attorneys fees and expenses: $534,784.40 fees and $22,269.17 expenses.

| | |
|---|---|
| Schultz & Belcher, LLP, | $9,375.00 |
| Schultz & Schultz, LLP, | $22,244.00 |
| Consultant Don Stinson, P.E.: | $87,417.41 |
| Consultant Zeebco & Company: | $26,227.41 |
| Total Separate Fees and Expenses: | $581,926.90 fees and $112,644.41 expenses |

It allocates the following fees and costs of the request:

| | |
|---|---|
| Appeal fees and expenses: | $120,475.53 fees and $2,428.34 expenses |
| Liability for fees: | $38,662.84 fees and $635.35 |
| Proof of fees: | $22,244 |
| Total separate fees and expenses: | $718,545.98 |
| Joint fees and expenses: | $207,741.44 fees and $30,727.20 |

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A., *ex rel.*Winn, 130 S.Ct. 1662,1673 (2011).

The attorney fees of Schultz, Holland & Hart LLP and Akin Gump are within the presumptive prevailing market rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado.

The Special Master has reviewed the affidavits of Donald I. Schultz, 1357 billing pages, and other documents submitted by Questar. The billing records are detailed as to the tasks performed by the timekeepers and are relevant to the defense of the litigation.

The Special Master disallows the fees and expenses allocated for defending the appeal. The tasks and billings of Holland & Hart LLP have been allocated to defending the appeal in the amount of $120,475.53, attorney fees and $2,428.34 in expenses for a total of $122,903.87. The tasks and billings of Schultz & Belcher, LLP are related to defending the appeal in the amount of $9,375,000. The Special Master finds that the total reasonable fees are $451,856.20.

Questar has submitted the expenses paid to Holland & Hart LLP.  The expenses from pages 4 through 9 do not identify the reason for the expense. An example is as follows: 3/5/2003 - Ground travel, Lodging and Meals. Rather than denying the expenses, The Special Master has compared the expenses to the hourly tasks. The expenses relate to tasks performed. $2,428.34 of expenses are disallowed, reducing the expenses to $19,841.17.  The total reasonable expenses are $134,191.07.

The joint fees and expenses are reduced by 25% to $178,851.48.

The Special Master finds that Questar Pipeline Company is entitled to $764,898.75 attorney fees and expenses.

## BB. ROCKY MOUNTAIN NATURAL GAS COMPANY/ NORTHERN GAS CO. n/k/a SOURCE GAS LLC. 99-MD-1603

Rocky Mountain Natural Gas Company n/k/a Source Gas LLC retained Beatty & Wozniak, PC in 2007 in Case No. 99-MD-1603. Beatty & Wozniak represented Source in the appeal to the 10th Circuit, motion for attorney fees and costs and application for fees. The firm represented multiple defendants in MDL Docket No. 1293. It divided the fees and costs among the multiple defendants for common tasks performed by the firm. It billed Source Gas LLC for tasks performed for it.

Source Gas requests the following fees and costs:

| | |
|---|---|
| Split Bills: | $42,532.95 fees and $658.47 costs |
| Direct Bills: | $20,683 fees and zero costs |
| MDL/Motion for fees: | $10,034.01 fees and zero costs |
| Application for fees: | $7,709.94 fees and $90.79 costs. |
| Total: | $82,709.16 |

The Special Master has reviewed the 85 pages of billings, affidavits and proposed judgment. I compared the billing during the time period with a defendant that was dividing fees and costs, and they are the same.

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenny A. *ex rel* Winn, 130 S. Ct. 1662, 1673 (2011).

Noecker billed at $395 per hour in 2007 and $450 per hour in 2011. The paralegal assisting Attorney Noecker was G. Graham at $140.00 per hour. The Special Master finds that the hourly rates are within the presumptive hourly rates for attorneys practicing oil and gas law in Wyoming and Colorado.

The hourly billings clearly set for the task performed and the necessity of the task to defend the lawsuit. The costs claimed are minimal and reasonable.

Relator and SourceGas Defendants stipulate that SourceGas allocates $60,508.64 of the fees and expenses to appellate fees and costs. $60,508.64 is disallowed.

I recommend that Source Gas LLC is entitled to $22,200.52 in attorney fees and costs.

## CC. SHELL OIL DEFENDANTS – 99-MD-1629

Shell Oil Company, Shell Land & Energy Company, Shell Offshore, Inc., Shell Pipeline Corporation and Shell Western E&P, Inc. (Shell) retained Daniel McClure of Fulbright & Jaworski L.L.P. in September 29, 1999 in a *Qui Tam* action filed in the United States District Court in Louisiana. (99-MD-1629) Shell had a long-standing relationship with McClure and the law firm.

In January 1999, Richard Carell, of Counsel, for Fulbright & Jaworski L.L.P. requested Daniel McClure to represent GPM Gas Corporation (99-MD-1682) in a *Qui Tam* case filed in the United States District Court for the Southern District of Texas. McClure represented both defendants, with different attorneys, paralegals and staff assigned each case. In March, 2004, GPM merged with Spectra Energy, which was an affiliate, with PanEnergy litigation. Gerard Pecht of Fulbright & Jaworski represented the ten PanEnergy companies and affiliates (99-MD-1682, 1605, 1610 and 1627) and represented GPM after March 2002.

The Special Master has compared the billings of McClure and the timekeepers in each case and finds no duplication of billings. McClure maintained separate billing records for each case. Where he attended conferences, joint defense meetings, court hearings and depositions, they were billed to only one client.

The Special Master has reviewed the 69 pages of billings for Shell, and applying the lodestar evaluation find as follows:

There were 22 timekeepers. The five timekeepers that billed 80% of the fees were as follows:

| | |
|---|---|
| Daniel McClure, Partner: | 1999 - $355 per hour and 2008 - 10, $620 per hour |
| Laura Morton, Partner: | 2004 - $460 per hour |
| Julie Teperow, Partner: | 2004 - $245 per hour |
| Nancy Pell, Partner: | 2004 - $400 per hour |
| Erin Farmer, Sr. Paralegal: | 1999 - $95 and 2008 - $110 per hour |

The hourly billings of McClure rose to $590 per hour in 2007 and increased to $620 per hour 2008 which exceeds the $550 presumptive rate. The Special Master finds the other hourly fees are within the reasonable market rate for attorneys and paralegals practicing in the oil and gas industry within the Colorado/Wyoming market.

**Requested fees and expenses**

Separately Incurred Fees and Costs:      $505,562.02 fees; $18,334.51 expenses

Shell allocates $99,366.93 fees and costs to the appeal.

Jointly Incurred fees and Expenses:      $209,951.02 fees, $31,053.11 expenses

The records must meet the requirements set forth in Hensley v. Eckert, 461 U.S. 424, 434 (1983) and Case v. Unified School Dist. No. 233, 157 F. 3d 1243, 1250 (10th Cir. 1998) that the hours and fees are reasonable and necessary for the litigation.

The Special Master has reviewed the 69 pages of billing records. McClure divides the billings between five clients. His task as the lead attorney was to review e-mails, phone calls, documents prepared by others, attend conferences by phone or personally, and communicate the status of the case to his several clients. The entries meet the requirements of Flitton v. Primary Residential Mortgage Com., 614 F.3d 1173, 1178 (10th Cir. 2010).

The substantive legal tasks were performed by Teperow, who prepared for and attended depositions, prepared motions and participated in joint defense team conferences. Farmer, as the paralegal, provided McClure with documents, reviewed e-mails and performed administrative tasks. Morton and Pell provided the preparation of appellate tasks for Shell. Morton and Pell were retained by the Joint Defense Team to file the response to the Gynsberg appeal. They prepared the response for Shell during the period of time they were also billing for the joint defense team.

The Special Master disallows the following fees:

Tasks performed by Anderson, Carrell, Clerk, Greenfield, and Valenzuela in the amount of $2,683 were administrative and should be absorbed in the law firm overhead.

Shell's allocated of $99,366.93 for fees and costs in defending the appeal.

The Special Master finds the following fees and expenses were reasonable and necessary for the defense of Shell:

Separately incurred attorney fees and expenses: $423,724.76.

Jointly incurred fees and expenses are reduced by 25% to $180,753.09.

Relator and Shell Oil Company stipulate and I recommend that Shell is entitled to $602,599.69 attorney fees and expenses.

## DD. SNYDER OIL CORPORATION k/n/a/ DEVON ENERGY CORPORATION  99-MD-1659

Snyder Oil Corporation, Snyder Gas Marketing, and SOCO Offshore, Inc (Snyder) retained Craig A. Haynes of Thompson & Knight LLP in 2004. Mitchell Energy and Seagull groups also retained Haynes. Devon Energy Corporation (Devon) has now acquired the Snyder group. The Snyder case is 99-MD-1659. Thompson & Knight LLP divided the fee in half with Pacific Gas & Electric Company, where the task was common between Snyder and PG&E. It then divided the Snyder fee equally between the three defendant groups. Devon has not submitted a request for fees for defending the appeal by Grynberg or to prove the liability for fees. The Special Master has reviewed the billing records and there are no hourly billings identified for the appeal or liability for fees.

The primary timekeepers billing are as follows:

| | |
|---|---|
| C. Hayes: | 2004 - $400 per hour; 2007 - $510 per hour; |
| | 2007 - $615 per hour; 2011 - $650 per hour |
| Akens: | Associate: 2007 - $225 per hour |
| Ritter: Paralegal: | 2004 - $155 per hour |

**Requested Fees and Expenses:**

Devon requests the following separate attorney fees and expenses:

| | |
|---|---|
| Separate Fees: | $13,117.91 |
| Joint defense attorney fees and expenses: | $236,828.51 |

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A., ex rel. Winn, 130 S. Ct 1662, 1673 (2013).

The billings of Haynes increased from 2004 to 2011. Hourly billings commenced at $400 in 2004 and increased to $650 per hour in 2011. The 2009 - 2011 hourly rates are higher than the presumptive hourly rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado, but the total hours that exceed the $550 per hour is 3.5 hours and is minimal. And will be reduced to $550 per hour.

The Special Master has reviewed 156 pages of billings in Case No. 99-MD-1659.

An attorney seeking fees and expenses must by the billing records identify the specific task, the applicability to the case and work product actually necessary to the defense of the case. Case v. United School Dist. No. 233, 157 F.3d 952, 956 (10th Cir 1998). The party must prove every dollar and each hour above zero. Cadena v. Pacesetter Corp., 22 F.3d 20, 1215 (10th Cir. 2000). Many of the Snyder records do not meet the requirements. Unlike other defendants the review of records occurs only 1 to 4 times per month. The records have notations such as "review e-mails or documents" without identifying the specific task. As lead counsel, Haynes would be expected to periodically review the status of the case, and the entries are minimal. Anchondo v. Anderson, Crensshaw & Associates, 616 F.3d 1098, 1106 (10th Cir. 2010).

The joint defense fees and expenses are reduced by 25% to $177,621.38.

Relator and Snyder a/k/a Devon Energy stipulate that Devon had $500 in appellate fees which is disallowed.

The Relator and Snyder stipulate the award should be changed to $190,238.39. I find that Devon Energy Corporation is entitled to $190,238.39 in attorney fees and expenses.

**EE. SOUTHERN STAR CENTRAL GAS PIPELINE, INC.  CASE 99-MD-1614**

Southern Star Central Gas Pipeline, Inc., (Southern Star) was previously known as Williams Natural Gas Co. and represented by other counsel. Matthew J. Rita of Holme Roberts & Owen LLP (HRO) was retained to represent Southern Star in Case No. 99-MD-1614 in November, 2003. In 2009, Rita became a partner in Ford & Harrison LLP and continued to represent Southern Star until 2011. The hourly fee of Rita commenced at $275 per hour in 2003 and increased to $425 in 2011. Southern Star does not seek any fees or expenses for defending the appeal of Grynberg or proving the liability of Grynberg. It does not claim any joint defense attorney fees and expenses. As stated in the affidavit, Southern Star decided to keep its fees and expenses to a minimum. The hourly billings consist of reviewing pleadings filed by the Joint Defense Team and others to as they affected Southern Star. Williams

The primary timekeeper was Matthew J. Rita of Holme Roberts & Owen LLP. His fees were: 2003 - $275 per hour; 2011 - $425 per hour.

Requested attorney fees and expenses: $155,726.53 fees and $21.78 in expenses. Southern Star and Relator have stipulated that $36,549.75 of the requested attorneys fees are allocated to the appeal.

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v.Kenney A. ex rel Winn, 130 S.Ct. 1662, 1673 (2011).

The hourly rate of Rita is within the presumptive hourly rates for attorneys in the practice of oil and gas law in Wyoming and Colorado.

The Special Master has reviewed the 294 pages of billings, the Motion for Attorney Fees and Affidavit. The billing records indicate that Matthew Rita's task was to review the pleadings, research and communications of the Joint Defense Team and other defendants. He reported the status to the in-house counsel. He participated in a hearing by phone and attended the 10th Circuit hearing as an observer. Ninety percent of the billings are far less than a minute, indicating there was not an in-depth review.

In Fox v. Vice, 131 S. Ct. 2205, 2216 (2011), the court established the "but-for" test. But-for the frivolous claim, the attorney fees and costs would not have occurred. The Court stated " [T}he dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but whether the costs would have been incurred in the absence of the frivolous allegation. The answers to those inquiries will usually track each other, but when they diverge, it is the second that matters."

A party seeking fees and expenses must by the billing records identify the specific task, the applicability to the case and work product actually needed for the case. Case v. United School Dist. No. 233, 157 F.3d 952, 956 (10th Cir. 1998). As in Case and Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1206 (10th Cir. (1986), where an attorney or consultant is helpful to the party but does not actually assist in the defense of the case, attorneys fees and costs may be reduced or not awarded. As the billing records reflect, Mr. Rita produced no pleading or documents or copied any of the documents he was reviewing. He did participate by phone at a court hearing and talk to joint defense counsel. He did not produce any documents for the appeal, but attended as an observer at the 10th Circuit hearing.

The appellate fees of $36,549.75 are disallowed leaving a balance of $119,176.78 in requested fees. The parties requested that review my opinion based upon the stipulation. After reviewing the affidavit and billings and the standard of Fox v. Vice "but-for" test, I am of the opinion that Southern Star fees would not have occurred absent the claims of the Relator. It was necessary that Southern Star have counsel review the defenses raised by the Joint Defense Team to insure that Southern Star's defenses were considered and protected. Rita did not have excessive entries monthly. He generally reviewed the case weekly and more where there were increased filings or when there were hearings. He reported to his client during stages of the litigation in short conferences. The "bare bones" defense reduced the attorney fee claims against the Relator. The reduction of 50% was in error in light of Fox v Vice.

The Special Master finds that Southern Star Central Gas Pipeline, Inc. is entitled to $119,198.56 attorney fees and costs.

## FF. SOUTHWESTERN ENERGY COMPANY 99-MD-1670

Southwestern Energy Company retained L. Poe Leggette of the firm of Fulbright and Jaworski, LLP in November, 1998 after Grynberg named the company in a False Claim Act. Nancy Pell was the primary attorney handling the case. Fulbright and Jaworski filed pleadings including a Motion to Transfer the case to 99 MDL 1293. The MDL panel transferred the case, and it became Case No. 99-MD-1670. Leggette represented Southwestern until December 31, 2002. On December 27, 2002, Southwestern retained Lee Thompson of the law firm of Thompson, Stout & Goering LLC of Wichita, Kansas. On July 1, 2004, Lee Thompson established his own law firm and continued to represent Southwestern. Thompson retained the Everett Law Firm for an expert opinion in February, 2004.

The primary timekeepers are:

Fulbright & Jaworski:

| | |
|---|---|
| Leggette, Partner: | 1998 - $320 per hour; 2002- $410 per hour |
| Pell, Partner: | 1998 - $225 per hour; 2002 - $295 per hour |
| L. Morton, Partner: | 2003 - $245 per hour |
| Thompson: | 2002 - $200 per hour; 2011 - $300 per hour |

Request for attorneys fees and expenses:

| | |
|---|---|
| Fulbright & Jaworski LLP: | $144,268.31 |
| Thompson, Stout & Goering, Inc.: | $95,347.97 |
| Thompson Law Firm, LLC: | $35,346.00 |
| Everett Law Firm: | $1,690.00 |
| Joint Defense: | $232,594.36 |

Total:                              $ 509,246.64

The Special Master has reviewed 332 pages of billings of all counsel representing Southwestern.

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A. ex rel Winn, 130 S. Ct. 1662, 1673 (2011) The hourly fees were within the presumptive hourly rates for attorneys in the practice of oil and gas in Wyoming and Colorado.

The Special Master has reviewed in detail the billings of all counsel.  All counsel identified the task and its necessity to the defense of the case. Where the records reflect a review of documents, the hours are not excessive and are necessary because of the volume of pleadings and documents filed by the plaintiff and multiple defendants. The costs listed by the firms are minimal and necessary. Thompson received the file from Fulbright & Jaworski in December of 2002. Leggette, Pell and Morton of Fulbright & Jaworski were retained by the Joint Defense Team to research the original source doctrine and a joint defense. The tasks by Thompson for the first three months reflect his reviewing the prior documents received from Fulbright & Jaworski and educating himself regarding the defense of the case for Southwestern.  Sixty-five hours and $12,307 are disallowed for the time necessary to become familiar with the pleadings, documents and the MDL case.

The Special Master has reduced the joint defense fees by 25% to $174,445.77.

Relator and Southwestern Energy Company stipulate that Southwestern appellate fees were $500.00 which is disallowed.

Relator and Southwestern stipulate, and I find the Southwestern Energy Company award is $435,602.89.

## GG. TRANSMONTAIGNE, INC.  Case No. 99-MD-1669

TransMontaigne retained the law firm of Clanahan Tanner Downing & Knowlton in 1999. Michael Wozniak was a shareholder in the firm. In March, 2002, Dorsey & Whitney LLP commenced representing TransMontaigne. Wozniak became a partner in that firm. In February, 2005, Beatty & Wozniak, P.C commenced representing TransMontaigne. It represented the company in Rule 11 matters, the 10th Circuit appeal by Grynberg, and attorney fees and costs from Grynberg. The records reflect that Clanahan Tanner represented the company in the Kansas class action litigation known as the Quinque plaintiffs as well as Wyoming case 99-MD-1669.  The Clanahan tasks reflect professional services in both cases.

Beatty & Wozniak also represented or provided legal services for multiple defendants. The firm billed multiple defendants as follows: (1) Split Bills: common tasks were divided equally between the clients and given a specific account number; (2) Shared Bills: When El Paso elected to perform tasks in-house, the billings were split among the remaining defendants and given another account number; (3) Direct Bills: Tasks incurred specifically for a client were billed to that client and given another account number; (4) Rule 11: A Rule 11 claim was given another account number; and (5) Motion for Fees and Costs was given another account number.

The primary timekeepers for TransMontaigne are:

Clanahan Tanner Downing & Knowlton:

| | |
|---|---|
| D. Graham, Shareholder: | 2001 - $200 per hour |

Dorsey & Whitney LLP:

| | |
|---|---|
| S. Aldridge: | 2001 - $195 per hour; 2005 - $270 per hour |
| N. Smith: | 2002 - $315 per hour |
| M. Wozniak: | 2004 - $315 per hour |

Beatty & Wozniak:

| | |
|---|---|
| R. Noecker: | $450 per hour |
| G. Graham, Paralegal: | $140 per hour |

Request for attorneys fees and expenses:

| | |
|---|---|
| Shared Bills: | $45,779.50 fees and $1,003.26 costs |
| Direct Bills - *Qui Tam:* | $12,941.50 fees and $864.50 costs |
| Rule 11: | $449.70 fees |
| Motion for Fees and Costs: | $11,119.79 fees and $326.14 costs. |
| Dorsey & Whitney: | $53,815.36 fees and costs |
| Clanahan & Tanner: | $27,805.33 fees and costs |
| Joint Defense: | $114,476.36 fees and $16,931.74 costs |
| Application for Fees: | $7,077.94 fees and $81.19 costs |
| The total requested is | $292,672.51 |

Allocated to appellate fees and expenses: $41,199.18

The Special Master has reviewed the Application for Fees and Costs, affidavits of counsel and 414 pages of billing of records from the three law firms.

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A. *ex rel* Winn, 130 S. Ct. 1662, 1673 (2011).

The Special Master finds that the hourly attorney fees are within the presumptive hourly rate of attorneys practicing in the area of oil and gas law in Wyoming and Colorado.

Clanahan Tanner's hourly bills specifically identify the billings for the <u>Quinque</u> class action case in Kansas. There are 21.9 hours for $19,866 specifically designated as <u>Quinque</u> billings. $1,736 is designated as "Our share of Professional Services" without hourly records. Another billing designated for Grynberg indicates "Do not pay, information only" $1,594. Grynberg was not the Relator in the Kansas case and Judge Downes remanded it back to the Kansas court. Any attorneys fees for defense of that case must be addressed by the Kansas court. The Special Master disallows $27,805.33 in fees and costs for services unrelated to Case No. 99-MD-1669.

Aldridge of Dorsey & Whitney billed 153 hours for $37,891 of tasks that were "review only" without any following action. Aldridge does not report the review to any person or how it applies to defense of the case. As the supervising attorney, she would be required to review the status of the case and the legal work performed over the three-year period. N. Smith in January, 2002, reviewed pleadings, attended the deposition of Grynberg and reported to the company, but otherwise, she did not actively participate in the litigation. Wozniak's billings set forth the tasks related to the case.

The Special Master must determine whether attorney hours are reasonably expended on the defending the litigation. The party seeking fees and expenses must by the billing records identify the specific task, the applicability to the case and work product actually necessary to the defense of the case. <u>Case v. United School Dist. No. 233</u>, 157 F.3d 1243, 1250 (10th Cir. 1998). The law requires the attorney exclude hours that are excessive, redundant or otherwise unnecessary. <u>Carter v. Sedgwick County. Kan.</u>, 36 F.3d 952 956 (10th Cir. 1994). When the case was referred to Beatty & Wozniak in 2005, there was one entry of a meeting with Aldridge for less than an hour. The Special Master reduced the billings of Aldridge by 50% as not necessary or relevant to the case. This reduces the award of fees and costs for the legal services of Dorsey & Whitney to $34,869.86.

The Special Master has reviewed the billings of Beatty & Wozniak. The records set forth in detail the task performed and the necessity of the task to the defense of the case. The expenses are reasonable and necessary to the defense of the case with the following exception. Beatty & Wozniak defended eleven defendants-parties on the appeal including TransMontaigne, Inc. The Relator and Transmontaigne agree that the amount allocated for appellate fees and expenses is $41,199.18.The appeal fees and costs are disallowed.

The defendant is entitled to a reasonable compensation for the fee application. <u>Mares v. Credit Bureau of Raton,</u> 801 F. 2d 1197, 1206 (1986). The Special Master finds the request for establishing the fees and costs to be reasonable in the amount $7,159.13.

The defendant also seeks joint defense fees and expenses in the amount of $131,408.10. The Special Master has reduced the joint fees and expenses by 12% ($15,768.97). The request for joint defense fees and expenses are reduced to $115,639.12.

The total fees and expenses disallowed is $103,714.98.

The Special Master finds TransMontaigne, Inc. is entitled to attorney fees and expenses in the amount of $188,957.33.

**HH. TRANSWESTERN PIPELINE COMPANY, LLC (99-MD-1608)**

Transwestern Pipeline Company, LLC was a defendant in the False Claims Act filed by Grynberg in the United States District Court of the District of Columbia in 1995. Transwestern retained Charles D. Tetrault of Vinson & Elkins L.L.P. The case was dismissed in 1997.  Grynberg then refiled a FCA claim against 10 defendants including Transwestern in the U.S. District Court for the District of Colorado. (Enron case). The case became 99-MD-1608 in the MDL case. Grynberg also filed another FCA claim in the U.S. District Court for the Eastern District of Louisiana against other Enron defendants. This case became 99-MD-1625. Tetrault represented all of the defendants in the Colorado and Louisiana litigation until the Enron bankruptcy in December, 2001. Tetrault continued to represent the defendants in case 1608 and the three remaining defendants in case 1625 in the MDL case.

While representing multiple defendants, Tetrault divided hours and billings from common tasks among the multiple defendants. Where the task was specific to Transwestern, it was billed for the task. As noted in the application by Equitable Resources, Inc, Tetrault was an unpaid member of a five-member Coordinating Counsel Committee of the Joint Defense Team. Transwestern benefitted by that position, and like the other multiple defendants, was billed a proportional fee. The Special Master has additional findings as to Tetrault's tasks in Equitable Resources Inc.

The primary timekeepers for Transwestern Pipeline Company are as follows:

| | |
|---|---|
| Charles Tetrault: | 2001 - $450 per hour; 2003 – 2011 - $245 per hour |
| Daniel Petalas: | 2002 - $285 per hour; 2003 - $305 per hour |
| Helen Hight: | 2003 - $285 per hour; 2004 - $305 per hour |
| Katherine Wiebler: | 2002 - $140 per hour; 2008 - $215 per hour |

Requested fees and expenses

Transwestern requests the following fees and expenses:

| | |
|---|---|
| Separate attorney fees: | $932,606.50 and expenses $13,612.63 |
| Joint defense: | $189,718.50 fees and $31,161.71 for expenses |
| Total: | $1,127,325.00 in fees and $44,774.34 for expenses |

Within the separate fees and expenses, Transwestern allocates the following:

| | |
|---|---|
| Appellate: | $125,955.50 attorney fees and $667.97 expenses |
| Liability for fees: | $53,245 attorney fees and $640.99 expenses |

The lodestar test has been used to determine the presumptive reasonable fees. <u>Perdue v. Kenney A. *ex rel.* Winn</u>, 130 S. Ct. 1662, 1663 (2011).

The attorney fees are within the presumptive prevailing market rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado.

Transwestern waived submitting fees and expenses incurred between 1998 through 2001 for Case 99-MD-1608. The Special Master has reviewed 146 pages of pleading and billing records. The Special Master has compared the records with other defendants represented by Tetrault. The Special Master finds the billing records meet the requirements pursuant to <u>Case v. United School Dist. No. 233</u>, 157 F.3d 123, 1250 (10th Cir. 2011). The records established that hours and expenses were necessary and reasonable for the defense of the litigation.

Transwestern allocates $125,995.50 in fees and $667.97 in costs for the defense of the appeal. The fees and costs are disallowed.

The Special Master finds that Transwestern Pipeline Company is entitled to separately incurred attorneys fees of $806,651.50 and $12,944.64 expenses for a total of $819,595.64.

Transwestern Pipeline Company requests reimbursement of joint defense fees and expenses. The Special Master has determined that the joint fees and costs should be reduced by 25%. The Special Master finds that Transwestern Pipeline Company is entitled to joint defense fees and expenses of $165,660.15.

The Special Master finds that Transwestern Pipeline Company LLC is entitled to $985,255.79 in fees and expenses.

**II. VENICE ENERGY SERVICES COMPANY 99-MD-1631 –NDF**

John B. Hall of Locke Lord LLP was retained by Venice Energy Services Company (VESCO) in September, 2006. VESCO previously had been represented by Jerry Rothrock at Akin & Gump Strauss Hauer & Feld, LLP (Akin & Gump). Akin & Gump represented both VESCO and Dynergy, Inc. in case 99-MD-1631-NDF until December, 2006. The court order substituting John B. Hall as counsel for VESCO was entered in January, 2007. U.S. District Judge Downes in October, 2006, granted summary judgment for all of the defendants in 99-MD-1293-NDF. Hall's hourly fees were incurred during the period of the appeal and Judge Downes July 22, 2011, Order Granting Motion for Fees and Expenses.

The only timekeeper is John Hall who commenced billing in 2006 at $414 per hour and in 2009, at $549 per hour.

REQUESTED FEES AND EXPENSES

VESCO requests attorney fees and expenses as follows:

Defense of Appeal:     Fees: $52,650   Expenses: $153.49

| | |
|---|---|
| Liability for fees: | Fees: $24,200   Expenses: $140.15 |
| Proof of fees: | Fees: $2,053.00 |
| Other: | Fees: $13,100.92 Expenses: $176.15 |
| Total: | Fees: $92,003.92 Expenses: $469.79 |

The Special Master has reviewed the affidavit, Amended Application, Reply Brief and 128 pages of billings.

The lodestar has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A, *ex rel.* Winn., 130 S.Ct. 1662, 1673 (2011).

The Special Master finds that the hourly rates up to 2010 ($514) are within the prevailing market rate for attorneys' practicing in the area of oil and gas in Colorado and Wyoming.

The Special Master must determine whether attorney hours are reasonably expended on defending the litigation. Case v. United School Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998). The party seeking fees and expenses must by the billing records identify the specific task, the applicability to the case, and work product actually necessary to the defense of the case. *Id.* at 1252. The law requires that attorneys exclude hours that are excessive, redundant or otherwise unnecessary. Carter v. Sedgwick County. Kan., 36 F.3d 952, 956 (10th Cir. 1994).

The hourly billings in 2006 by Hall are devoted to becoming educated on the case, reviewing documents, cases, conferences with prior counsel and pleadings to substitute counsel. Although not defined by the billings, I assume the $13,100.92 in "Other" fees and expenses relate to the transition in 2006. The fees were created by VESCO changing counsel and were not necessary for the defense of the claims by Grynberg. The fees and expenses are disallowed.

VESCO allocates $52,803.49 for defense of the appeal which is disallowed.

Hall commences his billing tasks with "Receipt and consideration of...." or are within the task. The billings do not reflect any original work product, research or pleadings. In 2007, he is in conference with J. Rothrock, prior lead counsel for Dynergy Inc. and VESCO concerning settlement documents and pleading filed by "co-defendants". In 2008 and 2009, he is in receipt and considering pleadings filed by "co-defendant", other defendants in the MDL case, and pleadings filed by the defense group. An example of Hall's involvement in the appeal is as follows: 9/11/08 "Receipt and consideration of defense liaison counsel's outline of argument for Tenth Circuit and list of possible questions which may be asked by judges; receipt and consideration of recent opinion of Tenth Circuit regarding public disclosure bar; participate in telephone conference with defense counsel regarding upcoming appellate argument: 3 hours." He did not attend any court hearings or any conferences. He had two brief contacts with Mr. Jatko, attorney for the Relator. He did not identify the tasks for fees on fees or proof of fees.

John Hall was the sole timekeeper. Other than "Receipt and consideration" of legal work of others and communicating with various attorneys, he produced no substantive legal tasks. The application for fees and affidavit do not explain why Akin Gump withdrew as attorneys and VESCO retained.

The Special Master cannot find any research or pleadings by Hall establishing liability for attorneys fees. He received and considered pleadings by other defendants and the co-defendant. The Special Master has reviewed the billings and cannot find any tasks involving the issue of liability of fees or proof of fees. He did have an informative brief telephone communication concerning attorneys fees with Rothrock.

Mr. Hall's "Receipt and consideration" of multiple documents and pleadings without any research, pleadings or legal services other than reporting the status to Venice were not necessary, nor is there any evidence it produced any legal work product in defense of the case. The 10th Circuit in Case at 1252 held that where a timekeeper's records do not "disclose any 'assistance, expert or otherwise, which was actually necessary to plaintiffs' case'" and the entries do not show any "generated original work product" the court can disallow all or a part of the claimed fees.

The Special Master finds that the claim for fees and expenses is disallowed as being unnecessary for defending the litigation and for seeking fees.

### JJ. WILLIAMS COMPANIES, INC.  99-MD-1614, 99-MD-1667

The Williams Companies, Inc. (99-MD-1614) and the affiliate, Barrett Resources (99-MD-1667) relied upon the Joint Defense Team for the defense of the litigation. It seeks only reimbursement for the fees and expenses paid for the jointly-incurred defense.

Requested jointly-incurred fees and expenses:

99-MD-1614: $199,659.82 fees and $29,530.88 expenses for a total of $229,190.70.

99-MD-1667: $200,368.93 fees and $29,635.76 expenses for a total of $230,004.68

Total fees and expenses: $459,195.35.

The Special Master has reduced the jointly-incurred fees and expenses by 25%.

The Special Master finds that the Williams Companies, Inc. are entitled to $344,396.51.

### SUMMARY OF FINDING OF FEES AND EXPENSES

| DEFENDANT/CASE | TOTAL FEES AND EXPENSES |
| --- | --- |
| Claims for Jointly-incurred Attorney's Fees and Expenses | $8,283,220.90 |

| | | |
|---|---|---:|
| A. | Acadian Gas a/k/a Enterprise Group (1626) | $ 256,995.79 |
| B. | Agave Energy Company (1635) | $ 215,007.48 |
| C. | Apache Corporation (1684) | $ 115,421.01 |
| D. | Atmos Energy Corporation (1607) | $ 363,449.19 |
| E. | Blue Dolphin Pipeline Company (1650) | $1,265,290.85 |
| F. | Burlington Resources Inc, (1656, 1657 | $ 791,220.84 |
| G. | CenterPoint Defendants (1644) | $ 577,971.27 |
| H. | CMS Gas Company (1638) | $ 584,834.39 |
| I. | CNG Producing Company (1627) | $ 176,061.89 |
| J. | Columbia Energy Services Corp. (1628) | $ 841,644.67 |
| K. | ConocoPhillips Company (1666, 97-CV-237) | $ 334,636.54 |
| L. | Coral Energy L.P. (1626) | $ 85,777.53 |
| M. | Dynegy Inc. (1631) | $ 469,991.99 |
| N. | Delhi Gas Pipeline Company. (1645) | $ 103,120.03 |
| O. | El Paso Defendants (1605,1609,1625,1632) | $1,669,454.16 |
| P. | Enogex and Oklahoma Gas & Electric Co. (1640,1641) | $ 985,243.64 |
| Q. | Equitable Resources, Inc (1630, 1644) | $ 624,324.78 |
| R. | Florida Gas Transmission Company LLC (1608,1625) | $ 36,636.07 |
| S. | GPM Gas Corporation (1682) | $ 232,380.00 |
| T. | Kinder Energy n/k/n Kinder Morgan, Inc (1603,1668,1626) | $1,753,781.80 |
| U. | Marathon Oil Company (1645) | $ 356,293.29 |
| V. | Northern Natural Gas (1608) | $ 285,278.24 |
| W. | Pacific Gas & Electric Company (1602) | $ 120,996.95 |
| X. | PanEnergy Corp n/k/a Spectra Energy Corp (1605,1610,1627,1682) | $ 838,849.04 |
| Y. | PanHandle Eastern Pipeline Co./ Robin Pipeline Co. (1610,1625) | $ 206,402.73 |
| Z. | Public Service Company of Colorado (1612) | $ 498,684.86 |
| AA. | Questar Pipeline Company (1604) | $ 764,898.75 |
| BB. | Rocky Mountain Natural Gas Company n/k/a Source Gas (1603) | $ 22,200.52 |
| CC. | Shell Oil Company (1629) | $ 602,599.69 |
| DD. | Snyder Oil Corporation k/n/a Devon Energy Corporation (1659) | $ 190,238.39 |
| EE. | Southern Star Central Gas Pipeline, Inc. (1614) | $ 119,198.56 |
| FF. | Southwestern Energy Company (1670) | $ 435,602.89 |
| GG. | Transmontaigne, Inc. (1669) | $ 188,957.33 |
| HH. | Transwestern Pipeline Company LLC (1608) | $ 985,255.79 |
| II. | Venice Energy Services Company (1631) | $ 0 |
| JJ. | Williams Companies, Inc. | $ 344,396.51 |

**TOTAL:**                                                                    **$17,443,097.46**

## RECOMMENDATION

Based upon the findings and conclusions of law of the separate motions for attorneys fees and expenses submitted by the individual defendants as set forth the above, it is RECOMMENDED that judgment be entered for attorneys fees and expenses to the individual Defendants as set forth in the Summary of Finding of Fees and Expenses.

Done this 8th day of November, 2013

_____
Donald E. Abram
Special Master

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of November, 2013, a copy of the foregoing Second Amended Findings of Fact And Conclusions of Law of the Special Master was filed with the Court using the CM/ECF system which will send notification of the filing to all counsel of record who have registered to receive service under this system.

A courtesy copy has also been forwarded by e-mail and first class U.S. Mail, addressed to:

Donald I. Schultz, Esq.
Schultz & Schultz LLP
2901 Pioneer Avenue
Cheyenne, WY  82001-2730

Roger Jatko, Esq.
Grynberg Petroleum Company
3600 S. Yosemite, Suite 900
Denver, CO  80237-1890

_____
Judy Olive

96