FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2015 JUN 24 PM 3 17
STEPHAN HARRIS, CLERK
CHEYENNE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| IN RE:<br>**Natural Gas Royalties**<br>*Qui Tam* **Litigation** | Case No. 99-MD-1293; All Cases |

---

### ORDER RE: SPECIAL MASTER SECOND AMENDED FINDINGS AND CONCLUSIONS REGARDING AWARD OF ATTORNEY FEES AND EXPENSES

---

This matter is now before the Court upon motions by the several Defendants to adopt, with modification, the Second Amended Findings and Conclusions of the Special Master [Doc. 2326] with regard to Defendants' incurred attorney fees and expenses. The Court, having considered the Second Amended Findings and Conclusions of the Special Master, the various pleadings by each Defendant as well as Realtor, having considered and approved certain stipulations by Defendants and Relator, and having reviewed the complete file herein, FINDS and CONCLUDES as hereinafter set forth.

### BACKGROUND

The background and procedural history which underlie this Order stretches back to June, 1997, and has been described in significant detail by the Tenth Circuit Court of Appeals, *In re NATURAL GAS ROYALTIES Qui Tam Litigation*, 562 F.3d 1032, 1037-1038 (10th Cir. 2009), as well as two prior Orders by this Court which are incorporated herein by

reference. [*Order on Report and Recommendation of Special Master*, October 20, 2006, Doc. 1717; *Order Granting Motion for Fees and Expenses Pursuant to 31 U.S.C. § 3730(d)(4)*, July 22, 2011, Doc. 2165]. Events and orders in the background and procedural history which are particularly relevant for purposes of this Order are described hereafter.

An order was entered by the Court in October, 2006, dismissing the 73 natural gas royalties *qui tam*/False Claims Act lawsuits by Realtor against more than 300 defendants. [Doc. 1717]. Defendants, on November 3, 2006, requested the Court enter final, appealable judgments of dismissal, and set a separate schedule to determine Relator's liability to Defendants for attorney fees and expenses. [Doc. 1723]. Relator requested the Court stay all attorney fee proceedings, urging the issues to be raised by Defendants' expected claims for fees and expenses were "inextricably intertwined" with issues Relator would raise in his expected appeals from the dismissal orders. [Doc. 1728 at 2]. The Court thereafter entered final judgments [Docs. 1809-1875; Docs. 1884-1890], denied Relator's request for a stay, and established dates by which all parties would file motions and briefs concerning Relator's liability for attorney fees and expenses. [Doc. 1878].

Relator, as anticipated, filed notices of appeal from the Court's final judgments. [Docs. 1734-1807; Docs. 2095-2100]. The Tenth Circuit issued an opinion on March 17, 2009, affirming the judgments of dismissal of the natural gas claims. *In Re NATURAL GAS ROYALTIES Qui Tam Litigation*, 562 F. 3d 1032 (10th Cir. 2009). Relator's petition for *certiorari* to the United States Supreme Court was denied on October 5, 2009. [Doc. 2156].

Relator and Defendants, during the pendency of Relator's Tenth Circuit appeals, engaged in substantial briefing during late 2006 through early 2007 addressing Defendants' requests to hold Relator liable for attorney fees and costs under the False Claims Act fee-shifting provision, 31 U.S.C. § 3730(d)(4). The Court held oral argument on those issues on April 24, 2007. [Doc. 2009]. An Order was entered on July 22, 2011, holding Relator liable to Defendants for their reasonable attorneys' fees and expenses. [Doc. 2165].

> The Court remains convinced that Grynberg made the sweeping allegations of fraud contained in these complaints based on little more than rank speculation. Grynberg's lawsuits and his claims of "direct and independent knowledge" qualifying him as an original source of evidence to support his claims were "clearly frivolous." His conduct in pursuing his claims in the face of evidence to the contrary constitutes "clearly vexatious" litigation. In filing these suits, Grynberg "misused his statutory privilege and distorted the intent of the legislation." *Grynberg v. Praxair*, 389 F.3d at 1059. An award of attorney's fees and expenses is both warranted and appropriate.

[Doc. 2165, pp. 31, 32].

The Court, in the same Order, set a deadline for Defendants to file claims and supporting evidence to quantify the amounts of attorney fees and expenses to be awarded. [Doc. 2165, p. 32]. The parties stipulated to, and the Court granted, some modest extensions of time. Defendants' pending claims for attorney fees and expenses were filed, and the associated evidence served on Relator, by October 21, 2011. Relator was granted extensions

of time to complete his filing of objections in opposition to the Defendants' fee claims. Relator ultimately completed filing two sets of objections on March 23, 2012. [Doc. 2259].

The Court, *sua sponte,* engaged a Special Master to review the voluminous fee applications, and to make recommendations concerning the reasonable amounts of Defendants' claimed fees and expenses. [Doc. 2295; Doc. 2299].

Relator filed motions with the Special Master seeking additional discovery, oral argument, phased proceedings, as well as other relief. [Doc. 2302; Doc. 2302-2]. The Special Master heard oral argument during October, 2012, denied the procedural relief Relator was seeking, and took the fee claims under advisement.

The Second Amended Findings of Fact and Conclusions of Law of the Special Master were filed on November 8, 2013. [Doc 2326].

## DISCUSSION

There were, at the close of briefing by Defendants and Relator, five potential legal issues remaining for consideration by the Court.

1. Whether this Court has jurisdiction to award defendants their appellate-related attorney fees and expenses;

2. Whether to grant the defendants requests for supplemental attorney fees and expenses;

3. Whether the judgments should award defendants reasonably attorney fees and expenses which they may incur to collect their judgments;

4. Whether the Court should grant the request by Blue Dolphin to add back $12,073.11 of its joint fees because it did not pay any jointly incurred appellate-related attorney fees and expenses; and

5. Whether to grant the request by Kinder-Morgan to correct the so-called "not billed" deduction of reasonable attorney fee and expenses.

Defendants and Realtor have subsequently agreed the issues described as number two (supplemental fees) and number three (collection fees) have been resolved, and should be dismissed without prejudice.

The parties have further stipulated:

a. to the reasonable and necessary amounts of Defendant's appeal-related attorney fee and expenses [Doc. 2377; Doc. 2401];

b. pre-judgment interest should be awarded in each case where an award is made of attorney fees and expenses, commencing in each case on October 21, 2011, and running until the date judgment is entered in each case, at an agreed annual rate of 1.5 percent, compounded annually. [Doc. 2370; Doc. 2373].

Relator, in addition, while reserving his right to appeal this Court's order requiring him to pay Defendants' attorney fees and expenses, does not oppose adoption of the Special Master recommendations as to the reasonable and necessary amounts of those fees and expenses. [Doc. 2365, p. 2 ¶ 3; Doc. 2376, p. 3].

1.  *Appellate-Related Attorney Fees and Expenses*

The Special Master, in his Second Amended Findings and Conclusions, concludes this Court "does not have jurisdiction to award appeal-related fees and costs." [Doc. 2326, p. 5]. Defendants argue this Court does, in fact, have the requisite jurisdiction to award appellate fees and costs, relying primarily on an exception, recognized by the Tenth Circuit Court of Appeals in *Crumpacker v. Kansas Dept. of Human Res.*, 474 F.3d 747 (10th Cir. 2007), to the general rule which would deny this Court such authority. The Court agrees with Defendants.

The Federal False Claims Act specifically authorizes a district court to "award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). The district court thus must find two conditions have been met before an award of attorney fees and expenses may be entered. The defendant must "prevail in the action," and the action must found to be "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment."

The general rule in the Tenth Circuit vests the circuit court with the initial authority to consider an award of appeal-related attorney fees.

> It is the law of this circuit that "[a]bsent an explicit [statutory] provision, in order for us to properly exercise our discretion, an application for appeal-related attorneys' fees must first be made to our court."

*Crumpacker v. Kansas Dept. of Human Res.*, 474 F.3d at 755 (quoting *Hoyt v. Robson Companies, Inc.*, 11 F.3d 983, 985 (10th Cir. 1993). The Court in *Crumpacker v. Kansas Dept. of Human Res.* also, however, recognized an exception to the general rule.

> We, therefore, hold that appeal-related fees, including those incurred in an interlocutory appeal, must generally be awarded by us. In drawing this conclusion, however, we likewise hold that parties who prevail on interlocutory review in this court, and who subsequently become prevailing parties under Title VII or another fee-shifting provision at the conclusion of merits proceedings, are implicitly entitled to reasonable attorneys' fees related to the interlocutory appeal. The precise amount of these fees may be determined in the first instance by the district court considering trial-related fees in accordance with our longstanding practice. *Whittington v. Nordam Group, Inc.*, 429 F.3d 986, 1001–02 (10th Cir. 2005) (citing *Hoyt*, 11 F.3d at 985). Any dispute as to the propriety or amount of fees related to an interlocutory appeal determined by the district court can be resolved on appeal to this court. Furthermore, because appeal-related fees are issued at the discretion of this court, our review of such fees determined by the district court will be de novo.

*Crumpacker v. Kansas Dept. of Human Res.*, 474 F.3d at 756. The Court thus affirmed the award by the district court of appellate fees. *Crumpacker v. Kansas Dept. of Human Res.*, 474 F.3d at 756.

The basic logic of the exception set forth by the Tenth Circuit in *Crumpacker* recognizes an award of appellate attorney fees by a district court under a fee-shifting statute is only appropriate once a party fulfills the requirements of the applicable statute, and if compliance occurs *after* an appeal during which the district retains jurisdiction over unresolved issues, or in which the matter is remanded to it for further consideration, then the district court has "implicit" authority to award reasonable attorney fees with regard to the appeal. The applicable statute in *Crumpacker* mandated fulfillment of only one requirement, *i.e.*, the recipient must be the "prevailing party."

> In any action or proceeding under this subchapter the court, in its discretion, **may allow the prevailing party**, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e-5k. (Emphasis added). The plaintiff in *Crumpacker* did not fulfill this single statutory requirement, did not become the prevailing party, until *after* an appeal and remand to the district court, which court then had the authority to award her appellate fees.

The applicable fee-shifting statute in this matter mandates fulfilment of two requirements in order qualify for an award of attorney fees. The defendant must be the "prevailing party," *and* the district court must conclude the action by the plaintiff was "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment."

> If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

31 U.S.C. § 3730(d)(4). Defendants in this matter fulfilled the first requirement, became the "prevailing party," only when the Tenth Circuit affirmed this Court's dismissal of all 73 appeals by Relator. *In re NATURAL GAS ROYALTIES Qui Tam Litigation*, 562 F.3d at 1037-1038. The second requirement of the False Claims Act fee-shifting statute was not fulfilled, however, until entry by this Court of its order on the issue of attorney fees, an issue which was still pending during Relator's appeals to the Tenth Circuit. This Court concluded, in its order, the numerous actions commenced by Relator were "clearly frivolous" and "clearly vexatious." [Doc. 2165, p. 27 ¶ 7; p. 28 ¶ 9]. The fulfillment of both requirements of False Claims Act fee-shifting statute having thus been finally achieved in this Court, arguably after an appeal which was "interlocutory" in nature as it did not resolve both requirements, the logic of the exception set forth by the Tenth Circuit in *Crumpacker* applies. This Court thus has jurisdiction to award both "trial-related" as well as appellate-related attorneys fees and expenses. *See, also, Yamada v. Snipes*, _____ F.3d _____, _____, 2015 WL 2384944 *24 (Ninth Circuit, May 20, 2015)(citing and quoting *Crumpacker v. Kansas Dept. of Human Res.*, 474 F.3d at 756).

4. *Blue Dolphin Joint Fees*

The issue of the joint fees sought by Blue Dolphin has been resolved by the conclusion this Court has jurisdiction to award appeal-related fees. [Doc. 2337, p. 5 ¶ 9]. It is also the Court's conclusion Blue Dolphin is entitled to the requested fees, $12,073.11 [Doc. 2377-1], in the event its award of appeal-related fees is overturned on appeal. Blue Dolphin did not participate in, and did not make any payments to, Liaison Counsel for the jointly-funded appellate work.

The last payment by Blue Dolphin to Holland & Hart, defendants' Liaison Counsel, through which defendants' jointly incurred fees and expenses were paid, was, as indicated by its proof of claimed expenses, in either July or August 2006. [Doc. 2193-2, p. 14].[1] The final payment by Blue Dolphin to Holland & Hart thus occurred before the Court dismissed the Relator's cases in October, 2006. [Doc. 1717]. No appeal work, joint or individual, could have occurred until after Relator filed his notices of appeal in November, 2006. [Docs. 1734-1807]. The Blue Dolphin proof of expenses identifies no payment to Holland & Hart, nor any outside "Vendor" after August, 2006, nothing which could be considered a payment to a joint-project paymaster. [Doc. 2193-2]. This conclusion is reinforced by the fact Blue

---

[1] The August 31, 2006, payment of $3,000 lacks any payee name, unlike the immediate preceding July entry of a payment to "Holland & Hart" as "Vendor." Doc. 2193-2, pp. 14-15. Blue Dolphin treats this August expense payment as having been made to Holland & Hart in response to a billing of joint defense expenses to Foley & Lardner on Blue Dolphin's behalf.

Dolphin claimed less than $1,500 in expenses after April, 2007, the month during which the Court held a hearing on Relator's liability for fees and expenses. [Doc. 2193-2, pp. 14-15].

  5. *Correction of Kinder-Morgan "Not Billed" Deduction of Reasonable Attorney Fees and Expenses*

The Special Master reduced by $239,919.66, the attorney fees and expenses sought by Kinder-Morgan based on a conclusion Kinder-Morgan "was not billed nor did it pay for the non-billed hours and therefore should not be reimbursed." [Doc. 2362, pp. 68, 69] [2].

---

2

| Category | Special Master Disallowed | Reference in Special Master's Report [ECF No. 2326] | KM's Proposed Correction |
|---|---|---|---|
| A. Advisory/El Paso Attorneys' Fees | $121,693.16 | p.68 | $121,693.16 |
| A. Advisory/El Paso Attorneys' Costs | $9,611.26 | p.68 | $9,611.26 |
| B. Rule 11 Attorneys' Fees | $5,353.19 | p.68 | $5,353.19 |
| B. Rule 11 Costs | 104.22 | p.68 | 104.22 |
| C. KM/Advisory Fees | $82,581.87 | p.68 | $82,581.87 |
| C. KM/Advisory Costs | $1,852.50 | p.68 | $1,852.50 |
| D. Motion for Fees | $13,665.23 | p.69 | $13,665.23 |
| D. Motion for Fees Costs | $117.75 | p.69 | $117.75 |
| E. Application Fees | $4,910.44 | p.69 | $4,910.44 |
| E. Application Costs | $79.49 | p.69 | $30.04 |
| Total | $239,969.11 | | $239,919.66 |

Kinder-Morgan asserts when its counsel, Beatty & Wozniak, performed legal services for multiple Defendants, the bills were apportioned to each defendant, including Kinder-Morgan. All Defendants, except Kinder-Morgan, were billed and paid for their legal services on an hourly basis. Kinder-Morgan, however, because Beatty & Wozniak performed substantial legal work for it, paid the firm based on a retainer agreement. [Doc. 2361-1, p. 2 ¶ 4; Doc. 2379, p. 2]. The hours in question identified as "non-billable" were, according to Kinder-Morgan, thus paid to Beatty & Wozniak through the retainer agreement. Kinder-Morgan therefore argues since the Special Master had determined the amount Beatty & Wozniak charged was "the reasonable value of the services provided" when he approved the bills for the legal services billed by the firm to clients based on hourly billings, the same should apply to those "non-billable hours" which were actually paid through the monthly retainer. [Doc. 2379, p. 2]. The Court agrees.

The determination by a court of attorney fee awards pursuant to a fee shifting statute is based solely on the reasonable value of the services provided. *Centennial Archaeology, Inc. v. AECOM, Inc.,* 688 F.3d 673, 679 (10th Cir. 2012). The assertion any reasonable fee recovery under fee shifting statutes is limited to what is owed, or has been paid, has been specifically rejected:

> A reader limited to considering only the statutory language in isolation would conclude that the 'attorney fee' recoverable by a prevailing party under § 1988 is limited to what the party owes or has been paid ("necessarily incurred"). That statutory interpretation, however, would be contrary to Supreme Court precedent.

*Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d at 679.

The correct measure of, or standard for, a fee award under a fee-shifting statute is the "reasonable value of the attorney services."

> *Blum* is but one of countless examples that the courts construe the term *attorney fees* to mean, not the amount actually paid or owed by the party to its attorney, but the value of attorney services provided to the party. As stated in *Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989, "[A] 'reasonable attorney's fee' [is] reasonable compensation, in light of all circumstances, for the time and effort expended by the attorney for the [party], no more and no less." In other words, an "attorney fee" arises when a party uses an attorney, regardless of whether the attorney charges the party a fee and the amount of the fee is the reasonable value of the attorney's services. The payment arrangement for an attorney can vary widely – hourly rates, flat rates, salary, contingency fee, pro bono. What the client pays or owes the attorney may not accurately reflect the reasonable value of the services.

*Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d at 679. (*italics* in original). The reasonable "value of attorney services provided" does not change if the attorney (as herein) is paid on a retainer basis rather than on an hourly rate. *Centennial Archaeology, Inc. v.*

*AECOM, Inc.,* 688 F.3d at 679. [Doc. 2213-1, pp. 9-12; Doc. 2361-1, p. 2 ¶ 4]. The Special Master, under the controlling precedent of *Centennial,* was, therefore, to determine the reasonable value of the services provided without regard to how the attorney fees were billed or paid (or even whether they were paid).

Relator asserts the *Centennial Archaeology, Inc. v. AECOM, Inc.* decision is not controlling precedent since it dealt with a sanction award as opposed to an award under the False Claim Act's fee-shifting statute. [Doc. 2376, p. 13]. His assertion, as indicated by a number of United States Supreme Court, as well as other decisions, is incorrect. The principle articulated in *Centennial Archaeology, Inc. v. AECOM, Inc.* applies to any award of attorney fees under any fee-shifting statute, including the Clean Air Act, the Civil Rights Act, the Equal Access to Justice Act, the Back Pay Act (with union staff counsel), the Freedom of Information Act, and a sanction award under Fed.R.Civ.P 37. *Penn v. Delaware Valley Citizens for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); *Blum v. Stenson,* 939, 103 L.Ed 2d 67 (1989); *Blanchard v. Bergeron,* 489 U.S. 87, 96; 109 S.Ct. 939, 946; 1403 L.Ed.2d 67 (1989); *Turner v. Commissioner of Social Security,* 680 F.3d 721 (6th Cir. 2012); *Raney v. Federal Bureau of Prisons,* 222. F.3d 927 (Fed. Cir. 2000); *Jordon v. U.S. Dept. of Justice,* 691 F.2d 514 (D.C. Cir. 1982); *Case v. United School District No. 233,* 157 F.3d 1243 (10th Cir. 1998); *Roadway Express Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed 488 (1980). The False Claim Act attorney fee provision is a fee-shifting statute, a conclusion with which Realtor apparently agrees [Doc. 2376, p. 13],

thus the principle articulated in *Centennial Archaeology, Inc. v. AECOM, Inc.* is applicable herein. *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d at 678, 679 (the term *attorney fees* is a term of art in fee-shifting statutes which means the value of the service, not the amount actually paid or owed).

Realtor references *Assessment Technologies of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434 (7th Cir. 2004) in support of his position the conclusions of the Special Master with regard to the Kinder-Morgan fees and costs in question should not be overturned. The decision in *Assessment Technologies of WI, LLC v. WIREdata, Inc.*, however, addressed an award of attorney fees under the Copyright Act, which is not a fee-shifting statute, but rather awards fees to the prevailing party.

> Before us now is the defendant's motion for an award of attorneys' fees incurred by it in defending the suit both in the district court and in our court. The Copyright Act authorizes the award of reasonable attorney's fees to the prevailing party in a suit under the Act. 17 U.S.C. § 505. And unlike civil rights suits, where while a prevailing plaintiff is presumptively entitled to an award of fees, a prevailing defendant is entitled to such an award only if the suit was groundless, e.g., *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); *Johnson v. Daley*, 339 F.3d 582, 587 (7th Cir.2003) (en banc), in copyright suits "prevailing plaintiffs and prevailing defendants are to be treated alike." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

*Assessment Technologies of WI, LLC v. WIREdata, Inc.*, 361 F.3d at 435, 436.

Relator's reliance on *Fox v. Vice*, \_\_\_\_ U.S. \_\_\_\_\_, _____, 131 S.Ct. 2205, 2214-2215 (2011) in support of the Special Master's conclusions is also misplaced.

The issue in *Fox v. Vice* was how to apportion awardable from non-awardable fees when only a portion of the litigation involved frivolous claims. The Supreme Court concluded only those fees which would not have been incurred "but for" the frivolous claim are awardable. The "but for" rule established in *Fox v. Vice* thus applies only when a portion of the claims asserted are frivolous. *Fox v. Vice*, \_\_\_\_ U.S. \_\_\_\_\_, _____, 131 S.Ct. at 2214-2216; *Carter v. Incorporated Village of Ocean Beach*, 759 F.3d 159, 163 (2nd Cir. 2014). The "but for" rule is therefore not applicable herein as this Court has previously determined the entire action by Relator was frivolous and vexatious. "It would be a daunting task for this Court to catalogue all of the reasons and facts known in the record that bear on the frivolousness of Grynberg's claim to 'original source' status as well as the vexatious nature of this litigation as a whole." [Doc. 2165, p. 11].

How the client was billed or what amount the client paid, may not necessarily be relevant in this matter pursuant to *Centennial Archaeology, Inc. v. AECOM, Inc.*. It should, nevertheless, be noted Realtor has, as well, misstated the facts as to the billing and payment of the services provided to Kinder-Morgan. The attorney fees at issue, as previously noted, were performed by Beatty & Wozniak for a number of clients in addition to Kinder-Morgan, including Columbia, Apache, TransMontaigne, CenterPoint, Panhandle, CMS as well as others. Beatty and Wozniak, when performing work for clients other than Kinder-Morgan,

charged their work based on an hourly calculation to a joint bill, and then proportionately allocated the bill to each client. The Special Master reviewed the reasonableness of the attorney fees included in these joint bills, and found the same were reasonable. The share allocated to Kinder-Morgan, however, contained a "NC" notation since the share allocated to Kinder-Morgan was included within the payment by Kinder-Morgan of a monthly retainer.

The key and dispositive ruling by the Special Master is his finding the attorney fees charged by Beatty and Wozniak to those clients it billed on an hourly basis were reasonable. [Doc. 2326, p. 56]. It would be non-sensical, and in conflict with *Centennial Archaeology, Inc. v. AECOM, Inc.*, to find attorney fees when billed to clients on an hourly basis to be reasonable, yet then conclude the fees for the very same work which are covered by a monthly retainer paid by Kinder-Morgan to be unreasonable, or not recoverable.

**IT IS THEREFORE HEREBY ORDERED**:

(a)   **Defendants and Realtor have agreed** the issues described as number two (supplemental fees) and number three (collection fees) have been resolved, **both issues are thus DISMISSED WITHOUT PREJUDICE;**

(b)   the **Request by Blue Dolphin** for attorney fees and expenses **in the sum of $12.073.11, is GRANTED;**

(c)   the **Request by Kinder-Morgan** for attorney fees and expenses **in the sum of $239,919.66, is GRANTED**

(c) the **STIPULATED REASONABLE APPEAL FEES AND EXPENSES** and the **REASONABLE FEES AND EXPENSES** as determined by the Special Master **ARE AWARDED** in the amounts indicated to the following designated Defendants in each identified docket number:

| Case No. 99 MD | Defendant Group | Stipulated Reasonable Appeal Fees and Expenses | Special Master Reasonable Fees and Expenses | Total |
|---|---|---|---|---|
| 1626 | Acadian a/k/a Enterprise | $0.00 | $256,995.79 | $256,995.79 |
| 1635 | Agave | $27,278.54 | $215,007.48 | $242,286.02 |
| 1684 | Apache | $71,549.56 | $115,421.01 | $186,970.57 |
| 1607 | Atmos | $56,440.08 | $363,449.19 | $419,889.27 |
| 1650 | Blue Dolphin | $106,432.38 | $1,265,290.85 | $1,371,723.23 |
| 1656 | Burlington Resources | 0 | 0 | 0 |
| 1644 | CenterPoint | $40,776.68 | $577,971.27 | $618,747.95 |
| 1633 | CMS | $41,587.68 | $584,834.39 | $626,422.07 |
| 1627 | CNG (Dominion) | $25,072.94 | $176,061.89 | $201,134.83 |
| 1628 | Columbia | $44,144.10 | $841,644.67 | $885,788.77 |
| 1666 | ConocoPhillips | $65,620.70 | $334,636.54 | $400,257.24 |

| | | | | |
|---|---|---|---|---|
| 1626 | Coral | $0.00 | $0.00 | $0.00 |
| 1631 | Dynegy | $44,007.55 | $469,991.99 | $513,999.54 |
| 1645 | Delhi | $0.00 | $0.00 | $0.00 |
| 1609, et al | El Paso | $73,779.69 | $1,669,454.16 | $1,743,233.85 |
| 1641 | Enogex and OG&E | $221,755.41 | $985,243.64 | $1,206,999.05 |
| 1630 | Equitable | $59,171.91 | $624,324.78 | $683,496.69 |
| 1608 | Florida Gas | $25,921.43 | $37,173.10 | $63,094.53 |
| 1682 | GPM | $0.00 | $0.00 | $0.00 |
| 1603 | KN Energy | $94,831.65 | $1,993,701.96 | $2,088,533.61 |
| 1645 | Marathon | $0.00 | $0.00 | $0.00 |
| 1608 | Northern Natural Gas Co. | $32,065.18 | $285,278.24 | $317,343.42 |
| 1602 | PG&E | $0.00 | $0.00 | $0.00 |
| 1610 | Panenergy/Spectra | $0.00 | $0.00 | $0.00 |
| 1610 | Panhandle, Pan Gas, et al | $40,776.68 | $206,402.73 | $247,179.41 |
| 1612 | PSCo | $86,095.46 | $498,684.86 | $584,780.32 |
| 1604 | Questar | $159,249.67 | $764,898.75 | $924,148.42 |
| 1603 | RMNG, NN (SourceGas) | $60,508.64 | $22,200.52 | $82,709.16 |

| | | | | |
|---|---|---:|---:|---:|
| 1629 | Shell | $126,624.50 | $602,599.69 | $729,224.19 |
| 1659 | Snyder | $27,285.31 | $190,238.39 | $217,523.70 |
| 1614 | Southern Star | $0.00 | $0.00 | $0.00 |
| 1670 | Southwestern Energy | $26,806.42 | $435,602.89 | $462,409.31 |
| 1669 | Transmontaigne | $41,199.18 | $188,957.33 | $230,156.51 |
| | | | | 861584.18 |
| 1608 | Transwestern | $151,645.02 | $985,255.79 | $1,136,900.81 |
| 1614 | Williams | $51,935.00 | $344,396.51 | $396,331.51 |
| | | $1,802,561.36 | $15,035,718.41 | $16,838,279.77 |

Dated this 24th day of June, 2015.

_____
ALAN B. JOHNSON
UNITED STATES DISTRICT JUDGE